NO. _13-2881

## UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| IN RE:<br>    ARCHDIOCESE OF MILWAUKEE,<br>    Debtor.<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br>    Appellant<br><br>No. 13-2881        v.<br><br>JEROME E. LISTECKI, Archbishop, Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust,<br>    Appellee. | Appeal from the United States District Court For the Eastern District of Wisconsin<br><br>No. 2:13-cv-00179-RTR<br><br>Rudolph T. Randa, Judge. |

**APPELLANT'S STATUS REPORT**

Marci A. Hamilton, Esq.
36 Timber Knoll Drive
Washington Crossing, PA  18977
Telephone:   (215) 353-8984
E-mail:         Hamilton.marci@gmail.com

Appellant Official Committee of Unsecured Creditors (the "Committee") submits this status report in response to the Court's Order Dated September 9, 2013 [Docket No. 5] (the "Order"), which directed the Committee to file a status report regarding the disposition of its *Motion to Vacate Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(b) and 28 U.S.C. § 455* (the "Motion to Vacate").[1]

On August 12, 2013, the Appellant had filed in the United States District Court for the Eastern District of Wisconsin a *Motion to Recuse Judge Randa from the Cemetery Trust Litigation or any Cemetery-Related Proceedings* (the "Motion to Recuse") and the Motion to Vacate, based on Judge Randa's financial interest in the relevant cemeteries and the appearance of impropriety. On October 1, 2013, the District Court entered its Decision and Order denying both of the Committee's motions. A copy of the Decision and Order is attached hereto as **Exhibit A**.

The Committee intends to seek immediate review of the denial of its Motion to Recuse by seeking a writ of mandamus from the Seventh Circuit in accordance with Federal Rule of Appellate Procedure 21. The Committee also intends to appeal the denial of its Motion to Vacate by filing an amended Notice of Appeal within the time provided by Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) so that the District Court's denial of the Motion to Vacate will be included as a part of this appeal.[2]

---

[1] The Order directed the Committee to file this status report by September 23, 2013. Counsel apologizes for and asks the Court to forgive this late filing. The deadline for filing the status report was inadvertently miscalendared.

[2] Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) provides, "A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—

2

With respect to the parties' efforts to resolve this matter, the Committee is participating in the Seventh Circuit's mandatory mediation program, and participated in the Rule 33 Appellate Settlement Conference on September 18, 2013. Those settlement discussions are ongoing under the guidance of Mediator Jillisa Brittan.

Respectfully submitted,

Dated: October 4, 2013     By     */s/ Marci A. Hamilton, Esq.*
Marci A. Hamilton, Esq.
36 Timber Knoll Drive
Washington Crossing, PA  18977
Telephone: (215) 353-8984
Email: Hamilton.marci@gmail.com

Special Counsel to the Official Committee of Unsecured Creditors

---

within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(B)(ii).

PACHULSKI STANG ZIEHL & JONES LLP

By   */s/ James Stang*
     James I. Stang (CA Bar No. 94435)
     Kenneth H. Brown (CA Bar No. 100396)
     Gillian N. Brown (CA Bar No. 205132)
     Erin Gray (CA Bar No. 157658)
     Pachulski Stang Ziehl & Jones LLP
     10100 Santa Monica Blvd., 13th Floor
     Los Angeles, CA  90067
     Telephone:  (310) 277-6910
     Facsimile:   (310) 201-0760
     E-mail:  jstang@pszjlaw.com
              kbrown@pszjlaw.com
              gbrown@pszjlaw.com
              egray@pszjlaw.com

     -and-

     Albert Solochek (State Bar No. 1011075)
     Jason R. Pilmaier (State Bar No. 1070638)
     Howard, Solochek & Weber, S.C.
     324 E. Wisconsin Ave., Suite 1100
     Milwaukee, WI  53202
     Telephone:  (414) 272-0760
     Facsimile:  (414) 272-7265
     E-mail:  asolochek@hswmke.com
              jpilmaier@hswmke.com

     Attorneys for the Official Committee of
     Unsecured Creditors

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**In re Archdiocese of Milwaukee,**

       Debtor.            **Bankruptcy Case No. 11-20059-SVK**

**ARCHBISHOP JEROME E. LISTECKI,**
**as Trustee of the Archdiocese of Milwaukee**
**Catholic Cemetery Perpetual Care Trust,**

       Appellant,         **Adv. Proc. No. 11-2459-SVK**

      -vs-                   **Case No. 13-C-179**

**OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS,**

       Appellee.

### DECISION AND ORDER

On July 29, 2013, the Court held that more than $50 million dollars being held in the Archdiocesan Cemetery Trust could not be brought into the underlying bankruptcy estate because the Committee of Unsecured Creditors, "in pursuing the claims of the unsecured creditors under the authority granted to it by the bankruptcy court, acts 'under color of law' and is subject to [the Religious Freedom Restoration Act]. Therefore, RFRA and the First Amendment prevent the Committee from appropriating the funds in the Trust because doing so would substantially burden the Trustee's free exercise of religion." ECF No. 24, at 2; --- B.R. ---, 2013 WL 3937021, at *1 (E.D. Wis. July 29, 2013).

In response, the Committee launched an investigation into my background in relation to the Milwaukee Catholic Cemeteries. First, the Committee learned (by searching publicly-available databases) that many of my relatives are buried in Archdiocesan cemeteries. Then, the Committee moved for an order directing the Archdiocese to search its business records to determine if I or my wife have any agreements for burial spaces at Archdiocesan cemeteries. The bankruptcy court granted this motion. As a result, the Committee learned that 38 years ago on August 1, 1975, I purchased a burial crypt for my parents in the Holy Cross Mausoleum.[1] Armed with this information, the Committee moves for recusal and to vacate the Court's judgment.

The Court is at a loss trying to understand why these motions were brought. The Committee is entitled to *de novo* review in the Seventh Circuit Court of Appeals. Instead of proceeding directly to the Seventh Circuit, the Committee decided to inject collateral issues into these proceedings for the stated purpose of vacating a prior ruling and sending the case to another district judge. This is a wasteful use of time, money, and judicial resources. The Seventh Circuit, if not the Supreme Court, will be the final word on the issues raised by the Cemetery Trust litigation. The last thing this case needs is another decision by another lower court federal judge before it reaches the

---

[1] The Holy Cross Mausoleum is located at 7301 West Nash Street. http://www.cemeteries.org/pdf/HolyCrossChapelMausoleum_July2004.pdf. The following article includes a picture of my parents' crypt. Bruce Vielmetti and Karen Herzog, *Records show judge in Milwaukee Archdiocese case has cemetery ties*, Milwaukee Journal Sentinel, Aug. 14, 2013. http://www.jsonline.com/features/religion/milwaukee-archdioceses-creditors-want-ruling-halted-judge-off-case-b9975543z1-219553341.html.

- 2 -

Seventh Circuit.

Questionable motives aside, the Court takes up the motion. The Committee argues that I have a "financial interest in the subject matter in controversy" by virtue of purchasing[2] my parents' crypt. 28 U.S.C. § 455(b)(4). The statute defines "financial interest" as "ownership of a legal or equitable interest, however small . . ." § 455(d)(4). The term "interest," as used in § 455(b)(4), means "an investment or other asset whose value depends on the outcome, or some other concrete financial effect." *Guardian Pipeline, LLC v. 950.80 Acres of Land*, 525 F.3d 554, 557 (7th Cir. 2008). My parents' burial crypt is not an investment or asset, much less an asset whose value depends upon the outcome of this litigation. This was a consumer purchase of my parents' rights of entombment from the Archdiocese of Milwaukee. Holy Cross Mausoleum Purchase Agreement, ECF No. 32, Ex. N ("SELLER hereby offers for sale the *right of entombment only* in said Mausoleum in the crypt space(s) hereinafter described. PURCHASER hereby agrees to purchase said right of entombment . . .") (emphasis added).

The Committee argues that I have a financial interest in this case because the burden for providing perpetual care could fall to me. The Purchase Agreement specifically precludes this type of arrangement. *Id.* at ¶ 15 ("All services about the crypt or Mausoleum requiring labor shall be performed only by the SELLER"); ¶ 19 ("The SELLER shall provide care and maintenance and such care and maintenance

---

[2] The crypt cost $3,800. Holy Cross Mausoleum Agreement, ECF No. 32, Exhibit N.

- 3 -

shall be performed only by the SELLER"). In any event, by analogy to cases involving judges as utility consumers, a possible adverse effect on the Trustee's ability to maintain my parents' crypt is not a financial interest within the meaning of § 455(b)(4). *In re N.M. Natural Gas Antitrust Litig.*, 620 F.2d 794, 796 (10th Cir. 1980) ("a remote, contingent benefit, such as a possible beneficial effect on future utility bills, is not a 'financial interest' within the meaning of the statute"); *In re Va. Elec. & Power Co.*, 539 F.2d 357, 366 (4th Cir. 1976) ("We think it demonstrable that [the district judge] did not 'own' a legal or equitable interest in the subject matter of the controversy. The only interest the judge has in the subject matter is the remote contingent possibility that he may *in futuro* share in any refund that might be ordered for all VEPCO customers").

The Committee also argues that I have a financial interest pursuant to the proof of claim filed on behalf of Cemetery Care Claimants in the underlying bankruptcy proceeding. ECF No. 44, Claim 179-1. This is incorrect. The rider to the claim explains that it "*does not constitute a request for payment* on behalf of any individual or entity," nor does it "constitute an assertion by the Debtor as to whether or not any individual Cemetery Care Claimants are 'creditors'[3] . . . with respect to the obligations of the Debtor to provide perpetual care." *Id.*, Rider to Proof of Claim Filed on Behalf

---

[3] Even if I could be considered a creditor to the bankruptcy estate, this does not make me a "party to the proceeding" for purposes of recusal. Committee on Codes of Conduct Advisory Opinion No. 100 (June 2009) (Identifying Parties in Bankruptcy Cases for Purposes of Disqualification) ("simply being a creditor or interest holder of the bankruptcy estate is not a sufficient interest to make that creditor 'a party to the proceeding'").

- 4 -

of the Cemetery Care Claimants, ¶¶ 8-9 (emphasis added).  Thus, the Committee's citation to *Tramonte v. Chrysler Corp.*, 136 F.3d 1025 (5th Cir. 1998) is inapposite. "[W]here a judge or an immediate family member is a member of a class *seeking monetary relief*, § 455(b)(4) requires recusal because of the judge's financial interest in the case." *Id.* at 1029 (emphasis added).

Because there is no financial interest, any interest requiring recusal falls under the second clause of § 455(b)(4), whereby I must recuse myself if I have "any other interest that could be substantially affected by the outcome of the proceeding."  My parents have been entombed for almost forty years; that will not change as a result of this lawsuit.  To the extent that I have an interest in the care and maintenance of my parents' crypt, the Milwaukee Catholic Cemeteries "encompass approximately 1,000 acres of land in which more than 500,000 individuals are interred." ECF No. 24, at 3; 2013 WL 3937021, at *1.  In total, there are eight cemeteries and seven mausoleums.[4] Accordingly, if the Trustee's ability to provide perpetual care is diminished, there is no guarantee that the Holy Cross Mausoleum in general, or my parents' crypt in particular, would be impacted in any way, shape or form.  Moreover, the Trustee's moral and canonical obligation to provide perpetual care will not disappear if he loses this lawsuit.  His duty to provide perpetual care continues.  In the unlikely event that the Trustee completely fails to satisfy this duty, local municipalities can (and in some instances must) intervene.  Wis. Stat. § 157.115(1)(b)1.-2; *see, In re N.M. Natural Gas*

---

[4] http://www.cemeteries.org/aboutus0013.asp.

- 5 -

*Antitrust Litig.* at 796 ("independent intervention by the Commission cancelling any benefit is possible"). Therefore, my interest in the care and maintenance of my parents' burial crypt will not be substantially affected by the outcome of this lawsuit. *In re Va. Elec. & Power Co.* at 368 ("Thus a judge who is a customer of a company must necessarily consider the remoteness of the interest and its extent or degree. . . . [The judge's] interest here is remote and speculative. . . . whether he ever gets any refund benefit will not be determined by him nor by the result of this litigation").

Lastly, the Committee argues for recusal under § 455(a), a "catch-all" which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The inquiry under this section is objective, asking judges to analyze "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)). An objective standard is "essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person. Because some people see goblins behind every tree, a subjective approach would approximate automatic disqualification." *Id.* at 386.

As discussed above, any interest that I may have in the maintenance of the Milwaukee Catholic Cemeteries is extremely remote. "Judges regularly sit in cases that could affect their well-being tangentially. A judge who owns a house could be

affected by a decision influencing the rate of interest, a judge who owns stock in the coal industry could be affected by a decision in a case concerning nuclear power, and so on. *These indirect effects do not cause informed, reasonable observers to doubt a judge's disinterest.*" In re Matter of Nat'l Union Fire Ins. Co., 839 F.2d 1226, 1229 (7th Cir. 1988) (emphasis added).

Going further, the Committee argues that I have a personal, emotional interest in the outcome of this case — yet at the same time, the Committee insists that it is not moving for recusal because I am Catholic. The Committee cannot take the latter position because of the general recognition that a judge's religious affiliation is not grounds for disqualification. *See, e.g., Feminist Women's Health Ctr. v. Codispoti*, 69 F.3d 399 (9th Cir. 1995) (denying motion to recuse Catholic judge in action brought by abortion clinic against abortion protestors); *United States v. El-Gabrowny*, 844 F. Supp. 955 (S.D.N.Y. 1994) (denying motion to recuse Jewish judge in prosecution for World Trade Center bombing); *Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984) (denying motion to recuse Mormon judge in case that involved the "theocratic power structure of Utah"). But, as to the former position, the Committee ascribes these personal and emotional interests to me because I am Catholic, describing my interest in the outcome of this case as religious and moral. The Court fails to see the distinction between moving for recusal because I am Catholic and moving for recusal because of my religious interests. There is none.

Whichever way my interest is characterized, a reasonable person would not

perceive a substantial risk of bias in this case.  Given that my wife and I have both lived here for almost our entire lives, it should not have been surprising for anyone to learn that I have relatives who are interred in the Milwaukee Catholic Cemeteries. Most judges are old enough to have close relatives buried somewhere.  Aging and death are facts of life, not just for judges.  Over 500,000 individuals are interred in the Milwaukee Catholic Cemeteries, so my relation to some of those individuals is a characteristic that I share with countless members of this community.  The logical conclusion of the Committee's argument is that none of these people could render an impartial decision this case.  This is untenable, and it is objectively unreasonable.  On top of that, the Committee's motion presumes that I would be personally upset or aggrieved by the remote possibility that a family member's gravesite might somehow fall into disrepair, so much so that I would ignore my duty to exercise impartial judgment.  Again, a well-informed, thoughtful observer would not make this presumption.  *See, e.g., Perry v. Schwarzenegger*, 790 F. Supp. 2d 1119, 1130 (N.D. Cal. 2011) (Regarding Judge Walker, who ruled against California's ban on same-sex marriage, a "well-informed, thoughtful observer would recognize that the mere fact that a judge is in a relationship" with someone of the same sex "does not *ipso facto* imply that the judge must be so interested in marrying that person that he would be unable to exhibit the impartiality which, it is presumed, all federal judges maintain").

      For all of the foregoing reasons, recusal is unnecessary. *Laird v. Tatum*, 409 U.S. 824, 837 (1972) (Rehnquist, J., in chambers) ("a federal judge has a duty to sit

where not disqualified which is equally as strong as the duty to not sit where disqualified"). The Committee's motions to vacate [ECF No. 27] and for recusal [ECF No. 30] are **DENIED**.

Dated at Milwaukee, Wisconsin, this 1st day of October, 2013.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 9 -

✓

# CERTIFICATE OF SERVICE
**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on ___October 4, 2013___, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Paige Doyle

☐

# CERTIFICATE OF SERVICE
**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

| counsel / party: | address: |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

s/_____