NO. 13-2881
(Consolidated With Case Nos. 13-3353 and 13-3495)

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| IN RE:<br>  ARCHDIOCESE OF MILWAUKEE,<br>    Debtor. | ] <br> ] <br> ] | Appeals from the United States<br>District Court for the Eastern<br>District of Wisconsin |
| OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS,<br>    Appellant, | ] <br> ] <br> ] | No. 2:13-cv-00179-RTR |
| Nos. 13-2881 and 13-3495          v. | ] <br> ] <br> ] | Rudolph T. Randa, Judge |
| JEROME E. LISTECKI, Archbishop, Trustee of the<br>Archdiocese of Milwaukee Catholic Cemetery Perpetual<br>Care Trust,<br>    Appellee. | ] <br> ] <br> ] <br> ] <br> ] | |
| IN RE:<br>  ARCHDIOCESE OF MILWAUKEE,<br>    Debtor. | ] <br> ] <br> ] | Appeals from the United States<br>District Court for the Eastern<br>District of Wisconsin |
| OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS,<br>    Petitioner, | ] <br> ] <br> ] | No. 2:13-cv-00179-RTR |
| RUDOLPH T. RANDA,<br>    Respondent, | ] <br> ] <br> ] | Rudolph T. Randa, Judge |
| No. 13-3353          v. | ] <br> ] <br> ] | |
| JEROME E. LISTECKI, Archbishop, Trustee of the<br>Archdiocese of Milwaukee Catholic Cemetery Perpetual<br>Care Trust,<br>    Party-In-Interest, | ] <br> ] <br> ] <br> ] <br> ] | |
| And | ] <br> ] | |
| ARCHDIOCESE OF MILWAUKEE,<br>    Party-In-Interest. | ] <br> ] | |

Marci A. Hamilton, Esq.
36 Timber Knoll Drive
Washington Crossing, PA  18977
Telephone:  (215) 353-8984
E-mail:    Hamilton.marci@gmail.com

## APPELLANT'S MOTION TO INCREASE PAGE LIMIT FOR BRIEFS IN CONSOLIDATED APPEALS

The Official Committee of Unsecured Creditors (the "Committee") is the appellant or the petitioner in three cases, involving two lower court opinions, that have been consolidated by this Court for briefing and disposition. As is discussed below, in light of the number and complexity of the issues involved in the three consolidated appeals, the Committee asks the Court to increase the page limit for the principal briefs from thirty to fifty pages and for the reply brief from fifteen to twenty-five pages. The Committee has been advised that the appellee does not object to the requested extension, and the Archdiocese of Milwaukee, a party-in-interest, takes no position. In support of the Motion, the Committee represents as follows:

### FACTS

**A.     The Debtor transferred over $55 million to the Cemetery Trust.**

1.     The Archdiocese of Milwaukee (the "Debtor") owns an unencumbered fee simple interest in and operates eight cemeteries and mausoleums (collectively the "Cemeteries"). [Adv. Doc. No. 34, at ¶ 14 (Exhibit A to Appendix)].[1]

---

[1] All references to "Appendix" are to the Appendix to Petition for Writ of Mandamus Directing the Honorable Rudolph T. Randa to Recuse Himself Pursuant to 28 U.S.C. § 455 filed with this Court in Case No. 13-3353 [Docket No. 1-2]. References to "Adv. Doc. No." are to documents filed in the adversary proceeding in the United States Bankruptcy Court for the Eastern District of Wisconsin styled as *Archbishop Jerome E. Listecki, Trustee v. Official Committee of Unsecured Creditors*  (Case No. 11-02459-SVK). References to "Bankr. Doc. No." are to documents filed in the main bankruptcy case *In re Archdiocese of Milwaukee* (Case No. 11-20059-SVK). References to "Dist. Doc. No." are to documents filed in the United States District Court for the Eastern District of Wisconsin in Case No. 2:13-CV-00179-RTR. Other facts in this Motion are supported by the affidavit of Marci A. Hamilton submitted concurrently herewith.

2.      On April 2, 2007, the Debtor, as trustor, and Timothy M. Dolan, the former

Archbishop of Milwaukee, in his official capacity as Archbishop, as trustee, executed the Trust

Agreement Creating the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust (the

"Cemetery Trust"). [Adv. Doc. No. 57-2, at Exhibit A (Exhibit B to Appendix)]. In March 2008,

the Debtor transferred over $55 million (the "Transferred Funds") into a Cemetery Trust account.

[Adv. Doc. No. 56, at ¶ 43 (Exhibit D to Appendix)].

**B.      The Debtor filed for bankruptcy.**

3.      On January 4, 2011, the Debtor filed a petition under chapter 11 of the United

States Bankruptcy Code. [Bankr. Doc. 111 (Exhibit F to Appendix)]. The Debtor's bankruptcy

case was assigned to the Honorable Susan V. Kelley, United States Bankruptcy Judge (Case No.

11-20059-SVK). On or about January 24, 2011, the Committee was appointed pursuant to 11

U.S.C. § 1102 (a)(1).

**C.      The Archbishop, as trustee of the Cemetery Trust, sued the Committee.**

4.      On June 28, 2011, the Cemetery Trust filed a complaint against the Committee

(Case No. 11-02459-SVK) in which it sought a declaration that neither the Cemetery Trust nor

the Transferred Funds were property of the Debtor's bankruptcy estate under 11 U.S.C. § 541.

[Adv. Doc. No. 1 (Exhibit G to Appendix)] (the "Cemetery Trust Litigation"). The Cemetery

Trust later amended its Complaint to substitute Archbishop Jerome E. Listecki, as trustee of the

Cemetery Trust, as the plaintiff. [Adv. Doc. No. 34 (Exhibit A to Appendix)]. Pursuant to Counts

I, II, IV and V of his Amended Complaint, the Archbishop sought a declaration that neither the

Cemetery Trust nor its assets are property of the estate pursuant to Bankruptcy Code section 541.

3

Arguing that the Committee is a government actor, the Archbishop further alleged that avoiding

the $55 million transfer pursuant to Wisconsin or federal fraudulent transfer laws or applying any

provision of the Bankruptcy Code by which some or all of the funds in the Cemetery Trust could

be determined to be property of the Debtor's estate would violate the Cemetery Trust's statutory

rights to the free exercise of religion under the Religious Freedom Restoration Act, 42 U.S.C.

§§2000bb et seq. ("RFRA") and its rights under the First Amendment to the United States

Constitution.

     5.    By stipulation and order of the Bankruptcy Court, the Committee defended the

lawsuit on behalf of the Debtor's estate and filed counterclaims. [Adv. Doc. Nos. 37, 39 (Exhibit

H to Appendix)]. The Committee contends, among other things, that the transfer of the

Transferred Funds to the Cemetery Trust is both actually and constructively fraudulent under the

Bankruptcy Code and Wisconsin law, that the Cemetery Trust is a voidable self-settled trust in

which the Debtor is a beneficiary and that the funds transferred into the Cemetery Trust are

property of the Debtor's estate, and are, therefore, available (in whole or in part) to satisfy the

claims of the Debtor's creditors. [Adv. Doc. No. 50 (Exhibit E to Appendix)]. The Committee

also asserted numerous affirmative defenses that it contended defeated the Cemetery Trust's First

Amendment and RFRA claims, including: (i) federal bankruptcy laws are neutral, generally

applicable laws, which are valid under the Religion Clauses of the First Amendment; (ii) the

application of RFRA to state law is unconstitutional, and (iii) the Committee is a private entity,

and the First Amendment and RFRA are not applicable when the government is not a party to the

suit.

**D.    The Committee moved for partial summary judgment on the First Amendment and RFRA claims and defenses.**

6.    In May of 2012, the Committee filed a motion seeking partial summary judgment against the Cemetery Trust on the solely legal issues involving the Cemetery Trust's statutory and constitutional free exercise claims and defenses (the "MPSJ") [Adv. Doc. No. 57 (Exhibit J to Appendix)]. On July 9, 2012, the Archbishop filed his response to the Committee's MPSJ (the "Response") as well as the Declaration of Archbishop Listecki (the "Listecki Declaration"). [Adv. Doc. No. 69 (Exhibit K to Appendix)]. The Committee's MPSJ raised purely legal questions and did not seek summary judgment on the factual issue of whether permitting the Committee to recover the $55 million fraudulently transferred would impose a substantial burden on the Cemetery Trust's free exercise of religion. In his Response, however, the Archbishop briefed the substantial burden issue, submitted the Listecki Declaration in support and asked the Bankruptcy Court to enter summary judgment in its favor on the entire case on the theory that he had borne his burden of proof on "substantial burden" and, therefore, the court could reach the merits of the RFRA and the First Amendment claims (the "Cross-MSJ").

7.    Prior to the deadline for the Committee to file its reply to the Response and any factual or legal opposition to the Listecki Declaration, the parties agreed that the Cross-MSJ would not go forward and would instead be briefed only after the Bankruptcy Court determined the purely legal issues regarding RFRA and the First Amendment raised in the Committee's MPSJ. [Bank. Doc. No. 1047, at 15-23 (Exhibit L to Appendix)]. This agreement was then memorialized in the Bankruptcy Court's Minute Order. [Bankr. Doc. No 1012, at 3 (Exhibit M to

Appendix)]. Accordingly, the Committee's reply did not address the substantial burden issues or the factual matters raised in the Listecki Declaration.

**E.     The Bankruptcy Court ruled in favor of the Committee on the First Amendment and RFRA Free Exercise claims and defenses.**

8.     On January 17, 2013, the Bankruptcy Court granted the Committee's MPSJ on all theories. *In re Archdiocese of Milwaukee*, 485 B.R. 385 (Bankr. E.D. Wis. 2013). Specifically, the Bankruptcy Court held: (1) The committee of private creditors is not a "government" and is not acting under color of law as that term is used in RFRA or the First Amendment. Therefore, RFRA is not a defense to the Committee's claims or defenses in the Cemetery Trust Litigation, including its argument that the Cemetery Trust funds are available for the estate because their transfer was a fraudulent conveyance; (2) RFRA does not apply because the ultimate law to be applied to determine if the Cemetery Trust's assets are to be included in the Debtor's estate is state law (*Butner v. United States*, 440 U.S. 48, 55 (1979)) and RFRA may not be used to invalidate or narrow state law under *Boerne v. Flores*, 521 U.S. 507 (1997) (holding application of RFRA to state law violates the Constitution's inherent limits of federalism), and (3) The Bankruptcy Code is a neutral and generally applicable statute that does not target religion or religious conduct for negative treatment, and therefore the First Amendment is no defense to any of the Committee's theories of recovery including that the transfer of the funds into the Cemetery Trust was a fraudulent conveyance.

**F.     The District Court reversed the Bankruptcy Court on all theories.**

9.     On July 29, 2013, the District Court, the Honorable Rudolph T. Randa presiding, issued its Decision and Order reversing the Bankruptcy Court (the "Decision and Order"). *See In*

6

*re Archdiocese of Milwaukee*, 496 B.R. 905 (E.D. Wis. 2013). The District Court held that the

private creditors' Committee was a government actor, and therefore, the Cemetery Trust could

invoke the First Amendment and RFRA against the Committee.  The Court further held that the

Cemetery Trust was immunized by the First Amendment and RFRA from the fraudulent transfer

rules governing federal bankruptcy and state trust laws, and therefore, the Cemetery Trust and its

assets are absolutely immune from inclusion in the Debtor's bankruptcy estate. As part of its

decision, the District Court reached out to decide the substantial burden issue (which the parties

had agreed to set aside and the Bankruptcy Court had not addressed) based solely on the

Archbishop's statement in an affidavit that had never been subject to cross-examination or

discovery on the issue below, and in spite of the fact that the issue had not been before the

Bankruptcy Court.

    10.    On August 1, 2013, the District Court entered judgment: (a) denying partial

summary judgment to the Committee, (b) granting summary judgment to the Cemetery Trust,

and (c) dismissing the Cemetery Trust Litigation in its entirety (the "Judgment").  [Dist. Doc.

No. 26 (Exhibit U to Appendix)]. Specifically, the District Court held, "It is ordered and

adjudged that the Official Committee of Unsecured Creditors cannot use the Bankruptcy Code to

make the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust property of the

bankruptcy estate because doing so would violate [RFRA] and the First Amendment to the

United States Constitution."

11.   On August 26, 2013, the Committee appealed from the Decision and Order and the Judgment. [Dist. Doc. No. 36 (Exhibit V to Appendix)]. The appeal is pending before this Court as Case No. 13-2881.

**G.   The Committee discovered Judge Randa's connections to the Cemeteries, the Cemetery Trust Litigation and the Cemetery Trust.**

12.   Shortly after the District Court entered the Judgment overturning the Bankruptcy Court's decision on all theories, counsel for the Committee discovered that Judge Randa's parents, two sisters, a brother–in–law, an uncle and an aunt and his parents-in-law are interred in the Debtor's Cemeteries, the very cemeteries which are to be maintained with the funds transferred from the Debtor's accounts to the Cemetery Trust that the Committee seeks to recover in the Cemetery Trust Litigation. In addition, in response to an emergency discovery motion, on August 12, 2013, the Debtor produced an "Agreement" between Judge Randa and the Debtor for the purchase of burial rights for his parents and the care and maintenance of their crypt spaces (the "Randa Cemetery Contract"). At no time during the Cemetery Trust Litigation did Judge Randa, the Debtor, the Archbishop or the Cemetery Trust (or any other party) disclose any of the foregoing information to the Committee.

13.   On August 12, 2013, the Committee moved the District Court for an order pursuant to 28 U.S.C. §§ 455 (a) and 455(b)(4), recusing Judge Randa from presiding over any aspect of the Cemetery Trust Litigation and any Cemetery Related Proceedings (the "Motion to Recuse") [Dist. Doc. Nos. 30, 31, 32 (Exhibits X, Y, Z to Appendix)]. The Committee also filed a separate Motion to Vacate the Judgment and Decision Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and 28 U.S.C. § 455 [Dist. Doc. Nos.27, 28, 29 (Exhibits AA, BB, CC to Appendix)]

8

(the "Motion to Vacate"). The Motion to Vacate sought to vacate the Decision and Order and the Judgment that are the subject of the appeal in Case No. 13-2881 on the grounds that Judge Randa should have recused himself. On October 1, 2013, Judge Randa entered one order denying both motions (the "Order Denying Motions to Vacate and Recuse"). *See In re Archdiocese of Milwaukee*, 2013 WL 5491895 (E.D. Wis. Oct. 1, 2013).

14.     Pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(ii), on October 29, 2013, the Committee amended its original Notice of Appeal in Case No 13-2881 to include an appeal from the Order Denying Motions to Vacate and Recuse. [Dist. Doc. No. 47 (Case No. 13-CV-179)] (the "Amended Notice of Appeal"). The Amended Notice of Appeal was docketed as a separate appeal by this Court as Case No. 13-3495.

15.     On October 23, 2013, the Committee filed a Petition for Writ of Mandamus Directing the Honorable Rudolph T. Randa to Recuse Himself Pursuant to 28 U.S.C. § 455. The mandamus proceeding was docketed by this Court as Case No. 13-3353. [Docket No. 1 (Case No. 13-3353)].

16.     On November 14, 2013, this Court entered an order consolidating case numbers 13-2881, 13-3353 and 13-3495 for the purpose of briefing and disposition. [Docket No. 28 (Case No. 13-2881)] (the "Consolidated Appeals").

## **RELIEF REQUESTED**

17.     As a result of the Consolidation Order, this Court has ordered the Committee to file only one principal brief and one reply brief to address all of the legal issues raised in the three Consolidated Appeals, which briefs are limited to thirty and fifteen pages, respectively. Fed. R.

App. P. 32(a)(7)(A). The Federal Rules of Appellate Procedure, however, make provision for enlarging the page limit in the case of multiple appeals. For example, Rule 28 provides, "[T]he court will entertain motions for . . . enlargement of the number of pages when the norm established by this rule proves inappropriate." Fed. R. App. P. 28(d)(1)(b) (addressing cross-appeals). Given the number and complexity of the issues in these three consolidated Appeals, the page limits are inadequate and should be enlarged.

18.     The briefing in these Consolidated Appeals must address five main issues to adequately brief the relevant issues for the Court:

> a.   First, whether Judge Randa should have recused himself from presiding over the Cemetery Trust Litigation (i) where he is in violation of 28 U.S.C. § 455(b)(4) because he has a financial interest in the Cemetery Trust itself and in the subject matter of the litigation, and/or (ii) where he is in violation of 28 U.S.C. § 455(a) because he has created the appearance of impropriety by presiding over a case involving the financing and future upkeep of cemeteries in which his parents and other close family members are buried and where the Debtor's contractual obligation to him to provide that upkeep will be funded by the Cemetery Trust. A closely related, but separate, issue is whether, given that Judge Randa should have recused himself, the Judgment and Decision and Order should be vacated pursuant to Federal Rule of Civil Procedure 60(b) and *Liljeberg v. Health Services*

*Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed. 2d 855 (1988).

b.  Second, whether a private creditors' committee is a government actor, which is a necessary threshold issue to any RFRA or First Amendment claim.

c.  Third, assuming that the Creditors' Committee is a government actor, whether the District Court should have reached the issue of whether the fraudulent conveyance law imposes a "substantial burden" on the Cemetery Trust's free exercise of religion based on a single declaration, without discovery, and in the face of an agreement by the parties and an order of the Bankruptcy Court that the issue was not before the court. This issue raises both procedural issues and federal constitutional issues involving the Due Process Clause and the Establishment Clause. Assuming the District Court properly reached the "substantial burden" issue, a related question is whether, in light of the state of evidence, the District Court correctly ruled that the Cemetery Trust carried its burden of proving that the use of any or all of the funds in the Cemetery Trust imposes a substantial burden. Related RFRA issues include whether the District Court should have reached the compelling interest and least restrictive means issues without briefing or oral argument by the parties,

and, assuming those issues were properly before the District Court,

whether it did so correctly.

d.  Fourth, whether RFRA can be applied to state fraudulent conveyance and

trust law in violation of *Boerne v. Flores*, 521 U.S. 507 (1997) (holding

that RFRA cannot be applied to state law).

e.  Fifth, assuming that the Creditors' Committee is a government actor,

whether the relevant provisions of the Bankruptcy Code are neutral and

generally applicable (even where certain provisions create exemptions in

favor of religious debtors), and therefore, under the First Amendment are

properly analyzed under rationality review pursuant to *Employment Div. v.

Smith*, 494 U.S. 872 (1990).

19.   Given the number of decisions and orders below, the number of issues, and the fact

that there may be two separate briefs filed in opposition to the Committee, the Committee

respectfully requests enlargement of the page limits for principal briefs to fifty pages and twenty-

five pages for its reply brief.

## **CONCLUSION**

Wherefore, the Committee requests that the Court grant the Motion and enlarge the page

limits for principal briefs to fifty pages and twenty-five pages for the reply brief.

Respectfully submitted,

Dated: December 3, 2013

By    */s/ Marci A. Hamilton, Esq.*
     Marci A. Hamilton, Esq.
     36 Timber Knoll Drive
     Washington Crossing, PA  18977
     Telephone: (215) 353-8984
     Email: Hamilton.marci@gmail.com

     Special Counsel to the Official Committee
     of Unsecured Creditors


PACHULSKI STANG ZIEHL & JONES LLP


By    */s/ James Stang*
     James I. Stang (CA Bar No. 94435)
     Kenneth H. Brown (CA Bar No. 100396)
     Gillian N. Brown (CA Bar No. 205132)
     Erin Gray (CA Bar No. 157658)
     Pachulski Stang Ziehl & Jones LLP
     10100 Santa Monica Blvd., 13th Floor
     Los Angeles, CA  90067
     Telephone:  (310) 277-6910
     Facsimile:  (310) 201-0760
     E-mail:  jstang@pszjlaw.com
          kbrown@pszjlaw.com
          gbrown@pszjlaw.com
          egray@pszjlaw.com

     -and-

     Albert Solochek (State Bar No. 1011075)
     Howard, Solochek & Weber, S.C.
     324 E. Wisconsin Ave., Suite 1100
     Milwaukee, WI  53202
     Telephone:  (414) 272-0760
     Facsimile:  (414) 272-7265
     E-mail:  asolochek@hswmke.com

     Attorneys for the Official Committee of
     Unsecured Creditors

13

NO. 13-2881
(Consolidated With Case Nos. 13-3353 and 13-3495)

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| IN RE:<br>    ARCHDIOCESE OF MILWAUKEE,<br>        Debtor. | ]<br>]<br>] | Appeals from the United States<br>District Court for the Eastern<br>District of Wisconsin |

IN RE:
    ARCHDIOCESE OF MILWAUKEE,
        Debtor.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS,
        Appellant,

Nos. 13-2881 and 13-3495            v.

JEROME E. LISTECKI, Archbishop, Trustee of the
Archdiocese of Milwaukee Catholic Cemetery Perpetual
Care Trust,
        Appellee.

] Appeals from the United States
] District Court for the Eastern
] District of Wisconsin
]
] No. 2:13-cv-00179-RTR
]
] Rudolph T. Randa, Judge

---

IN RE:
    ARCHDIOCESE OF MILWAUKEE,
        Debtor.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS,
        Petitioner,

RUDOLPH T. RANDA,
        Respondent,

No. 13-3353            v.

JEROME E. LISTECKI, Archbishop, Trustee of the
Archdiocese of Milwaukee Catholic Cemetery Perpetual
Care Trust,
        Party-In-Interest,

          And

ARCHDIOCESE OF MILWAUKEE,
        Party-In-Interest.

] Appeals from the United States
] District Court for the Eastern
] District of Wisconsin
]
] No. 2:13-cv-00179-RTR
]
] Rudolph T. Randa, Judge

Marci A. Hamilton, Esq.
36 Timber Knoll Drive
Washington Crossing, PA  18977
Telephone:  (215) 353-8984
E-mail:    Hamilton.marci@gmail.com

---

### AFFIDAVIT OF MARCI A. HAMILTON IN SUPPORT OF APPELLANT'S MOTION TO INCREASE PAGE LIMIT FOR BRIEFS IN CONSOLIDATED APPEALS

---

I, Marci A. Hamilton, declare under penalty of perjury as follows:

1.     I am an attorney duly admitted and licensed to practice law before all state and federal courts sitting in the State of Pennsylvania and the District of Washington, including the United States Supreme Court and the Supreme Courts for Wisconsin, Pennsylvania, and New Hampshire.  I am also admitted to practice before the United States Court of Appeals for the Second, Third, Fifth, Seventh, and Ninth Circuits. My business address is Benjamin N. Cardozo School of Law, 55 Fifth Avenue; New York, NY  10003.

2.     I am special counsel to the Official Committee of Unsecured Creditors (the "Committee") in the adversary proceeding styled as *Archbishop Jerome E. Listecki, Trustee v. Official Committee of Unsecured Creditors*  (Case No. 11-02459-SVK) which was filed in the United States Bankruptcy Court for the Eastern District of Wisconsin. I was authorized by the Bankruptcy Court to advise the Committee with respect to certain constitutional and federal statutory issues, particularly the Religious Freedom Restoration Act, ("RFRA") and the First Amendment.[Bankr. Doc. No. 732]. I am counsel-of-record to the Committee in the three consolidated appeals that are pending before this Court as Case Nos. 13-2881, 13-3353 and 13-3495 (the "Consolidated Appeals").

3.     I  was also special counsel to the Official Committees of Unsecured Creditors in the chapter 11 bankruptcy cases of the Archdiocese of Portland in Oregon and The Roman Catholic

Bishop of San Diego, and to the Official Tort Litigants Committee in The Catholic Bishop of

Spokane chapter 11 case.  I have also served as constitutional law counsel in clergy abuse cases

before the Wisconsin and New Hampshire Supreme Courts, as well as numerous other cases

including clergy sex abuse cases in California.

       4.    I hold the Paul R. Verkuil Chair in Public Law at the Benjamin N. Cardozo School

of Law, Yeshiva University. I have been a visiting scholar at Princeton Theological Seminary,

the Center of Theological Inquiry, New York University School of Law, and Emory University

School of Law.  I represented the City of Boerne, Texas in a successful challenge to RFRA, a

case that resulted in the United States Supreme Court's decision in *Boerne v. Flores*, 507 U.S.

521 (1997), holding the RFRA unconstitutional as applied to state law.  I clerked for Associate

Justice Sandra Day O'Connor of the United States Supreme Court and Chief Judge Edward R.

Becker of the United States Court of Appeals for the Third Circuit. I received my J.D., magna

cum laude, from the University of Pennsylvania Law School, where I served as editor-in-chief of

the University of Pennsylvania Law Review. I have published two books and numerous law

review articles on Constitutional Law Issues.

       5.    I submit this affidavit in support of the Motion of the Official Committee of

Unsecured Creditors Increase Page Limits for Briefing in Consolidated Appeals (the "Motion").

I have personal knowledge of the facts stated in this affidavit. If called as a witness, I could and

would testify competently to these facts, except where matters are stated on information and

belief. As to those facts, I am informed and believe that they are true.

3

6.      True and correct copies of each of the pleadings cited in the Motion are attached as exhibits to the Appendix to Petition for Writ of Mandamus Directing the Honorable Rudolph T. Randa to Recuse Himself Pursuant to 28 U.S.C. § 455 filed with this Court in Case No. 13-3353 [Docket No. 1-2].

7.      The Archdiocese of Milwaukee (the "Debtor") owns an unencumbered fee simple interest in and operates eight cemeteries and mausoleums (collectively the "Cemeteries"). [Adv. Doc. No. 34, at ¶ 14 (Exhibit A to Appendix)].[1]

8.      On April 2, 2007, the Debtor, as trustor, and Timothy M. Dolan, the former Archbishop of Milwaukee, in his official capacity as Archbishop, as trustee, executed the Trust Agreement Creating the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust (the "Cemetery Trust"). [Adv. Doc. No. 57-2, at Exhibit A (Exhibit B to Appendix)]. In March 2008, the Debtor transferred over $55 million (the "Transferred Funds") into a Cemetery Trust account. [Adv. Doc. No. 56, at ¶ 43 (Exhibit D to Appendix)].

9.      On January 4, 2011, the Debtor filed a petition under chapter 11 of the United States Bankruptcy Code. [Bankr. Doc. 111 (Exhibit F to Appendix)]. The Debtor's bankruptcy case was assigned to the Honorable Susan V. Kelley, United States Bankruptcy Judge (Case No. 11-20059-SVK). On or about January 24, 2011, the Committee was appointed pursuant to 11 U.S.C. § 1102 (a)(1).

---

[1] All references to "Appendix" are to the Appendix to Petition for Writ of Mandamus Directing the Honorable Rudolph T. Randa to Recuse Himself Pursuant to 28 U.S.C. § 455 filed with this Court in Case No. 13-3353 [Docket No. 1-2].

10. On June 28, 2011, the Cemetery Trust filed a complaint against the Committee (Case No. 11-02459-SVK) in which it sought a declaration that neither the Cemetery Trust nor the Transferred Funds were property of the Debtor's bankruptcy estate under 11 U.S.C. § 541. [Adv. Doc. No. 1 (Exhibit G to Appendix)] (the "Cemetery Trust Litigation"). The Cemetery Trust later amended its Complaint to substitute Archbishop Jerome E. Listecki, as trustee of the Cemetery Trust, as the plaintiff. [Adv. Doc. No. 34 (Exhibit A to Appendix)]. Pursuant to Counts I, II, IV and V of his Amended Complaint, the Archbishop sought a declaration that neither the Cemetery Trust nor its assets are property of the estate pursuant to Bankruptcy Code section 541. Arguing that the Committee is a government actor, the Archbishop further alleged that avoiding the $55 million transfer pursuant to Wisconsin or federal fraudulent transfer laws or applying any provision of the Bankruptcy Code by which some or all of the funds in the Cemetery Trust could be determined to be property of the Debtor's estate would violate the Cemetery Trust's statutory rights to the free exercise of religion under the Religious Freedom Restoration Act, 42 U.S.C. §§2000bb et seq. ("RFRA") and its rights under the First Amendment to the United States Constitution.

11. By stipulation and order of the Bankruptcy Court, the Committee defended the lawsuit on behalf of the Debtor's estate and filed counterclaims. [Adv. Doc. Nos. 37, 39 (Exhibit H to Appendix)]. The Committee contends, among other things, that the transfer of the Transferred Funds to the Cemetery Trust is both actually and constructively fraudulent under the Bankruptcy Code and Wisconsin law, that the Cemetery Trust is a voidable self-settled trust in which the Debtor is a beneficiary and that the funds transferred into the Cemetery Trust are

property of the Debtor's estate, and are, therefore, available (in whole or in part) to satisfy the claims of the Debtor's creditors. [Adv. Doc. No. 50 (Exhibit E to Appendix)]. The Committee also asserted numerous affirmative defenses that it contended defeated the Cemetery Trust's First Amendment and RFRA claims, including: (i) federal bankruptcy laws are neutral, generally applicable laws, which are valid under the Religion Clauses of the First Amendment; (ii) the application of RFRA to state law is unconstitutional, and (iii) the Committee is a private entity, and the First Amendment and RFRA are not applicable when the government is not a party to the suit.

12.    In May of 2012, the Committee filed a motion seeking partial summary judgment against the Cemetery Trust on the solely legal issues involving the Cemetery Trust's statutory and constitutional free exercise claims and defenses (the "MPSJ") [Adv. Doc. No. 57 (Exhibit J to Appendix)]. On July 9, 2012, the Archbishop filed his response to the Committee's MPSJ (the "Response") as well as the Declaration of Archbishop Listecki (the "Listecki Declaration"). [Adv. Doc. No. 69 (Exhibit K to Appendix)]. The Committee's MPSJ raised purely legal questions and did not seek summary judgment on the factual issue of whether permitting the Committee to recover the $55 million fraudulently transferred would impose a substantial burden on the Cemetery Trust's free exercise of religion. In his Response, however, the Archbishop briefed the substantial burden issue, submitted the Listecki Declaration in support and asked the Bankruptcy Court to enter summary judgment in its favor on the entire case on the theory that he had borne his burden of proof on "substantial burden" and, therefore, the court could reach the merits of the RFRA and the First Amendment claims (the "Cross-MSJ").

6

13.    Prior to the deadline for the Committee to file its reply to the Response and any factual or legal opposition to the Listecki Declaration, the parties agreed that the Cross-MSJ would not go forward and would instead be briefed only after the Bankruptcy Court determined the purely legal issues regarding RFRA and the First Amendment raised in the Committee's MPSJ. [Bank. Doc. No. 1047, at 15-23 (Exhibit L to Appendix)]. This agreement was then memorialized in the Bankruptcy Court's Minute Order. [Bankr. Doc. No 1012, at 3 (Exhibit M to Appendix)]. Accordingly, the Committee's reply did not address the substantial burden issues or the factual matters raised in the Listecki Declaration.

14.    On January 17, 2013, the Bankruptcy Court granted the Committee's MPSJ on all theories. *In re Archdiocese of Milwaukee*, 485 B.R. 385 (Bankr. E.D. Wis. 2013). Specifically, the Bankruptcy Court held: (1) The committee of private creditors is not a "government" and is not acting under color of law as that term is used in RFRA or the First Amendment. Therefore, RFRA is not a defense to the Committee's claims or defenses in the Cemetery Trust Litigation, including its argument that the Cemetery Trust funds are available for the estate because their transfer was a fraudulent conveyance; (2) RFRA does not apply because the ultimate law to be applied to determine if the Cemetery Trust's assets are to be included in the Debtor's estate is state law (*Butner v. United States*, 440 U.S. 48, 55 (1979)) and RFRA may not be used to invalidate or narrow state law under *Boerne v. Flores*, 521 U.S. 507 (1997) (holding application of RFRA to state law violates the Constitution's inherent limits of federalism), and (3) The Bankruptcy Code is a neutral and generally applicable statute that does not target religion or religious conduct for negative treatment, and therefore the First Amendment is no defense to any

of the Committee's theories of recovery including that the transfer of the funds into the Cemetery Trust was a fraudulent conveyance.

15.     On July 29, 2013, the District Court, the Honorable Rudolph T. Randa presiding, issued its Decision and Order reversing the Bankruptcy Court (the "Decision and Order"). *See In re Archdiocese of Milwaukee*, 496 B.R. 905 (E.D. Wis. 2013). The District Court held that the private creditors' Committee was a government actor, and therefore, the Cemetery Trust could invoke the First Amendment and RFRA against the Committee.  The Court further held that the Cemetery Trust was immunized by the First Amendment and RFRA from the fraudulent transfer rules governing federal bankruptcy and state trust laws, and therefore, the Cemetery Trust and its assets are absolutely immune from inclusion in the Debtor's bankruptcy estate. As part of its decision, the District Court reached out to decide the substantial burden issue (which the parties had agreed to set aside and the Bankruptcy Court had not addressed) based solely on the Archbishop's statement in an affidavit that had never been subject to cross-examination or discovery on the issue below, and in spite of the fact that the issue had not been before the Bankruptcy Court.

16.     On August 1, 2013, the District Court entered judgment: (a) denying partial summary judgment to the Committee, (b) granting summary judgment to the Cemetery Trust, and (c) dismissing the Cemetery Trust Litigation in its entirety (the "Judgment").  [Dist. Doc. No. 26 (Exhibit U to Appendix)]. Specifically, the District Court held, "It is ordered and adjudged that the Official Committee of Unsecured Creditors cannot use the Bankruptcy Code to make the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust property of the

bankruptcy estate because doing so would violate [RFRA] and the First Amendment to the

United States Constitution."

17.     On August 26, 2013, the Committee appealed from the Decision and Order and the

Judgment. [Dist. Doc. No. 36 (Exhibit V to Appendix)]. The appeal is pending before this Court

as Case No. 13-2881.

18.     Shortly after the District Court entered the Judgment overturning the Bankruptcy

Court's decision on all theories, counsel for the Committee discovered that Judge Randa's

parents, two sisters, a brother–in-law, an uncle and an aunt and his parents-in-law are interred in

the Debtor's Cemeteries, the very cemeteries which are to be maintained with the funds

transferred from the Debtor's accounts to the Cemetery Trust that the Committee seeks to

recover in the Cemetery Trust Litigation. In addition, in response to an emergency discovery

motion, on August 12, 2013, the Debtor produced an "Agreement" between Judge Randa and the

Debtor for the purchase of burial rights for his parents and the care and maintenance of their

crypt spaces (the "Randa Cemetery Contract"). At no time during the Cemetery Trust Litigation

did Judge Randa, the Debtor, the Archbishop or the Cemetery Trust (or any other party) disclose

any of the foregoing information to the Committee.

19.     On August 12, 2013, the Committee moved the District Court for an order pursuant

to 28 U.S.C. §§ 455 (a) and 455(b)(4), recusing Judge Randa from presiding over any aspect of

the Cemetery Trust Litigation and any Cemetery Related Proceedings (the "Motion to Recuse")

[Dist. Doc. Nos. 30, 31, 32 (Exhibits X, Y, Z to Appendix)]. The Committee also filed a separate

Motion to Vacate the Judgment and Decision Order Pursuant to Federal Rule of Civil Procedure

60(b)(6) and 28 U.S.C. § 455 [Dist. Doc. Nos.27, 28, 29 (Exhibits AA, BB, CC to Appendix)] (the "Motion to Vacate"). The Motion to Vacate sought to vacate the Decision and Order and the Judgment that are the subject of the appeal in Case No. 13-2881 on the grounds that Judge Randa should have recused himself. On October 1, 2013, Judge Randa entered one order denying both motions (the "Order Denying Motions to Vacate and Recuse"). *See In re Archdiocese of Milwaukee*, 2013 WL 5491895 (E.D. Wis. Oct. 1, 2013).

20.     Pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(ii), on October 29, 2013, the Committee amended its original Notice of Appeal in Case No 13-2881 to include an appeal from the Order Denying Motions to Vacate and Recuse. [Dist. Doc. No. 47 (Case No. 13-CV-179)] (the "Amended Notice of Appeal"). The Amended Notice of Appeal was docketed as a separate appeal by this Court as Case No. 13-3495.

21.     On October 23, 2013, the Committee filed a Petition for Writ of Mandamus Directing the Honorable Rudolph T. Randa to Recuse Himself Pursuant to 28 U.S.C. § 455. The mandamus proceeding was docketed by this Court as Case No. 13-3353. [Docket No. 1 (Case No. 13-3353)].

22.     On November 14, 2013, this Court entered an order consolidating case numbers 13-2881, 13-3353 and 13-3495 for the purpose of briefing and disposition. [Docket No. 28 (Case No. 13-2881)] (the "Consolidated Appeals").

23.     The briefing in these Consolidated Appeals must address five main issues to adequately brief the relevant issues for the Court.

a. First, whether Judge Randa should have recused himself from presiding over the Cemetery Trust Litigation (i) where he is in violation of 28 U.S.C. § 455(b)(4) because he has a financial interest in the Cemetery Trust itself and in the subject matter of the litigation, and/or (ii) where he is in violation of 28 U.S.C. § 455(a) because he has created the appearance of impropriety by presiding over a case involving the financing and future upkeep of cemeteries in which his parents and other close family members are buried and where the Debtor's contractual obligation to him to provide that upkeep will be funded by the Cemetery Trust. A closely related, but separate, issue is whether, given that Judge Randa should have recused himself, the Judgment and Decision and Order should be vacated pursuant to Federal Rule of Civil Procedure 60(b) and *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed. 2d 855 (1988).

b. Second, whether a private creditors' committee is a government actor, which is a necessary threshold issue to any RFRA or First Amendment claim.

c. Third, assuming that the Creditors' Committee is a government actor, whether the District Court should have reached the issue of whether the fraudulent conveyance law imposes a "substantial burden" on the Cemetery Trust's free exercise of religion based on a single declaration,

without discovery, and in the face of an agreement by the parties and an order of the Bankruptcy Court that the issue was not before the court. This issue raises both procedural issues and federal constitutional issues involving the Due Process Clause and the Establishment Clause. Assuming the District Court properly reached the "substantial burden" issue, a related question is whether, in light of the state of evidence, the District Court correctly ruled that the Cemetery Trust carried its burden of proving that the use of any or all of the funds in the Cemetery Trust imposes a substantial burden. Related RFRA issues include whether the District Court should have reached the compelling interest and least restrictive means issues without briefing or oral argument by the parties, and, assuming those issues were properly before the District Court, whether it did so correctly.

d.   Fourth, whether RFRA can be applied to state fraudulent conveyance and trust law in violation of *Boerne v. Flores*, 521 U.S. 507 (1997) (holding that RFRA cannot be applied to state law).

e.   Fifth, assuming that the Creditors' Committee is a government actor, whether the relevant provisions of the Bankruptcy Code are neutral and generally applicable (even where certain provisions create exemptions in favor of religious debtors), and therefore, under the First Amendment are

properly analyzed under rationality review pursuant to *Employment Div. v. Smith*, 494 U.S. 872 (1990).

24.   Given the number of decisions and orders below, the number of issues, and the fact that there may be two separate briefs filed in opposition to the Committee (one by the Cemetery Trust and one by the Debtor), the Committee respectfully submits that the thirty page limit for its initial brief and the fifteen page limit for its reply brief will be inadequate. I base my opinion on the complexity and number of issues involved and also on my years of experience briefing constitutional issues before appellate courts. Therefore, the Committee requests that the Court increase the page limits to fifty pages for principal briefs and to twenty-five pages for its reply brief.

Dated this ____ day of November, 2013.

_____
Marci A. Hamilton

Subscribed and sworn to before me
this 29th day of ____ 2013.

_____
Notary Public, State of _____
My commission expires:_____.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MICHAEL K. McCORRISTON, Notary Public
Newtown Twp., Bucks County
My Commission Expires February 3, 2015

13

☑

# CERTIFICATE OF SERVICE
### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on _____December 3, 2013_____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ __Paige Doyle_____

☐

# CERTIFICATE OF SERVICE
### Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                                              address:

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

s/_____