NO. 13-2881
(Consolidated With Case Nos. 13-3353 and 13-3495)

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| IN RE:<br>      ARCHDIOCESE OF MILWAUKEE,<br>          Debtor. | Appeals from the United States<br>District Court for the Eastern<br>District of Wisconsin |
| OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS,<br>          Appellant, | No. 2:13-cv-00179-RTR |
| Nos. 13-2881 and 13-3495                    v. | Rudolph T. Randa, Judge |
| JEROME E. LISTECKI, Archbishop, Trustee of the<br>Archdiocese of Milwaukee Catholic Cemetery Perpetual<br>Care Trust,<br>          Appellee. | |

| | |
|---|---|
| IN RE:<br>      ARCHDIOCESE OF MILWAUKEE,<br>          Debtor. | Appeals from the United States<br>District Court for the Eastern<br>District of Wisconsin |
| OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS,<br>          Petitioner, | No. 2:13-cv-00179-RTR |
| RUDOLPH T. RANDA,<br>          Respondent, | Rudolph T. Randa, Judge |
| No. 13-3353                    v. | |
| JEROME E. LISTECKI, Archbishop, Trustee of the<br>Archdiocese of Milwaukee Catholic Cemetery Perpetual<br>Care Trust,<br>          Party-In-Interest,<br><br>          and<br><br>ARCHDIOCESE OF MILWAUKEE,<br>          Party-In-Interest. | |

Marci A. Hamilton, Esq.
36 Timber Knoll Drive
Washington Crossing, PA  18977
Telephone:   (215) 353-8984
E-mail:        Hamilton.marci@gmail.com
Co-counsel to Petitioner Official Committee of
Unsecured Creditors

Appeal from and Petition for a Writ of Mandamus to
the United States District Court
For the Eastern District of Wisconsin
Case No. 13-CV-179
The Honorable Rudolph T. Randa

**SUPPLEMENTAL APPENDIX TO BRIEF OF APPELLANT
AND PETITIONER OFFICIAL COMMITTEE OF UNSECURED
CREDITORS**

DOCS_LA:274594.2

The Official Committee of Unsecured Creditors (the "Committee") submits this

supplemental appendix in connection with its Appeal from and Petition for a Writ of Mandamus

to the United States District Court For the Eastern District of Wisconsin. In accordance with

Circuit Rule 30(b), true and correct copies of the documents listed below are attached.

**TABLE OF CONTENTS**

| Name of Document | Page No. |
|---|---|
| Amended Complaint | Sapp 001 |
| Trust Agreement Creating the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust (Exhibit A to the Declaration of Kenneth Brown in Support of the Committee's Motion for Summary Judgment on Count III of Amended Complaint) | Sapp 016 |
| June 4, 2007 letter from Archbishop Dolan to Claudio Cardinal Hummes[ADOM112303-112304] | Sapp 025 |
| Answer and Affirmative Defenses to First Amended Counterclaims | Sapp 027 |
| First Amended Answer to Amended Complaint and Affirmative Defenses; and First Amended Counterclaims | Sapp 055 |
| Schedule F (Creditors Holding Unsecured Nonpriority Claims) | Sapp 126 |
| Complaint | Sapp 147 |
| Second Stipulation Regarding the Official Committee of Unsecured Creditors' Standing to Defend the Adversary Proceeding, Bring Avoidance Actions Related to the Amended Complaint and Litigate and Propose or Accept a Settlement of the Adversary Proceeding; Order thereon | Sapp 155 |
| Cemetery Care Claim | Sapp 164 |
| Official Committee of Unsecured Creditors Motion for Summary Judgment on Count III of Amended Complaint, Memorandum of Law; Affidavit of Kenneth Brown | Sapp 170 |
| Trustee's Response to Official Committee of Unsecured Creditors Motion for Summary Judgment on Count III of Amended Complaint; Trustee's Statement of Proposed Material Facts; Declaration of Archbishop Jerome Listecki | Sapp 216 |
| Transcript of Status Conference on October 18, 2012 | Sapp 278 |
| Appearances and Summary of Disposition | Sapp 325 |
| Reply of the Official Committee of Unsecured Creditors to Trustee's Opposition to Motion for Partial Summary Judgment on Count III of Amended Complaint | Sapp 329 |
| Decision on Motion for Summary Judgment | Sapp 352 |
| Order Granting Motion for Summary Judgment | Sapp 364 |
| Amended Emergency Motion for Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Directing Debtor's Production of Documents; Affidavit of James I. Stang | Sapp 366 |
| Official Committee of Unsecured Creditors' Motion to Recuse the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related | Sapp 419 |

| Proceedings | |
|---|---|
| Memorandum in Support of Official Committee of Unsecured Creditors' Motion to Recuse the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings | Sapp 422 |
| Affidavit of James I. Stang in Support of Official Committee of Unsecured Creditors' Motion to Recuse the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings | Sapp 445 |
| Official Committee of Unsecured Creditors' Motion to Vacate Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(b) and 28 U.S.C. § 455 | Sapp 490 |
| Memorandum in Support of Official Committee of Unsecured Creditors' Motion to Vacate Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(b) and 28 U.S.C. § 455 | Sapp 493 |
| Affidavit of James I Stang in Support of Official Committee of Unsecured Creditors' Motion to Vacate Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(b) and 28 U.S.C. § 455 | Sapp 525 |
| Notice of Appointment of Committee of Unsecured Creditors | Sapp 570 |

Respectfully submitted,

Dated: January 15, 2014          By     */s/ Marci A. Hamilton, Esq.*
                                        Marci A. Hamilton, Esq.
                                        36 Timber Knoll Drive
                                        Washington Crossing, PA  18977
                                        Telephone: (215) 353-8984
                                        Email: Hamilton.marci@gmail.com

                                        Special Counsel to the Official Committee
                                        of Unsecured Creditors

DOCS_LA:274594.2

Respectfully submitted,

Dated: January 15, 2014                    By    _/s/ Marci A. Hamilton, Esq._
                                                 Marci A. Hamilton, Esq.
                                                 36 Timber Knoll Drive
                                                 Washington Crossing, PA 18977
                                                 Telephone: (215) 353-8984
                                                 Email: Hamilton.marci@gmail.com

                                                 Special Counsel to the Official Committee
                                                 of Unsecured Creditors


PACHULSKI STANG ZIEHL & JONES LLP


                                           By    _/s/ James Stang_
                                                 James I. Stang (CA Bar No. 94435)
                                                 Kenneth H. Brown (CA Bar No. 100396)
                                                 Gillian N. Brown (CA Bar No. 205132)
                                                 Erin Gray (CA Bar No. 157658)
                                                 Pachulski Stang Ziehl & Jones LLP
                                                 10100 Santa Monica Blvd., 13th Floor
                                                 Los Angeles, CA 90067
                                                 Telephone: (310) 277-6910
                                                 Facsimile: (310) 201-0760
                                                 E-mail:  jstang@pszjlaw.com
                                                          kbrown@pszjlaw.com
                                                          gbrown@pszjlaw.com
                                                          egray@pszjlaw.com

                                                 -and-

                                                 Albert Solochek (State Bar No. 1011075)
                                                 Howard, Solochek & Weber, S.C.
                                                 324 E. Wisconsin Ave., Suite 1100
                                                 Milwaukee, WI 53202
                                                 Telephone: (414) 272-0760
                                                 Facsimile: (414) 272-7265
                                                 E-mail:  asolochek@hswmke.com

                                                 Attorneys for the Official Committee of
                                                 Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re

|  |  |
|---|---|
| Archdiocese of Milwaukee, | Bankruptcy Case No. 11-20059-SVK |
| Debtor. |  |

|  |  |
|---|---|
| Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, | |
| Plaintiff, | Adv. Proc. No. 11-02459-SVK |
| v. | |
| Official Committee of Unsecured Creditors, | |
| Defendant. | |

## AMENDED COMPLAINT

Now comes Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee

Catholic Cemetery Perpetual Care Trust (the "Juridic Trust"), by his attorneys, Godfrey & Kahn,

S.C., and seeks as follows:

### PARTIES

### The Debtor

1.      The Archdiocese of Milwaukee (the "Debtor") is a Wisconsin nonstock

corporation subject to treatment as a public juridic person under Codex Iuris Canonici ("Canon

Law").

Drafted by:
William E. Duffin
Timothy F. Nixon
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI 53202-3590
Phone: 414-273-3500
Fax: 414-273-5198

2.     The Debtor was established on November 28, 1843, and was created an archbishopric on February 12, 1875.

3.     The Debtor's mission is to serve Catholic parishes, schools and institutions so that they may effectively carry out their mission, to serve the people of God in Southeastern Wisconsin, and to serve the broader community.

4.     Since 1857 and in furtherance of its religious mission, the Debtor has operated and maintained various Catholic cemeteries and mausoleums (collectively, the "Milwaukee Catholic Cemeteries").

### The Trust & The Trustee

5.     For decades, the Debtor's audited financial statements have confirmed that money has consistently been set aside for the purpose of providing perpetual care for the Milwaukee Catholic Cemeteries. Such money (the "Original Trust Fund") was used to fund the Juridic Trust (collectively with the Original Trust Fund, the "Trust"). Jerome E. Listecki is the Archbishop of Milwaukee and in such capacity is the Trustee of the Juridic Trust (the "Trustee").

6.     On April 2, 2007, the Debtor executed an agreement with the Trustee establishing the Juridic Trust to formalize the trust relationship in which perpetual care funds had been held.

7.     In addition to its status under the civil law of the State of Wisconsin, the Juridic Trust constitutes a juridic person under Canon Law. As such, the Trustee and the Juridic Trust act in conjunction with the vision of the Roman Catholic Church; however, the Juridic Trust functions as an autonomous body with independent decision-making authority, separate and distinct from that of the Debtor.

**The Committee**

8.     The Defendant is the Official Committee of Unsecured Creditors, which was appointed to the above-referenced bankruptcy proceeding on January 24, 2011, pursuant to 11 U.S.C. § 1102(a)(1).

**JURISDICTION**

9.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, 11 U.S.C. § 105 and Fed. R. Bankr. P. 7001(2) & (9).

10.     Venue is proper under 28 U.S.C. § 1409, as this matter relates to the above-referenced bankruptcy proceeding, which is pending in this district.

11.     This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

**BACKGROUND**

12.     The Milwaukee Catholic Cemeteries include Catholic burial facilities within the geographic boundaries of the Debtor including, without limitation, individual burial plots, crypts, niches and property dedicated for future use as burial facilities (collectively, the "Cemetery Property").

13.     The Cemetery Property currently includes approximately 1,000 acres of land, in which more than 500,000 individuals are interred.  An estimated 3,000 new burials take place each year.

14.     Currently, the Debtor operates and maintains the following cemeteries and/or mausoleums: All Saints, Calvary, Holy Cross, Holy Trinity, Mount Olivet, Resurrection, Saint Adalbert, and Saint Joseph.

3

15.     Since at least 1929, the Debtor has recognized an obligation to hold funds in trust to provide for the perpetual care of the Milwaukee Catholic Cemeteries in Southeastern Wisconsin (the "Perpetual Care Funds").

16.     Perpetual Care Funds have been segregated from the Debtor's general assets, as confirmed by the Debtor's audited financial statements going back decades.

17.     In recent decades, individuals who wished to be interred in the Milwaukee Catholic Cemeteries have delivered funds to the Debtor, with such funds entitling them to a burial plot, crypt, or niche, and the perpetual care of such spaces.  Previously, perpetual care was an option offered to cemetery customers, with some, often because of a lack of resources, not electing perpetual care.

18.     However, the Debtor has an obligation to provide perpetual care for all Cemetery Property, regardless of whether the Debtor ever received payment for a specific internment space or for the perpetual care thereof.

19.     The Juridic Trust constitutes a separate and distinct legal entity from the Debtor, rather than a division or asset of the Debtor, as evidenced by all accounting related to the Juridic Trust, its independent creation and management, and its unique tax identification.

20.     The Debtor does not have any rights to terminate or revoke the Juridic Trust; it holds no supervisory or other authority over the Juridic Trust.  The Juridic Trust is solely controlled by the terms set forth in its formation documents.

21.     The Debtor receives quarterly distributions from the Juridic Trust for costs incurred in providing for the perpetual care of the Cemetery Property.

22.     The Committee has indicated its intent to pursue the Trust funds as assets of the Debtor's estate.  *See* Official Committee of Unsecured Creditors' Motion for an Order Pursuant

to Federal Rule of Bankruptcy Procedure 2004 Directing Debtor's Production of Documents, filed March 31, 2011 [Docket No. 176].

23.     The Trust corpus has taken nearly a century to accumulate and, if the Committee is successful in converting the Trust funds into property of the Debtor's estate, there will be no funds for the perpetual care of the Cemetery Property.

24.     Accordingly, the Trustee is obligated to bring this action to preserve the religious, charitable or other lawful purposes of the Trust.

## DECLARATORY RELIEF

25.     For any of the following reasons, the Court must enter judgment finding that the funds currently held in the Trust cannot be used to satisfy any of the claims the Committee intends to pursue against the Debtor.

### Count I: Trust Assets Are Not Property Of the Estate

26.     Under 11 U.S.C. 541(a)(1), property of the estate is limited to the legal or equitable interest of the debtor in property as of the commencement of the case.

27.     The Debtor had no legal or equitable interest in the Trust as of the commencement of the case.

28.     Trust assets are not property of the Debtor's bankruptcy estate.

29.     Trust assets are instead held in an excluded trust under one or more of the following theories.

####     A.     Express Trust

30.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 through 29, above.

31.     On April 2, 2007, the Debtor created and, in 2008, funded, the Juridic Trust.

5

32.     The Juridic Trust was created under the laws of the State of Wisconsin and Canon Law for religious, charitable and other lawful trust purposes.

33.     The Juridic Trust has been and remains an express trust pursuant to the terms of the trust agreement creating it.  The Debtor has neither legal nor equitable interest in the Trust.

34.     Accordingly, the Juridic Trust is not property of the Debtor's estate, regardless of the nature or source of the funds used to create it.

**B.     Express Charitable Trust.**

35.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 through 29, above.

36.     The Wisconsin Statutes permit a trust to be created for charitable purposes, including but not limited to, trusts for the advancement of religion.

37.     The Original Trust was established for charitable purposes, including among them preserving the sacred nature of the Cemetery Property and maintaining the Cemetery grounds.

38.     The Milwaukee Catholic Cemeteries are protected by the Church's law, which guarantees reverence and respect for the remains of the dead.

39.     The Church affirms the sacredness of the Catholic cemetery as land that has been blessed and consecrated by the Church for the specific use of Christian burial.

40.     Decrees from Church authority mandate that cemeteries be maintained in a manner befitting their sacred purpose, and that money must be set aside to provide ongoing upkeep of the property.

41.     To give voice to its Canonical and ethical obligations to provide perpetual care for the Milwaukee Catholic Cemeteries, the Debtor established the Original Trust.

42.     On April 2, 2007, the Juridic Trust was established to formalize the existence of said charitable trust pursuant to the terms set forth in the trust agreement creating it.

43.     The Debtor does not have any interest in the Juridic Trust, as neither the benefit of, nor the interest in, the Juridic Trust is held by the Debtor.

44.     Accordingly, the Juridic Trust and its assets are not property of the Debtor's estate.

### C.     Express Cemetery Trust.

45.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 through 29, above.

46.     Alternatively, the Wisconsin Statutes permit a trust to be created for the purpose of maintaining, keeping in repair and preserving graves, tombs, monuments, gravestones, and cemeteries.

47.     The Debtor was required under the Wisconsin Statutes to put funds in trust to provide for the perpetual care of the Cemetery Property.

48.     The Debtor also had a contractual duty to create and fund a cemetery trust.

49.     The Original Trust, established to provide for the perpetual care of the Cemetery Property, qualifies as an excluded express cemetery trust pursuant to Wisconsin Statutes.

50.     On April 2, 2007, the Juridic Trust was formally established to formalize the existence of said cemetery trust pursuant to the terms set forth in the trust agreement creating it.

51.     The Debtor does not have any interest in the Juridic Trust, as neither the benefit of, nor the interest in, the Juridic Trust is held by the Debtor.

52.     Accordingly, the Juridic Trust and its assets are not property of the Debtor's estate.

### D.     Resulting Trust.

53.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 through 29, above.

54.     Alternatively, a resulting trust is one implied from law and the intentions of the parties with respect to the underlying transaction.

55.     The Debtor's interactions with purchasers of graves, crypts, and mausoleums resulted in the creation of a resulting trust based on the nature of those transactions and the intentions manifested by the parties, *i.e.*, that the Debtor must hold perpetual care funds in trust.

56.     On April 2, 2007, the Juridic Trust was established to formalize the existence of said resulting trust pursuant to the terms set forth in the trust agreement.

57.     The Debtor does not have any interest in the Juridic Trust, as neither the benefit of, nor the interest in, the Juridic Trust is held by the Debtor.

58.     Accordingly, the Juridic Trust and its assets are not property of the Debtor's estate.

### Count II: Because the Trust *Res* Was Never Commingled, The *Res* Is Not Property Of The Estate

59.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 through 58, above.

60.     Alternatively, the Committee cannot defeat the Trust's excluded status because the trust *res* was never commingled, *i.e.*, the *res* was not created until it crossed the threshold of the segregated account, and it was not commingled at any point thereafter.

61.     The Debtor has, from time to time, deposited monies into the Trust, the sole purpose of which is and was to provide for the perpetual care of the grave sites, mausoleum spaces and crypts sold, and to further the Debtor's wider religious obligations.

62.    By making these deposits, the Debtor has manifested its intention to create the Trust for religious, charitable or other lawful trust purposes.

63.    The Debtor historically has determined the amount of funds to transfer into the segregated trust account based on the revenues generated from the sale of grave sites and mausoleum crypts.

64.    The Trust *res* was created when funds were deposited into the Trust.

65.    In 2008, the funds then held in trust for perpetual care were used to fund the Juridic Trust, which was established to formalize the existing trust relationship under which the Debtor held such funds.

66.    The instrument creating the Juridic Trust – aptly-named, the "Trust Agreement Creating the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust" – indicates that the monies held in trust must be used solely for religious, charitable or other lawful trust purposes.    The trust agreement does not authorize the funds to be used to benefit anyone or anything else, including the Debtor.

67.    Therefore, the Perpetual Care Funds are and have been held in trust.    The Trust has and has always had a trustee who has held the trust *res* and is and has been subject to equitable obligations to deal with the Trust for the benefit of another.    And since its inception, the Trust has had a trust *res* that has been held by the trustee for religious, charitable or other lawful trust purposes.

68.    The trust *res* is and has been held in a segregated account.

69.    The money collected by the Debtor from the purchasers became a trust *res* when it crossed the threshold of the segregated account that held the Perpetual Care Funds in trust.

70.     Therefore, the trust *res* is not and has never been commingled with non-trust property, and as such, the Committee cannot defeat the Trust's excluded status because the *res* was never commingled.

**Count III: Violation of the First Amendment
and/or the Religious Freedom and Restoration Act**

71.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 through 70, above.

72.     The Committee cannot use the Bankruptcy Code to make the Perpetual Care Funds property of the estate because doing so would violate the First Amendment and/or the Religious Freedom and Restoration Act.

73.     The First Amendment of the United States Constitution strictly forbids governments from making or enforcing any law that prohibits the free exercise of religion.

74.     Giving further commitment to the United States' deeply-held, historical commitment to religious liberty, in 1993, Congress passed the Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1(b) (1993).

75.     Using the Perpetual Care Funds to pay the Debtor's creditors would substantially burden a sincere religious exercise.

76.     Among other burdens, if Perpetual Care Funds are deemed property of the Debtor's estate, the sacred grave sites will not be provided with the care required under Canon Law, the Catholic Church's historical and religious traditions and mandates, as well as the Debtor's historical and religious traditions and mandates, among other sources.

77.     The Trust, the Trustee, and the Debtor had and have a sincere intent to provide perpetual care for the bodies of the dead, who, according to Canon Law and the Catholic tradition, were required to seek burial in Catholic cemeteries, and whose graves must be cared

for in a certain fashion in order to maintain their character as sacred places as defined by Canon Law and the Catholic tradition.

78.     For decades, if not hundreds of years, Church authority has mandated that cemeteries be maintained in a manner befitting their sacred purpose, and that money must be set aside to provide ongoing upkeep of the cemeteries.

79.     Catholic cemeteries are protected by the Church's law, which guarantees reverence and respect for the remains of the dead.

80.     Offerings given by the Faithful for a certain purpose cannot be alienated, and can only be applied for that same purpose.   Therefore, by accepting funds designated for the perpetual care of cemeteries, a Canonical obligation arose, mandating that the funds be used for perpetual care.

81.     There is also a canonical obligation to maintain vigilance that funds given for a particular purpose be maintained, and not be lost or damaged.

82.     Under Canon Law, ownership of an ecclesiastical good – including cemeteries and cemetery property – must be protected.

83.     The property of an autonomous pious foundation, like the Juridic Trust, must be used for its designated purpose and is governed by canonical norms governing ecclesiastical property.

84.     Ecclesiastical property is not freely alienable.  Norms and laws govern alienation of ecclesiastical property, and Canon Law mandates that a just penalty be imposed upon one who fails to comply with those norms and laws.

85.     Under Canon Law, all persons who lawfully take part in the administration of ecclesiastical goods are bound to fulfill their duties in the name of the Church.

11

86.     In short, the care and maintenance of Catholic cemeteries, cemetery property, and the remains of those interred therein is a fundamental exercise of the Catholic faith, which cannot be substantially burdened by even a generally applicable, neutral government law.

87.     Accordingly, making the Perpetual Care Funds available to creditors would violate the First Amendment and/or RFRA.

**Count IV: Because the Perpetual Care Funds Were Not Commingled At the Time the Petition Was Filed, They Are Not Property Of The Estate.**

88.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 through 58, above.

89.     Alternatively, even if the *res* was commingled at some point between its creation and segregation, the Perpetual Care Funds were not commingled at the time the petition was filed.

90.     Property of the estate does not include property in which the Debtor holds, as of the commencement of the case, only legal title and not an equitable interest.

91.     Therefore, even if tracing is required in some instances, the Trust is not required to trace the Perpetual Care Funds from the *res* creation until they were placed into a segregated account, because as of the date that the petition was filed, the Perpetual Care Funds were already segregated in a trust account.

**Count V: Because The Trust Can Satisfy A Reasonable Tracing Requirement, The Perpetual Care Funds Are Not Property Of The Estate**

92.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 through 58, above.

12

93.     Alternatively, even if the *res* was commingled at some point between its creation and segregation, because the Trust can satisfy one or more of the following reasonable tracing requirements, the Trust funds are not property of the estate.

94.     Under Supreme Court precedent, if a court decides that "tracing" is required, the court is directed to employ "reasonable assumptions" as to what level of tracing is required.

95.     Depending on the underlying facts and circumstances, there are several tracing approaches that might be reasonable.

96.     In light of all of the circumstances, including the realities of how the Debtor and other cemeteries conduct their business, the Trust need only show a nexus between the payments the Debtor received and the funds currently held in trust.

97.     The amount that ended up in the segregated account corresponds to the amount the Debtor was obligated to set aside in trust.

98.     There is a demonstrable nexus between the payments the Debtor received from the purchasers of the grave sites, cemetery plots, mausoleums, and perpetual care, and the funds that were held in the segregated trust.

99.     Alternatively, the Trust and/or the beneficiaries have a lien on the Perpetual Care Funds as an investment out of mixed property.

100.    If the Perpetual Care Funds were commingled before being segregated, the segregated account is rightfully considered an investment out of mixed property.

101.    Therefore, even if strict tracing is not possible, the equities demand that the Trust be allowed to follow the funds into the new investment, *i.e.*, the segregated account.

102.    Alternatively, if the Perpetual Care Funds should not have been commingled at any point before being placed in the segregated account, the Committee cannot demonstrate that the Perpetual Care Funds are rightfully property of the Debtor's estate.

103.    The Perpetual Care Funds are thus subject to a trust in favor of the Trust and/or the beneficiaries.

104.    Alternatively, the Trust and/or beneficiaries need only roughly identify which money belongs to the Trust and/or beneficiaries.

105.    The Perpetual Care Funds were all placed into the segregated account pursuant to the same set of sales transactions conducted with the Debtor -- *i.e.*, the purchase of the grave sites, cemetery plots, mausoleums, and perpetual care from the Debtor.

106.    The amount that ended up in the segregated account corresponds to the amount the Debtor was obligated to set aside in trust.

107.    Therefore, the Trust and/or beneficiaries are able to roughly identify the funds that rightfully belong to the Trust and/or beneficiaries.

108.    Alternatively, the Debtor was a mere conduit for the Perpetual Care Funds, which were intended to be used for specific purposes.

109.    Therefore, even if the funds were commingled, the Perpetual Care Funds cannot be designated as an asset of the Debtor's estate.

## **RELIEF REQUESTED**

WHEREFORE, the Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, respectfully requests that the Court enter an order:

A.      Declaring that the Trust is not property of the Debtor's estate;

14

B.      Declaring that the funds held in the Trust are not property of the Debtor's estate;
and

C.      Granting such other relief as the Court deems just and appropriate.

Dated this 13th day of January, 2012.

                                        GODFREY & KAHN, S.C.

                                        */s/ Timothy F. Nixon*
                                        Timothy F. Nixon
                                        William E. Duffin
                                        Matthew M. Wuest
                                        780 North Water Street
                                        Milwaukee, WI  53202-3590
                                        Phone:   414-273-3500
                                        Fax:       414-273-5198
                                        Email:    tnixon@gklaw.com
                                                      weduffin@gklaw.com
                                                      mwuest@gklaw.com

                                        *Attorneys for Plaintiff, Archdiocese of Milwaukee*
                                        *Catholic Cemetery Perpetual Care Trust*

7347656_2

# TRUST AGREEMENT
## Creating The
## ARCHDIOCESE OF MILWAUKEE
## CATHOLIC CEMETERY PERPETUAL CARE TRUST

THIS TRUST AGREEMENT is made and entered into as of April 2, 2007, by and between the Archdiocese of Milwaukee ("Archdiocese"), as Trustor, and The Most Reverend Timothy M. Dolan, Archbishop of Milwaukee ("Archbishop"), in his official capacity as Archbishop, as Trustee, as follows:

## RECITALS

WHEREAS, the Archdiocese holds certain funds designated for the perpetual care of Cemeteries and Mausoleums within the geographic boundaries of the Archdiocese ("Perpetual Care Funds"); and

WHEREAS, the Archdiocese desires and intends to formalize the trust relationship in which the Perpetual Care Funds are held by creating the trust hereinafter described; and

WHEREAS, the Archbishop, in his official capacity as Archbishop, is willing to serve as Trustee for the Perpetual Care Funds as hereinafter provided.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises contained herein, the parties hereto agree as follows:

1. **INTRODUCTION**

   1.1. **Definitions.** When used herein with initial capital letters, the following words have the following meanings:

     1.1.1. **Trust Agreement** – this written document creating the trust, and as the same may be amended from time to time.

     1.1.2. **Archbishop** – the person duly appointed as the Archbishop of Milwaukee, according to the norm of the Code of Canon Law, or if the See of the Archdiocese of Milwaukee is impeded or vacant, that person to whom belongs the governance of the Archdiocese, in accordance with the provisions of the Code of Canon Law.

     1.1.3. **Archdiocese** – the Archdiocese of Milwaukee, civilly, a nonstock corporation organized under the laws of Wisconsin, and, ecclesiastically, a public juridic person under the Code of Canon Law.

ADOM000017

1.1.4. **Archdiocese Of Milwaukee Catholic Cemetery Perpetual Care Trust** – the name of the trust hereby created.

1.1.5. **Cemeteries and Mausoleums** – burial facilities (including without limitation individual graves, crypts and niches and property dedicated for future use as burial facilities) owned by the Archdiocese as part of the ministry of the Roman Catholic Church or by a separate entity that has undertaken such function as a corporal work of mercy to maintain and preserve the same as sacred places within the meaning of Can. 1205 of the Code of Canon Law. The term shall include, but shall not be limited to, the following facilities:

    1.1.5.1.    All Saints Cemetery & Mausoleum

    1.1.5.2.    Calvary Cemetery & Mausoleum

    1.1.5.3.    Holy Cross Cemetery & Mausoleum

    1.1.5.4.    Holy Trinity Cemetery

    1.1.5.5.    Mount Olivet Cemetery & Mausoleum

    1.1.5.6.    Resurrection Cemetery & Mausoleum

    1.1.5.7.    Saint Adalbert Cemetery & Mausoleum

    1.1.5.8.    Saint Joseph Cemetery & Mausoleum

1.1.6. **Charitable Organization** – an organization that is (i) described in either Section 170(c)(1) through (5) of the Internal Revenue Code or in Section 501(c)(3) of the Internal Revenue Code, and (ii) exempt from taxation under Section 501(c)(3) of the Internal Revenue Code.

1.1.7. **Code of Canon Law** – the body of ecclesiastical laws promulgated for the Latin Rite Church by the Supreme Pontiff of the Roman Catholic Church.

1.1.8. **Fund** – The assets (including principal and income) held hereunder in trust by the Trustee for the restricted purposes set forth herein.

1.1.9. **Internal Revenue Code** - the Internal Revenue Code of 1986, including applicable regulations for the specified section of the Internal Revenue Code. Any reference in this Trust Agreement to a section of the Internal Revenue Code, including the applicable regulation, shall be considered also to mean and refer to any subsequent amendment or replacement of that section or regulation.

1.1.10. **Investment Manager** - the person or persons, other than the Trustee, appointed as permitted hereunder to manage all or a portion of the Fund.

2

WHD\1122422.7

ADOM000017.002
Sapp 017

1.1.11. **Trustee** - the Trustee originally named hereunder and his successor or successors in trust, which shall be the Archbishop (as herein defined) serving from time to time. The Trustee is a "trustee" within the meaning of Wisconsin Statutes Section 701.01(8), including as that section may be modified or amended from time to time.

1.1.12. **Trustor** – the Archdiocese of Milwaukee.

1.2. **Rules of Interpretation and Governing Law.** Whenever appropriate, words used herein in the singular may be read in the plural, or words used herein in the plural may be read in the singular; the masculine may include the feminine; and the words "hereof," "herein" or "hereunder" or other similar compounds of the word "here" shall mean and refer to this entire Trust Agreement and not to any particular paragraph or section of this Trust Agreement unless the context clearly indicates to the contrary. The titles given to the various sections of this Trust Agreement are inserted for convenience of reference only and are not part of this Trust Agreement, and they shall not be considered in determining the purpose, meaning or intent of any provision hereof. Any reference in this Trust Agreement to a statute or regulation shall be considered also to mean and refer to any subsequent amendment or replacement of that statute or regulation. This instrument has been executed and delivered in the State of Wisconsin and shall be governed, enforced and interpreted in accordance with the laws of the State of Wisconsin, except where federal law preempts state law.

1.3. **Charitable Purpose.** The trust hereby created is organized and shall be operated exclusively for religious, benevolent, or charitable purposes, and no part of the net earnings thereof shall inure to the benefit of any private shareholder or individual.

2. **TRUST FUND**

2.1. **Fund Established; Restricted Purpose.** A Fund shall be established upon the initial contribution hereto by the Trustor. The Fund shall be held by the Trustee in trust and dealt with in accordance with the provisions of this Trust Agreement. At no time shall any part of the corpus or income of the Fund be used for or diverted to purposes other than (i) for the exclusive benefit, in perpetuity, of the Cemeteries and Mausoleums in such manner and at such times as the Trustee, in his discretion, determines to be reasonable and proper consistent with status of the Cemeteries and Mausoleums as sacred places within the meaning of Can. 1205 of the Code of Canon Law, or (ii) for payment of the reasonable expenses of administration of the Fund, which shall be payable out of the Fund.

2.2. **Management and Investment of Fund.** The Fund in the hands of the Trustee, together with all additional contributions made thereto and all net income thereof, shall be controlled, managed, invested, reinvested and ultimately paid and distributed for the use and benefit of the Cemeteries and Mausoleums by the Trustee with all the powers, rights and discretion generally possessed by trustees, and with all the additional powers, rights and discretion conferred upon the Trustee under this Trust Agreement.

3

WHD\1122422.7

ADOM000017.003

2.3. **Other Trust Powers.** Except to the extent that the Trustee is subject to the authorized and properly given investment directions of an Investment Manager (and in extension, but not in limitation, of the rights, powers and discretions conferred upon the Trustee herein), the Trustee shall have and may exercise from time to time in the administration of the Fund, without order or license of any court, any one or more or all of the following rights, powers and discretions:

2.3.1. **Investments.** To invest and reinvest the assets of the Fund in accord with applicable policies of the Archdiocese in effect from time to time, the provisions of which are incorporated herein by reference, consistent with its socially responsible investment guidelines periodically reviewed and promulgated.

2.3.2. **Power of Sale.** To sell, exchange or otherwise dispose of any asset of whatsoever character at any time held by the Trustee in trust hereunder.

2.3.3. **Segregation, Etc.** To segregate any part or portion of the Fund for the purpose of administration or distribution thereof and to hold the Fund uninvested whenever and for so long as the same is likely to be required for the payment in cash of distributions normally expected to be made in the near future, or whenever, and for as long as, market conditions are uncertain, or for any other reason which requires such action or makes such action advisable.

2.3.4. **Uninvested Cash.** To hold uninvested reasonable amounts of cash whenever it is deemed advisable to do so to facilitate disbursements or for other operational reasons, and to deposit the same, with or without interest.

2.3.5. **Holding Title.** To register any investment held in the Fund in the name of the Trustee, without trust designation, or in the name of a nominee or nominees, and to hold any investment in bearer form, but the records of the Trustee shall at all times show that all such investments are part of the Fund.

2.3.6. **Servants and Agents.** To retain and employ such attorneys, custodians, consultants, accountants and agents as may be necessary or desirable, in the opinion of the Trustee, in the administration of the Fund, and to pay them such reasonable compensation for their services as an expense of administration of the Fund, including, but not by way of limitation, power to employ and retain counsel upon any matter of doubt as to the meaning of or interpretation to be placed upon the Trust Agreement or any provisions thereof with reference to any question arising in the administration of the Fund or pertaining to the distribution thereof or pertaining to the rights and liabilities of the Trustee hereunder. The Trustee, in any such event, may act in reliance upon the advice, opinions, records, statements and computations of any attorneys and agents and on the records, statements and computations of any servants so selected by him in good faith.

2.3.7. **Claims.** To institute, prosecute and maintain, or to defend, any proceeding at law or in equity concerning the Fund or the assets thereof or any claims thereto, or the interests of Cemeteries and Mausoleums at the sole cost and expense of the Fund.

4

WHD\1122422.7

ADOM000017.004
Sapp 019

The Trustee shall be under no duty or obligation to institute, prosecute, maintain or defend any suit, action or other legal proceeding unless he shall be indemnified to his satisfaction against all expenses and liabilities which he may sustain or anticipate by reason thereof.

2.3.8. **Reorganizations, Etc.** To institute, participate and join in any plan of reorganization, readjustment, merger or consolidation with respect to the issuer of any securities held by the Trustee hereunder, and to use any other means of protecting and dealing with any of the assets of the Fund which he believes reasonably necessary or proper and, in general, to exercise each and every other power or right with respect to each asset or investment held by him hereunder as individuals generally have and enjoy with respect to their own assets and investment, including power to vote upon any securities or other assets having voting power which he may hold from time to time and to give proxies with respect thereto, with or without power of substitution or revocation, and to deposit assets or investments with any protective committee, or with trustees or depositaries designated by any such committee or by any such trustees or any court. Notwithstanding the foregoing, an Investment Manager shall have any or all of such powers and rights with respect to Fund assets for which it has investment responsibility but only if (and only to the extent that) such powers and rights are expressly given to such Investment Manager in a written agreement signed by it and copied to the Trustee. Furthermore, neither the Trustee nor the Investment Manager, as the case may be, shall vote or take similar actions with respect to any security in which it may have an interest, direct or indirect. In such case, the Trustee or Investment Manager shall retain an independent fiduciary to vote or take such similar action, as applicable. In all other cases, such powers and rights shall be exercised solely by the Trustee.

2.3.9. **Determination of Intent.** In any matter of doubt affecting the meaning, purpose or intent of any provision of this Trust Agreement, which directly affects his duties, to determine such meaning, purpose or intent.

2.3.10. **Releases, Etc.** To collect, receive, receipt and give quittance for all payments that may be or become due and payable on account of any asset in trust hereunder which has not, by act of the Trustee taken pursuant thereto, been made payable to others; and payment thereof by the company issuing the same, or by the party obligated thereon, as the case may be, when made to the Trustee hereunder or to any person or persons designated by the Trustee, shall acquit, release and discharge such company or obligated party from any and all liability on account thereof.

2.3.11. **Borrowing.** To borrow such sum or sums from time to time as the Trustee considers necessary or desirable and in the best interest of the Fund, and for that purpose to mortgage or pledge any part of the Fund.

2.3.12. **Withhold Payment.** To retain any funds or property subject to any dispute without liability for payment of interest, and to withhold payment or delivery thereof until final adjudication of the dispute by a court of competent jurisdiction.

5

WHD\1123422.7

ADOM000018
Sapp 020

2.3.13. **Lend Securities.** To engage in the lending of securities.

2.3.14. **Delegation.** To delegate to an Investment Committee of the Archdiocese decisions relative to the investment and reinvestment of the assets of the Fund and the selection, retention and discharge of Investment Managers and Custodians, incurring no liability in so doing.

2.3.15. **General.** To have and to exercise such other and additional powers as may be advisable for the effective and economical administration of the Fund as the Trustee may determine in his discretion consistent with the purpose of the Fund as described herein.

2.4. **Limitation on Certain Investments; Exculpation.** In the case of the Trustee or any Investment Manager acting hereunder, such persons shall observe and follow (and shall incur no liability in so doing) all guidelines for socially responsible investing established and communicated in writing by the Archdiocese from time to time, notwithstanding the provisions of any law now or hereafter in effect relating to prudent investing.

2.5. **Custodian.** The Trustee may designate one or more banks or trust companies to act as custodian of the assets of the Fund, in which event the Trustee and custodian shall enter into a written agreement with terms and provisions acceptable to the Trustee and the following shall apply:

2.5.1. **Appointment.** The Trustee shall enter into an agreement with the bank or trust company so named employing it as agent of the Trustee and a custodian of the Fund delegating to the custodian substantially similar powers, rights and duties reserved to the Trustee in regard to the retention and administration of the Fund, it being intended that, the conditions and limitations otherwise applicable to the Trustee shall be applicable to the custodian, but only with respect to the portion of the Fund in its custody, and the custodian shall have responsibility for the holding and safekeeping of those assets of the Fund, and shall maintain the records and accounts, and shall submit to the appropriate party or parties the periodic reports, otherwise required of the Trustee as to the Fund.

2.5.2. **Resignation; Termination.** The provisions of such agreement shall include the right reserved to the custodian to resign as such at any time by giving prior written notice to the Trustee and the right reserved to the Trustee to terminate the employment of the custodian by giving prior written notice to the custodian.

2.5.3. **Compensation.** The custodian shall be entitled to reasonable compensation for its duties as such as may be agreed upon from time to time between the custodian and the Trustee, which compensation shall be payable out of the Fund.

2.5.4. **Agent for Trustee.** At the Trustee's discretion, the Trustee shall transfer to the custodian assets of the Fund and, until its appointment as custodian ends and all assets held by the custodian have been returned to the possession of the Trustee, the custodian shall hold and be responsible for the retention and administration of the assets of the Fund as agent of the Trustee.

6

ADOM000019

**2.6.** **Limitation on Use of Fund.** The Fund hereunder shall at all times be a trust fund separate and apart from the assets of the Archdiocese, which may not contribute assets to the Fund other than assets designated for perpetual care and support of the Cemeteries and Mausoleums. No part of the corpus or income of the Fund shall be used for, or diverted to, purposes other than for the exclusive benefit of the Cemeteries and Mausoleums (except as specifically provided herein).

## 3. CONCERNING THE TRUSTEE

### 3.1. Dealings with Trustee.

**3.1.1.** **No Duty to Inquire.** No person, firm or corporation dealing with the Trustee shall be required to take cognizance of the provisions of this Trust Agreement or be required to make inquiry as to the authority of the Trustee to do any act which the Trustee shall do hereunder. No person, firm or corporation dealing with the Trustee shall be required to see to the faithful performance by the Trustee of its duties hereunder. Any such person, firm or corporation shall be entitled to assume conclusively that the Trustee is properly authorized to do any act that he shall do hereunder. Any such person, firm or corporation shall be under no liability to anyone whomsoever for any act done hereunder pursuant to the written direction of the Trustee.

**3.1.2.** **Assumed Authority.** Any such person, firm or corporation may conclusively assume that the Trustee has full power and authority to receive any money or property becoming due and payable to the Trustee. No such person shall be bound to inquire as to the disposition or application of any money or property paid to the Trustee or paid in accordance with the written directions of the Trustee.

**3.1.3.** **Payments by Trustee.** The Trustee shall not be obligated to inquire whether any payee of funds is entitled thereto or whether any payment, allocation or distribution requested by Cemeteries and Mausoleums is proper, or within the terms of this Trust Agreement, and shall not be accountable for any payment, allocation or distribution made by the Trustee in good faith. The Trustee shall not be liable or responsible for any payment made by him in good faith without actual notice or knowledge of the changed condition or status of the payee.

**3.2.** **Compensation of Trustee.** The Trustee shall serve without compensation hereunder, but shall be entitled to pay from or be reimbursed from the trust for his reasonable expenses, fees, costs and other charges incurred by him or payable by him on account of services rendered in administering the trust.

**3.3.** **Accountings by Trustee.** The Trustee shall render to the Trustor an accounting with respect to the administration of the trust on an annual basis.

### 3.4. Investment Managers.

**3.4.1.** **Appointment and Qualifications.** The Trustee (or his delegate per Section 2.3.14 hereof) shall have the power to appoint and may from time to time appoint

WHDA\122422.7

7

ADOM000020

one or more Investment Managers to direct the Trustee (or his delegate per Section 2.3.14 hereof) in the investment of, or to assume complete investment responsibility over, all or any portion of the Fund. An Investment Manager may be any person or firm which is either (1) registered as an investment adviser under the Investment Advisers Act of 1940, (2) a bank, or (3) an insurance company which is qualified to perform the services of an Investment Manager under the laws of more than one state.

3.4.2. **Investment Objective.** The Trustee (or his delegate per Section 2.3.14 hereof) with the advice of the Investment Manager or Managers shall determine the general investment characteristics and objectives of the Fund.

3.4.3. **Removal.** The Trustee (or his delegate per Section 2.3.14 hereof) may remove any such Investment Manager and shall have the power to appoint a successor or successors from time to time in succession to any Investment Manager who shall be removed, resign or otherwise cease to serve hereunder.

3.4.4. **Relation to Other Fiduciaries.** The Trustee (including his delegate per Section 2.3.14 hereof), acting in good faith, may rely on investment directions given to the Trustee (or his delegate per Section 2.3.14 hereof) with respect to the designated portion of the Fund, and, provided he has acted in good faith, the Trustee (including his delegate per Section 2.3.14 hereof) shall be released, indemnified, and held harmless from all liability (including legal and other professional fees) for any loss arising out of or on account of any action taken or not taken by him pursuant to the directions of such Investment Manager. This section shall survive the termination of this Trust Agreement.

3.4.5. **Fees and Expenses.** The fees and expenses of any Investment Manager, as agreed upon from time to time between the Investment Manager and the Trustee (or his delegate per Section 2.3.14 hereof), shall be charged to and paid from the Fund as determined by the Trustee in good faith.

3.4.6. **Policies to be Provided.** Any Investment Manager serving hereunder shall maintain a copy of the investment policies of the Archdiocese in effect from time to time.

4. **PROTECTIVE PROVISIONS**

4.1. **No Voluntary Assignment.** This Trust Agreement is intended for the protection and benefit of the Cemeteries and Mausoleums, and no interest hereunder shall be susceptible of pledge, assignment, anticipation, hypothecation or other voluntary alienation.

4.2. **Involuntary Alienation.** No beneficial interest in the Fund herein shall be subject to attachment, garnishment, execution following judgment or other legal process while in the possession or control of the Trustee.

8

WHD\11123432.7

ADOM000021
Sapp 023

5. **AMENDMENT AND TERMINATION**

5.1. <u>Amendment</u>. The Trustor with the consent of the Trustee hereby reserves the power to amend this Trust Agreement in order to further the tax-exempt charitable purposes described herein. In addition, the Trustee, acting alone, may amend administrative provisions of the trust deemed advisable for the more efficient administration of the trust provided that no such amendment may adversely affect the tax-exempt charitable purpose of the trust. In all other respects, this Trust Agreement shall be irrevocable and not subject to amendment or revocation.

5.2. <u>Termination</u>. If for any reason the trust terminates, the remaining assets hereof shall be distributed to one or more Catholic Charitable Organizations designated by the Trustee having public charity status under the Internal Revenue Code and which carry out a purpose which, in the discretion of the Trustee, is compatible with the purpose for which the trust was established.

6. **GENERAL MATTERS**

6.1. <u>Limitation on Authority</u>.

6.1.1. **Fiduciaries Generally.** No action taken by any fiduciary hereunder shall be the responsibility of any other fiduciary and no fiduciary shall have the duty to question whether any other fiduciary is fulfilling all of the responsibility imposed upon such other fiduciary by this Trust Agreement.

6.1.2. **Trustee.** The duties, responsibilities and obligations of the Trustee shall be those set forth in this Trust Agreement.

6.2. <u>Determinations, Rules and Regulations</u>. The Trustee shall make such determinations, rules or regulations as may be required from time to time in the administration of this trust. The Trustee and other interested parties may act and rely upon all information reported to them hereunder and need not inquire into the accuracy thereof, nor be charged with any notice to the contrary.

     **IN WITNESS WHEREOF,** the undersigned has caused these presents to be executed, all as of the day and year first above written.

Archdiocese of Milwaukee, Trustor

By: _____
The Most Reverend Timothy M. Dolan,
President

Attest: _____
Barbara Anne Cusack,
Secretary

Archbishop of Milwaukee, Trustee

By: _____
The Most Reverend Timothy M. Dolan

9

WHDM\1224237

ADOM000022
Sapp 024

# ARCHDIOCESE ✝ OF MILWAUKEE

### OFFICE OF THE ARCHBISHOP

June 4, 2007

His Eminence, Claudio Cardinal Hummes, O.F.M., Prefect
Congregation for the Clergy
Piazza Pio XII 3
00193 Rome, Italy

Your Eminence:

As Archbishop of the Archdiocese of Milwaukee, Wisconsin, U.S.A., I respectfully request permission to proceed with the alienation of property owned by this same Archdiocese. The alienation will involve the transfer of assets from the patrimony of the Archdiocese of Milwaukee to a separate juridic person, an autonomous pious foundation known as The Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust.

The Trust was established by my decree on May 4, 2007 after a number of years of extensive study and consultation. Both the College of Consultors and the Finance Council gave their approval to the establishment of this Trust. Copies of the establishment decree and the statutes governing the Trust are enclosed. A separate civil trust will also be established in accord with the laws of the State of Wisconsin.

Having reviewed the financial condition of the Archdiocese of Milwaukee and studied the funds which are part of its patrimony, I am in a position to present for consideration the transfer of some restricted diocesan assets to this Trust. The specific fund to be transferred is that which covers the perpetual care needs of the Catholic cemeteries owned and operated by the Archdiocese of Milwaukee. The transfer of these assets to the Trust would bring with it the transfer of this same obligation and restriction. By transferring these assets to the Trust, I foresee an improved protection of these funds from any legal claim and liability. A careful analysis by experts has concluded that the funds currently held for perpetual care needs are sufficient for the long-term use by the Catholic cemeteries. The value of the fund to be transferred was $56,943,983.35 as of December 31, 2006.

Consent to this transfer of assets has been obtained from the Archdiocesan Finance Council and the Archdiocesan College of Consultors. Minutes attesting to their action are also enclosed.

3501 South Lake Drive, P.O. Box 070912, Milwaukee, WI 53207-0912
PHONE: (414)769-3497 • WEB SITE: www.archmil.org

CONFIDENTIAL                    ADOM123503

p. 2

His Eminence, Claudio Cardinal Hummes, O.F.M.
The Congregation for Clergy


    The Congregation for Education granted a previous permission for an act of extraordinary administration in relation to St. Francis Seminary in 1988 (Protocol no. 747/88/4). Four permissions for alienation by the Archdiocese of Milwaukee have been granted by the Congregation for Clergy in recent years: St. Aemilian Home (Protocol no. 185669/III), Catholic Memorial High School (Protocol no. 190062/III), St. John School for the Deaf (Protocol no. 190072/III), St. Charles Boys' Home (Protocol Number 186280/III). An additional permission for alienation involving debt forgiveness for St. Francis Seminary was granted by the Congregation (Protocol no. 20010143). Most recently, a canon 1295 transaction involving Pius XI High School was granted by the Congregation in December 2003 (Prot. No. 20032461).

    A copy of the most recent financial statement for the Archdiocese of Milwaukee is also enclosed.

    Thank you for your consideration of this request. If there is additional information which you need, please do not hesitate to contact me.

    With prayerful best wishes and sentiments of esteem, I remain,


                        Sincerely yours in Christ,



                        Most Reverend Timothy M. Dolan
                        Archbishop of Milwaukee

**CONFIDENTIAL**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re:

        Archdiocese of Milwaukee,           Chapter 11

                Debtor.            Bankruptcy Case No. 11-20059-SVK

---

        Archbishop Jerome E. Listecki, as Trustee
of the Archdiocese of Milwaukee Catholic
Cemetery Perpetual Care Trust,

                        Adv. Proc. No. 11-2459-SVK

                Plaintiff,

v.

        Official Committee of Unsecured Creditors,

                Defendant.

---

## ANSWER AND AFFIRMATIVE DEFENSES TO
## FIRST AMENDED COUNTERCLAIMS

---

      Plaintiff Archbishop Jerome E. Listecki ("Archbishop Listecki"), as Trustee of the

Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust (the "Juridic Trust"), by his

attorneys, Godfrey & Kahn, S.C., for his Answer to Defendant Official Committee of Unsecured

Creditors' (the "Committee") First Amended Counterclaims, hereby responds as follows:

Timothy F. Nixon
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI 53202-3590
Phone: 414-273-3500
Fax: 414-273-5198
tnixon@gklaw.com

William E. Duffin
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI 53202-3590
Phone: 414-273-3500
Fax: 414-273-5198
weduffin@gklaw.com

Matthew M. Wuest
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI 53202-3590
Phone: 414-273-3500
Fax: 414-273-5198
mwuest@gklaw.com

## Introduction

1.      Admits that on January 13, 2012, Archbishop Listecki filed an Amended Complaint seeking declaratory relief that neither the Juridic Trust[1] nor the assets in the Juridic Trust are property of the Archdiocese of Milwaukee's (the "Debtor" or "ADOM") chapter 11 estate; admits that the Committee is the only defendant named by Archbishop Listecki in this adversary proceeding; and denies all remaining allegations contained in Paragraph 1.

2.      Paragraph 2 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki admits that the ADOM created and funded the Juridic Trust.  Archbishop Listecki admits that the Archbishop of Milwaukee of the Roman Catholic Church is the sole member of the ADOM; admits that, while serving as Archbishop, Archbishop Listecki is the *President Ex Officio* of the ADOM; and denies all remaining allegations contained in Paragraph 2.

3.      Paragraph 3 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations contained in Paragraph 3 of the Counterclaims.

4.      Admits that the trust agreement and consent resolution speak for themselves, respectfully refers the Court to the same for their complete and correct contents, and denies the remaining allegations in Paragraph 4 of the Counterclaims.

5.      Denies.

6.      Denies.

---

[1] Defined terms shall have the meanings assigned in the Amended Complaint.  In its Answer, the Committee elected to use the term "Cemetery Trust," as opposed to "Juridic Trust," to describe the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust.  Plaintiff believes that "Juridic Trust" is the proper term to use.

7.      Admit that, pursuant to a stipulation, the Committee has been granted standing to assert and litigate certain Counterclaims, and denies the remaining allegations contained in Paragraph 7.

8.      Admits that the Committee seeks the relief indicated in Paragraph 8, but denies that the Committee is entitled to such relief.

9.      Admits that the Amended Complaint speaks for itself, and respectfully refers the Court to the same for its complete and correct contents; and denies all allegations inconsistent therewith.

10.     Admits that the Amended Complaint speaks for itself, and respectfully refers the Court to the same for its complete and correct contents; and denies all allegations inconsistent therewith.

11.     Paragraph 11 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 11 of the Counterclaims.

12.     Admits that the Committee makes the contentions indicated in Paragraph 12; denies that these contentions have merit; admits that funds have been transferred to the Juridic Trust subsequent to March 2008; and denies all remaining allegations contained in Paragraph 12.

13.     Admits that the resolution of this litigation is important to the ADOM's Chapter 11 estate, but denies all remaining allegations contained in Paragraph 13.

### **Jurisdiction**

14.     Admits.

15.     Admits.

16.    Admits that Counts I, II, IV, and V of Amended Complaint constitute core proceedings, and admits that Count III of the Amended Complaint constitutes a non-core proceeding.

**Parties**

17.    Admits.

18.    Admits.

19.    Denies that the Committee's use of the word "allegedly" is proper in this context, but as to the remaining allegations in paragraph 19 of the Counterclaims, admits.

**Background**

20.    Denies this allegation as currently stated, and respectfully refers the Court to the Amended Complaint and subsequent pleadings filed in this Adversary Proceeding for a complete and correct statement of the ADOM's obligations with regard to the cemeteries and mausoleums.

21.    Admits that the ADOM operates and maintains its cemeteries in furtherance of its religious mission, and denies any allegation in Paragraph 21 inconsistent therewith.

22.    Admits, upon representation of counsel, that the subject accounting standards became effective after the date referenced in Paragraph 22, and respectfully refers the Court to the same for their complete and correct contents, the terms of which speak for themselves; furthermore, denies the implication that the Trust had no restrictions for the times relevant to this paragraph.

23.    Admits that the subject accounting standard referenced in Paragraph 23 speaks for itself and respectfully refers the Court to the same for its complete and correct contents.

24.    Paragraph 24 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations contained in Paragraph 24 of the Counterclaims.

4

25.     Admits that the subject accounting standards referenced in Paragraph 25 speaks for itself and respectfully refers the Court to the same for its complete and correct contents.

26.     Admits that the ADOM's audited financial statements and the notes thereto, as well as the Amended Complaint, speak for themselves, and respectfully refers the Court to the same for their complete and correct contents; and denies all allegations inconsistent therewith.

27.     Admits that the ADOM's audited financial statements and the notes thereto speak for themselves and respectfully refers the Court to the same for their complete and correct contents; and denies all allegations inconsistent therewith.

28.     Admits that the ADOM's audited financial statements and the notes thereto speak for themselves and respectfully refers the Court to the same for their complete and correct contents; and denies all allegations inconsistent therewith.

29.     Denies.

30.     Denies.

31.     Admits that, prior to the commencement of this adversary proceeding, various plaintiffs filed suit against the ADOM in Wisconsin state court seeking damages for alleged sex abuse, but lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31 and, therefore, denies the same.

32.     Admits that the ADOM defended itself in the actions referenced in Paragraph 32, but denies the remaining allegations contained therein.

33.     Admits that some of the actions referenced in Paragraph 31 were stayed due to the filing of the ADOM's bankruptcy petition.

34.     Admits that the ADOM settled the California litigation and denies any allegations contained in Paragraph 34 inconsistent with the terms of that settlement.

35.     Admits that the Consent Resolution of Directors speaks for itself and respectfully refers the Court to the same for its complete and correct contents; and denies all allegations inconsistent therewith.

36.     Admits that the trust agreement speaks for itself and respectfully refers the Court to the same for its complete and correct contents; and denies all allegations inconsistent therewith.

37.     Admits that the trust agreement speaks for itself and respectfully refers the Court to the same for its complete and correct contents; and denies all allegations inconsistent therewith.

38.     Admits that the trust agreement speaks for itself and respectfully refers the Court to the same for its complete and correct contents; and denies all allegations inconsistent therewith.

39.     Admits that the trust agreement speaks for itself and respectfully refers the Court to the same for its complete and correct contents; and denies all allegations inconsistent therewith.

40.     Admits that the trust agreement speaks for itself and respectfully refers the Court to the same for its complete and correct contents; and denies all allegations inconsistent therewith.

41.     Denies that Section 4 of the Juridic Trust contains provisions that "are commonly referred to as 'spendthrift' provisions," but admits that the trust agreement speaks for itself and respectfully refers the Court to the same for its complete and correct contents.

42.     Admits that the Wisconsin Supreme Court's decisions referenced in Paragraph 42 speak for themselves and respectfully refers the Court to the same for their complete and correct contents, and denies the remaining allegations contained in Paragraph 42.

43.     Admits that, in or around March 2008, the ADOM transferred approximately $55 million previously held in trust to the Juridic Trust, and denies any allegation in Paragraph 43 inconsistent therewith.

44.     Admits that the ADOM's audited financial statements and the notes thereto speak for themselves; respectfully refers the Court to the same for their complete and correct contents; and denies all remaining allegations contained in Paragraph 44 of the Counterclaims.

45.     Admits that the ADOM's financial statements and the notes thereto speak for themselves and respectfully refers the Court to the same for their complete and correct contents; and denies all allegations inconsistent therewith.

46.     Admits that the ADOM's financial statements and the notes thereto speak for themselves and respectfully refers the Court to the same for their complete and correct contents; and denies all allegations inconsistent therewith.

47.     Admits that ADOM's Great Plains general ledger speaks for itself, respectfully refers the Court to the same for its complete and correct contents, and denies all allegations inconsistent therewith. The remaining allegations of Paragraph 47 contain legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the remaining allegations in Paragraph 47 of the Counterclaims.

48.     Paragraph 48 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 48 of the Counterclaims.

49.     Admits that, prior to March 2008, ADOM transferred funds from its M&I Account to its U.S. Bank account.

50.     Denies.

51.     Admits that, as of March 2008, the balance of trust funds at U.S. Bank was approximately $55 million, and denies all remaining allegations contained in Paragraph 51 of the Counterclaims.

52.     Admits that, in March 2008, ADOM transferred approximately $55 million of trust funds to fund the Juridic Trust, and denies all remaining allegations contained in Paragraph 52 of the Counterclaims.

53.     Denies.

54.     Denies.

55.     Admits that, after the initial funding of the Juridic Trust in March 2008, ADOM has made subsequent transfers of Perpetual Care Funds to the Juridic Trust, but denies all remaining allegations contained in Paragraph 55 of the Counterclaims.

56.     Paragraph 56 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 56 of the Counterclaims.

57.     Admits that ADOM's Great Plains general ledger speaks for itself, respectfully refers the Court to the same for its complete and correct contents, and denies all allegations inconsistent therewith.  The remaining allegations of Paragraph 57 contain legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the remaining allegations contained in Paragraph 57 of the Counterclaims.

58.     Admits that for the present time and fiscal year 2011, funds are/were deposited into one of several ADOM bank accounts owned by ADOM that are referred to as the "burial account," "mausoleum account," and the "split account," but denies the remaining allegations as currently stated.

59.    Paragraph 59 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 59 of the Counterclaims.

60.    Admits that, prior to August 2010, ADOM transferred funds related to grave and/or crypt sales from its Park Bank account to its M&I account and that, in or about August 2010, ADOM transferred the funds in its M&I account to its account at Johnson Bank.  The remaining allegations in Paragraph 60 contain legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the remaining allegations contained in Paragraph 60 of the Counterclaims.

61.    Admits that ADOM's Great Plains general ledger and its monthly operating reports speak for themselves and respectfully refers the Court to the same for their complete and correct contents, but denies that "Subsequent Transfers," as that term is defined by the Committee, have been made to the Juridic Trust.

62.    Archbishop Listecki denies that "Subsequent Transfers," as that term is defined by the Committee, have been made to the Juridic Trust, and admits that "ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST," "ARCHDIOCESE OF MILW-INC CR FND," and "ARCHDIOCESE OF MILWAUKEE-PERPETUAL CARE TRUST" may be used to describe the Juridic Trust.

63.    Admits.

64.    Admits.

65.    Admits.

66.    Admits that the Original Complaint speaks for itself and respectfully refers the Court to the same for its complete and correct contents; and denies all allegations inconsistent therewith.

9

67.    Admits.

68.    Admits that, on or about December 20, 2011, the Committee delivered a letter to counsel for Archbishop Listecki; admits that the letter speaks for itself; and respectfully refers the Court to the same for its complete and correct contents.  The remainder of Paragraph 68 and the contents of the referenced letter contain legal conclusions to which no response is required. To the extent a response is required, Archbishop Listecki denies these allegations.

69.    Admits that the Amended Complaint speaks for itself; respectfully refers the Court to the same for its complete and correct contents; and denies any remaining allegations in Paragraph 69.

70.    Admits that, on January 13, 2012, Archbishop Listecki filed the Amended Complaint; admits that the Amended Complaint speaks for itself; respectfully refers the Court to the same for its correct and complete contents; and denies all allegations inconsistent therewith.

71.    Admits that the Amended Complaint speaks for itself, respectfully refers the Court to the same for its correct and complete contents, and denies all allegations inconsistent therewith.

72.    Denies.

73.    Paragraph 73 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations contained in Paragraph 73 of the Counterclaims.

## FIRST COUNTERCLAIM

### (Turnover of Assets in Cemetery Trust under 11 U.S.C. § 542)

74.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 74 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

75.     Admits that, under the trust agreement, ADOM is the trustor of the Juridic Trust, and denies any allegation contained in Paragraph 75 inconsistent therewith.

76.     Admits that, under at least one of the theories set forth in the Amended Complaint, the ADOM contributed assets to be held in the Juridic Trust.

77.     Denies.

78.     Denies.

79.     Admits that the trust agreement speaks for itself, respectfully refers the Court to the same for its complete and correct contents, and denies all allegations inconsistent therewith.

80.     Paragraph 80 contains legal conclusions to which no response is required. To the extent a response is required, Archbishop Listecki states that Wisconsin law speaks for itself with respect to self-settled spendthrift trusts and respectfully refers the Court to the same for its complete and correct contents.

81.     Admits that WIS. STAT. § 701.06(6) speaks for itself, respectfully refers the Court to the same for its complete and correct contents, and denies all allegations inconsistent therewith.

82.     Admits that Section 544(a) of the Bankruptcy Code and the *Second Order Conferring Standing* speak for themselves, respectfully refers the Court to the same for their complete and correct contents, and denies all allegations inconsistent therewith.

83.     Denies.

84.     Denies.

85.     Denies.

86.     Admits that the Committee prays for the relief indicated in Paragraph 86, but denies that the Committee is entitled to such relief.

## SECOND COUNTERCLAIM

**(Declaratory Relief: The Cemetery Trust is Void as to Judgment Creditors and the Funds and Assets in the Cemetery Trust are Property of ADOM's Estate under 11 U.S.C. §§ 541(a)(1) and 544(a) and Wis. Stat. 701.06(6))**

87.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 87 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

88.    Admits that the Amended Complaint speaks for itself, respectfully refers the Court to the same for its complete and correct contents, and denies all allegations inconsistent therewith.

89.    Denies that Section 706.06(6) exists under the Wisconsin Statutes and, therefore, denies the allegations in Paragraph 89 of the Counterclaims.

90.    Admits that the Committee prays for the relief indicated in Paragraph 90, but denies that the Committee is entitled to such relief.

## THIRD COUNTERCLAIM

**(Declaratory Relief: The Cemetery Trust is Void because ADOM, as Beneficiary, Controls the Cemetery Trust and the Funds and Assets in the Cemetery Trust are Property of ADOM's Estate under 11 U.S.C. § 541(a)(1))**

91.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 91 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

92.    Admits that the Archbishop of Milwaukee of the Roman Catholic Church is the sole member of the ADOM; admits that, while serving as Archbishop, Archbishop Listecki is the *President Ex Officio* of the ADOM; admits that Archbishop Listecki is currently a member of the ADOM board of directors; and denies any remaining allegations contained in Paragraph 92.

93.     Admits that Archbishop Listecki currently serves as the sole trustee of the Juridic Trust.

94.     Denies.

95.     Denies.

96.     Admits that the Amended Complaint speaks for itself, respectfully refers the Court to the same for its complete and correct contents, and denies all allegations inconsistent therewith.

97.     Denies.

98.     Admits that the Committee prays for the relief indicated in Paragraph 98, but denies that the Committee is entitled to such relief.

## FOURTH COUNTERCLAIM

**(Declaratory Relief: The Cemetery Trust is Void Under the Doctrine of Merger and the Funds and Assets in the Trust are Property of ADOM's Estate under 11 U.S.C. § 541(a)(1))**

99.     Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 99 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

100.     Paragraph 100 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki admits that the law of merger speaks for itself and he respectfully refers the Court to the same for its correct and complete contents.  Archbishop Listecki denies the remaining allegations contained in Paragraph 100 of the Counterclaims.

101.     Admits that, under at least one of the theories set forth in the Amended Complaint, the ADOM created the Juridic Trust, and denies all remaining allegations in Paragraph 101 of the Counterclaims.

13

102.    Admits that all assets in the Juridic Trust, except those used for administrative costs, are used to provide perpetual care of its cemeteries and mausoleums and denies any allegation in Paragraph 102 inconsistent therewith.

103.    Admits that, under at least one of the theories set forth in the Amended Complaint, the ADOM is the trustor of the Juridic Trust and denies all remaining allegations contained in Paragraph 103 of the Counterclaims.

104.    Admits that the trust agreement speaks for itself and respectfully refers the Court to the same for its complete and correct contents.

105.    Admits that Archbishop Listecki, while serving as Archbishop, is the *President Ex Officio* of the ADOM; admits that Archbishop Listecki is currently a member of the ADOM board of directors; admits that the Archbishop of Milwaukee of the Roman Catholic Church is the sole member of the ADOM; admits that Archbishop Listecki currently serves as the sole trustee of the Juridic Trust; and denies all remaining allegations contained in Paragraph 105 of the Counterclaims.

106.    Denies.

107.    Denies.

108.    Denies.

109.    Denies.

110.    Paragraph 110 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations contained in Paragraph 110 of the Counterclaims.

111.    Denies.

112.    Denies.

113.    Admits that the Amended Complaint speaks for itself, respectfully refers the Court to the same for its complete and correct contents, and denies all allegations inconsistent therewith.

114.    Denies.

115.    Admits that the Committee prays for the relief indicated in Paragraph 115, but denies that the Committee is entitled to such relief.

## FIFTH COUNTERCLAIM

**(Declaratory Relief: Even if the Cemetery Trust is not Void, the Funds and Assets in the Cemetery Trust are Property of ADOM's Estate under 11 U.S.C. § 541(a)(1) Because all Funds Transferred to the Cemetery Trust had Previously been Commingled with Non-trust Funds and Cannot be Traced)**

116.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 116 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

117.    Paragraph 117 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 117 of the Counterclaims.

118.    Paragraph 118 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 118 of the Counterclaims.

119.    Paragraph 119 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 119 of the Counterclaims.

120.    Paragraph 120 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 120 of the Counterclaims.

15

121.    Admits that the Committee prays for the relief indicated in Paragraph 121, but denies that the Committee is entitled to such relief.

## SIXTH COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Initial $55 Million Transfer Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.04(1)(a) and 242.07)**

122.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 122 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

123.    Denies.

124.    Paragraph 124 contains legal conclusions that do not require a response.  To the extent a response is required, Archbishop Listecki denies that any creditors hold viable claims against the Juridic Trust, or the assets held therein, and therefore denies the allegations in Paragraph 124 of the Counterclaims.

125.    Denies.

126.    Paragraph 126 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 126.

127.    Denies.

## SEVENTH COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Initial $55 Million Transfer Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.04(1)(b) and 242.07)**

128.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 128 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

129.    Paragraph 129 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 129 of the Counterclaims.

130.    Paragraph 130 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 130 of the Counterclaims.

131.    Paragraph 131 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies that any creditors hold viable claims against the Juridic Trust, or the assets held therein, and therefore denies the allegations in Paragraph 131 of the Counterclaims.

132.    Denies.

133.    Paragraph 133 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 133 of the Counterclaims.

134.    Denies.

## EIGHTH COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Initial $55 Million Transfer
Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.05(1) and 242.07)**

135.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 135 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

136.    Paragraph 136 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 136 of the Counterclaims.

137.    Paragraph 137 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 137 of the Counterclaims.

138.    Paragraph 138 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies that any creditors hold viable claims against the Juridic Trust, or the assets held therein, and therefore denies the allegations in Paragraph 138 of the Counterclaims.

139.    Denies.

140.    Paragraph 140 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 140 of the Counterclaims.

141.    Denies.

## NINTH COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Initial $55 Million Transfer
Pursuant to 11 U.S.C. §§ 548(e)(1) and 550)**

142.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 142 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

143.    Admits that, under at least one of the theories set forth in the Amended Complaint, the ADOM is the trustor of the Juridic Trust, and denies any allegation contained in Paragraph 143 inconsistent therewith.

144.    Denies.

145.    Denies.

146.    Admits that the trust agreement speaks for itself and respectfully refers the Court to the same for its complete and correct contents.

18

147.    Admits that in or about March 2008 approximately $55 million of trust funds were transferred to the Juridic Trust and denies any remaining allegations in Paragraph 147 inconsistent therewith.

148.    Admits that, in or about March 2008, claims were pending in Wisconsin state court against the ADOM; lacks knowledge and information sufficient to form a belief with respect to the truth of the allegations relating to claims not filed, and therefore denies on that basis; and denies the remaining allegations contained in Paragraph 148 of the Counterclaims.

149.    Paragraph 149 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 149 of the Counterclaims.

150.    Denies.

## TENTH COUNTERCLAIM

**(Avoidance and Recovery of Subsequent Transfers Prior to the Petition Date
Pursuant to 11 U.S.C. §§ 548(e)(1) and 550)**

151.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 151 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

152.    Admits that, under at least one of the theories set forth in the Amended Complaint, the ADOM is the trustor of the Juridic Trust, and denies any allegation in Paragraph 152 inconsistent therewith.

153.    Denies.

154.    Denies.

155.    Archbishop Listecki denies that "Subsequent Transfers," as that term is defined by the Committee, have been made to the Juridic Trust; admits that, under at least one of the theories set forth in the Amended Complaint, the ADOM has transferred funds to the Juridic

Trust within ten (10) years of the Petition Date and denies any allegation in Paragraph 155 inconsistent therewith.

156.    Admits that, at various times, there have been claims pending in Wisconsin state court against the ADOM; lacks knowledge and information sufficient to form a belief with respect to the truth of the allegations relating to claims not filed, and therefore denies on that basis; and denies the remaining allegations contained in Paragraph 156 of the Counterclaims.

157.    Paragraph 157 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 157 of the Counterclaims, and denies the allegations in the unnumbered paragraph beneath Paragraph 157.

## ELEVENTH COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550)**

158.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 158 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

159.    Archbishop Listecki denies that "Subsequent Transfers," as that term is defined by the Committee, have been made to the Juridic Trust, and therefore denies the allegations contained in Paragraph 159 of the Counterclaims.

160.    Denies.

161.    Denies.

162.    Paragraph 162 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 162 of the Counterclaims.

163.    Denies.

## TWELFTH COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Subsequent Transfers Prior to the
Petition Date Pursuant to 11 U.S.C. §§ 544(b) and 550,
and Wis. Stat. §§ 242.04(1)(a) and 242.07)**

164.    Archbishop Listecki admits, denies or otherwise responds to the allegations in
Paragraph 164 as he admitted, denied or otherwise responded to the allegations of the paragraphs
incorporated herein.

165.    Denies.

166.    Paragraph 166 contains legal conclusions to which no response is required.  To
the extent a response is required, Archbishop Listecki denies that any creditors hold viable
claims against the Juridic Trust, or the assets held therein, and therefore denies the allegations in
Paragraph 166 of the Counterclaims.

167.    Denies.

168.    Paragraph 168 contains legal conclusions to which no response is required.  To
the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 168 of
the Counterclaims.

169.    Denies.

## THIRTEENTH COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Subsequent Transfers Prior to the
Petition Date Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550)**

170.    Archbishop Listecki admits, denies or otherwise responds to the allegations in
Paragraph 170 as he admitted, denied or otherwise responded to the allegations of the paragraphs
incorporated herein.

171.    Paragraph 171 contains legal conclusions to which no response is required.  To
the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 171 of
the Counterclaims.

172.    Paragraph 172 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 172 of the Counterclaims.

173.    Paragraph 173 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 173 of the Counterclaims.

174.    Denies.

175.    Paragraph 175 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 175 of the Counterclaims.

176.    Denies.

## FOURTEENTH COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Subsequent Transfers
Prior to the Petition Date Pursuant to 11 U.S.C. §§ 544(b) and 550,
and Wis. Stat. §§ 242.04(1)(b) and 242.07)**

177.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 177 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

178.    Paragraph 178 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 178 of the Counterclaims.

179.    Paragraph 179 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 179 of the Counterclaims.

180.     Paragraph 180 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies that any creditors hold viable claims against the Juridic Trust, or the assets held therein, and therefore denies the allegations in Paragraph 180 of the Counterclaims.

181.     Denies.

182.     Paragraph 182 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 182 of the Counterclaims.

183.     Denies.

**FIFTEENTH COUNTERCLAIM**

**(Avoidance and Recovery of Fraudulent Subsequent Transfers
Prior to the Petition Date Pursuant to 11 U.S.C. §§ 544(b) and 550,
and Wis. Stat. §§ 242.05(1) and 242.07)**

184.     Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 184 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

185.     Paragraph 185 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 185 of the Counterclaims.

186.     Paragraph 186 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 186 of the Counterclaims.

187.     Paragraph 187 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies that any creditors hold viable

claims against the Juridic Trust, or the assets held therein, and therefore denies the allegations in Paragraph 187 of the Counterclaims.

188.    Denies.

189.    Paragraph 189 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 189 of the Counterclaims.

190.    Denies.

## SIXTEENTH COUNTERCLAIM

### (Avoidance and Recovery of Preferential Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 547 and 550)

191.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 191 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

192.    Paragraph 192 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies these allegations.

193.    Admits that Section 101(31) of the Bankruptcy Code speaks for itself and respectfully refers the Court to the same for its complete and correct contents; admits that the Archbishop of Milwaukee of the Roman Catholic Church is the sole member of the ADOM; admits that Archbishop Listecki, while serving as Archbishop, is the *President Ex Officio* of the ADOM; admits that Archbishop Listecki currently serves as the sole trustee of the Juridic Trust; and denies any remaining allegations contained in Paragraph 193 of the Counterclaims.

194.    Paragraph 194 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 194 of the Counterclaims.

195.    Paragraph 195 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 195 of the Counterclaims.

196.    Paragraph 196 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 196 of the Counterclaims.

197.    Denies.

198.    Denies.

## SEVENTEENTH COUNTERCLAIM

### (Avoidance and Recovery of Post Petition Transfers Pursuant to 11 U.S.C. §§ 549 and 550)

199.    Archbishop Listecki admits, denies or otherwise responds to the allegations in Paragraph 199 as he admitted, denied or otherwise responded to the allegations of the paragraphs incorporated herein.

200.    Paragraph 200 contains legal conclusions to which no response is required.  To the extent a response is required, Archbishop Listecki denies the allegations in Paragraph 200 of the Counterclaims.

201.    Denies.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense: Failure to State a Claim

The Committee's Counterclaims fail to state a claim upon which relief can be granted.

### Second Affirmative Defense: Waiver, Estoppel and Unclean Hands

The Committee's Counterclaims are barred by the equitable doctrines of waiver, estoppel and unclean hands.

25

## Third Affirmative Defense: Statute of Limitations

The Committee's Counterclaims are barred by the applicable statutes of limitations.

## Fourth Affirmative Defense: Contemporaneous Exchange For Value

Archbishop Listecki denies that he received any transfer from the ADOM that could be avoided as a preference under 11 U.S.C. § 547. Subject to, and without waiving his denial to having received any preferential transfer, to the extent that the Committee is able to prove that a transfer was made to Archbishop Listecki during the preference period, any such transfers may not be avoided because, pursuant to 11 U.S.C. § 547(c)(1), any such transfer was a contemporaneous exchange for value.

## Fifth Affirmative Defense: Ordinary Course of Business

Archbishop Listecki denies that he received any transfer from the ADOM that could be avoided as a preference under 11 U.S.C. § 547. Subject to, and without waiving his denial to having received any preferential transfer, to the extent that the Committee is able to prove that a transfer was made to Archbishop Listecki during the preference period, any such transfers may not be avoided because, pursuant to 11 U.S.C. § 547(c)(2)(A), all transfers received were all made in the ordinary course of business or financial affairs of the ADOM and transferee.

## Sixth Affirmative Defense: Ordinary Course of Business

Archbishop Listecki denies that he received any transfer from the ADOM that could be avoided as a preference under 11 U.S.C. § 547. Subject to, and without waiving his denial to having received any preferential transfer, to the extent that the Committee is able to prove that a transfer was made to Archbishop Listecki during the preference period, any such transfers may not be avoided because, pursuant to 11 U.S.C. § 547(c)(2)(B), all transfers received were made according to ordinary business terms.

## Seventh Affirmative Defense: Subsequent New Value

Archbishop Listecki denies that he received any transfer from the ADOM that could be avoided as a preference under 11 U.S.C. § 547.  Subject to, and without waiving his denial to having received any preferential transfer, to the extent that the Committee is able to prove that a transfer was made by the ADOM to Archbishop Listecki during the preference period, any such transfers may not be avoided because, pursuant to 11 U.S.C. § 547(c)(2), subsequent to each transfer, Archbishop Listecki provided value for the benefit of the ADOM, not secured by an otherwise unavoidable security interest, and on account of which new value the ADOM did not make an otherwise avoidable transfer to or for the benefit of Archbishop Listecki.

## Eighth Affirmative Defense: Reasonably Equivalent Value

Archbishop Listecki denies that he received any transfer from the ADOM that could be avoided as a fraudulent transfer under 11 U.S.C. § 548.   Subject to, and without waiving their denial to having received a fraudulent transfer, to the extent that the Committee is able to prove that a transfer was made to Archbishop Listecki during the applicable avoidance period, any such transfers may not be avoided because the ADOM received reasonably equivalent value on account of each transfer.

## Ninth Affirmative Defense: Failure to Meet Burden

Archbishop Listecki denies that any transfer was for or to the benefit of a creditor, that there was an antecedent debt, that the ADOM was insolvent, that the transfer was within the applicable preference period, and that Archbishop Listecki received more than he would have in a Chapter 7 bankruptcy proceeding.

## Tenth Affirmative Defense: Violation of Wisconsin Statutes, Regulations and Public Policy

Archbishop Listecki asserts that, to the extent the Committee is seeking payment from the Juridic Trust, payment of those funds may violate Wisconsin's laws and regulations pertaining to cemeteries, as well as Wisconsin public policy.

WHEREFORE, Archbishop Jerome E. Listecki demands judgment dismissing the Official Committee of Unsecured Creditors' First Amended Counterclaims and awarding Archbishop Listecki his costs, fees, including attorneys fees, and such other relief as the Court deems just and equitable.

Dated this 2nd day of May, 2012.

GODFREY & KAHN, S.C.

*/s/Timothy F. Nixon*
Timothy F. Nixon
William E. Duffin
Matthew M. Wuest
780 North Water Street
Milwaukee, WI  53202-3590
Phone:   414-273-3500
Fax:       414-273-5198
Email:   tnixon@gklaw.com
            weduffin@gklaw.com
            mwuest@gklaw.com

*Attorneys for Plaintiff / Counterdefendant*
*Archbishop Jerome E. Listecki*

7673932_6

28

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Chapter 11 |
| Archdiocese of Milwaukee, | Bankruptcy Case No. 11-20059-SVK |
| Debtor. | |
| Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, | Adv. Proc. No. 11-02459-SVK |
| Plaintiff, | |
| vs. | |
| Official Committee of Unsecured Creditors, | |
| Defendant. | |
| Official Committee of Unsecured Creditors, | |
| Counterclaimant, | |
| vs. | |
| Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, | |
| Counterdefendant. | |

**FIRST AMENDED ANSWER TO AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES; AND FIRST AMENDED COUNTERCLAIMS**

James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian N. Brown (CA Bar No. 205132)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jstang@pszjlaw.com
        kbrown@pszjlaw.com
        gbrown@pszjlaw.com
DOCS_LA:252441.3 05058-003

Pursuant to the authority granted to the Official Committee of Unsecured Creditors in the above-captioned bankruptcy case (the "Committee") by the *Order Approving Second Stipulation Regarding the Official Committee of Unsecured Creditors' Standing to Defend the Adversary Proceeding, Bring Avoidance Claims Related to the Adversary Complaint, and Litigate and Propose or Accept a Settlement of the Adversary Proceeding, or Part Thereof*, entered on February 2, 2012 [Docket No. 39] (the "Second Order Conferring Standing"), the Committee hereby answers (the "Amended Answer") the *Amended Complaint*, filed on January 13, 2012 [Docket No. 34] (the "Amended Complaint"), filed by Archbishop Jerome E. Listecki ("Archbishop Listecki"), as Trustee of the Archdiocese of Milwaukee Perpetual Care Trust and asserts its affirmative defenses and counterclaims.

1.     In response to the allegations in paragraph 1 of the Amended Complaint, the Committee admits that the Archdiocese of Milwaukee ("ADOM" or the "Debtor") is a Wisconsin nonstock corporation. The Committee denies the remaining allegations contained in paragraph 1 of the Amended Complaint.

2.     In response to the allegations in paragraph 2 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Amended Complaint, and therefore denies those allegations.

3.     In response to the allegations in paragraph 3 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 3 of the Amended Complaint, and therefore denies those allegations.

4. In response to the allegations in paragraph 4 of the Amended Complaint, the Committee admits that ADOM operates and maintains the cemeteries and mausoleums that it owns in furtherance of its corporate purpose. The Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4 of the Amended Complaint, and therefore denies those allegations.

5. The Committee denies the allegations contained in paragraph 5 of the Amended Complaint.

6. In response to the allegations in paragraph 6 of the Amended Complaint, the Committee admits that former Archbishop Timothy M. Dolan ("Archbishop Dolan"), on behalf of ADOM executed that certain "Trust Agreement Creating The Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust" ("Cemetery Trust Agreement")[1] and that Archbishop Listecki is the current Archbishop of the Archdiocese of Milwaukee and currently serves as trustee of The Archdiocese of Milwaukee Catholic

---

[1] The Committee believes that the use of the term "Juridic Trust" in the Amended Complaint to refer to the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust is inaccurate and misleading to the extent it suggests that the trust is an ecclesiastical or Cannon law based juridic entity which may be entitled to some deference or special treatment. Therefore, the Committee uses the term "Cemetery Trust" rather than "Juridic Trust" to refer to the Milwaukee Catholic Cemetery Perpetual Care Trust. The Amended Complaint also uses the term "Original Trust" to refer to a purported trust Archbishop Listecki contends existed prior to the formation of the Cemetery Trust to hold *unrestricted* funds that ADOM had designated to be used for the future care of its cemeteries and mausoleums and uses the term "Trust" to refer to both the alleged Original Trust and the Juridic Trust. In order to avoid additional confusion, the Committee will use the term Trust and Original Trust as they are defined in the Amended Complaint. However, the Committee's use of these terms is not intended to, and shall not constitute, an admission or acknowledgment that either the Original Trust or the Cemetery Trust are valid or enforceable or that either alleged trust is an ecclesiastical or Canon law based juridic entity.

Cemetery Perpetual Care Trust ("Cemetery Trust"). Except as so admitted, the Committee

denies the remaining allegations contained in paragraph 6 of the Amended Complaint.

7.      The Committee denies the allegations contained in paragraph 7 of the

Amended Complaint.

8.      The Committee admits the allegations contained in paragraph 8 of the

Amended Complaint.

9.      In response the allegations in paragraph 9 of the Amended Complaint,

the Committee admits that the Court has jurisdiction over this matter pursuant to 28 U.S.C.

sections 157(b)(1) and 1334. Except as so admitted, the Committee denies the remaining

allegations of paragraph 9 of the Amended Complaint.

10.      The Committee admits the allegations contained in paragraph 10 of the

Amended Complaint.

11.      The Committee denies that Count III of the Amended Complaint

asserting violation of the Religious Freedom and Restoration Act, 42 U.S.C. §2000bb-1(b),

and the First Amendment of the United States Constitution is a core matter.  The Committee

admits that Counts I, II, IV, and V are core.

12.      The Committee admits the allegations contained in paragraph 12 of the

Amended Complaint.

13.      In response to the allegations in paragraph 13 of the Amended

Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 13 of the Amended Complaint, and therefore denies those allegations.

14.    In response to the allegations in paragraph 14 of the Amended Complaint, the Committee admits that ADOM owns, operates and is obligated to maintain a number of cemeteries and/or mausoleums. The Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 14 of the Amended Complaint, and therefore denies those allegations.

15.    The Committee denies the allegations contained in paragraph 15 of the Amended Complaint.

16.    The Committee denies the allegations contained in paragraph 16 of the Amended Complaint.

17.    In response to the allegations in paragraph 17 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Amended Complaint, and therefore denies those allegations.

18.    In response to the allegations in paragraph 18 of the Amended Complaint, the Committee admits that ADOM is obligated to maintain and care for the cemeteries and mausoleums that it owns and that these obligations are not conditioned on the receipt of funds from third parties. The Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18 of the Amended Complaint, and therefore denies those allegations.

19.     The Committee denies the allegations contained in paragraph 19 of the Amended Complaint.

20.     In response to the allegations in paragraph 20 of the Amended Complaint, the Committee admits that the Cemetery Trust Agreement speaks for itself. The Committee denies the remaining allegations contained in paragraph 20 of the Amended Complaint.

21.     In response to the allegations in paragraph 21 of the Amended Complaint, the Committee admits that ADOM receives distributions from the Cemetery Trust. The Committee denies the remaining allegations contained in paragraph 21 of the Amended Complaint.

22.     In response to the allegations in paragraph 22 of the Amended Complaint, the Committee admits that it contends the assets of the Cemetery Trust are property of ADOM's estate and that it intends to enforce the estate's rights with respect to these assets.

23.     The Committee denies the allegations contained in paragraph 23 of the Amended Complaint.

24.     The Committee denies the allegations contained in paragraph 24 of the Amended Complaint.

25.     The Committee denies the allegations contained in paragraph 25 of the Amended Complaint.

26.     In response to the allegations contained in paragraph 26 of the Amended Complaint, the Committee admits that 11 U.S.C. §541(a) speaks for itself. The Committee denies the remaining allegations contained in paragraph 26 of the Amended Complaint.

27.     The Committee denies the allegations contained in paragraph 27 of the Amended Complaint.

28.     The Committee denies the allegations contained in paragraph 28 of the Amended Complaint.

29.     The Committee denies the allegations contained in paragraph 29 of the Amended Complaint.

30.     In response to the allegations contained in paragraph 30 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-29 of the Amended Complaint.

31.     In response to the allegations contained in paragraph 31 of the Amended Complaint, the Committee admits that the Cemetery Trust Agreement indicates it was executed by Archbishop Dolan on April 2, 2007, that the Cemetery Trust was created by ADOM, and that ADOM subsequently funded the Cemetery Trust in 2008 by transferring its *unrestricted* funds to the Cemetery Trust. The Committee denies the remaining allegations of paragraph 31 of the Amended Complaint.

32.     The Committee denies the allegations contained in paragraph 32 of the Amended Complaint.

33.     The Committee denies the allegations contained in paragraph 33 of the Amended Complaint.

34.     The Committee denies the allegations contained in paragraph 34 of the Amended Complaint.

35.     In response to the allegations contained in paragraph 35 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-29 of the Amended Complaint.

36.     In response to the allegations contained in paragraph 36 of the Amended Complaint, the Committee admits that "Wisconsin Statutes" speak for themselves. The Committee denies the remaining allegations contained in paragraph 36 of the Amended Complaint.

37.     The Committee denies the allegations contained in paragraph 37 of the Amended Complaint.

38.     In response to the allegations contained in paragraph 38 of the Amended Complaint, the Committee admits that ADOM is required to maintain its cemeteries and mausoleums. The Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 38 of the Amended Complaint, and therefore denies those allegations.

39.     In response to the allegations contained in paragraph 39 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 39 of the Amended Complaint, and therefore denies those allegations.

40.    In response to the allegations contained in paragraph 40 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 40 of the Amended Complaint, and therefore denies those allegations.

41.    The Committee denies the allegations contained in paragraph 41 of the Amended Complaint.

42.    The Committee denies the allegations contained in paragraph 42 of the Amended Complaint.

43.    The Committee denies the allegations contained in paragraph 43 of the Amended Complaint.

44.    The Committee denies the allegations contained in paragraph 44 of the Amended Complaint.

45.    In response to the allegations contained in paragraph 45 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-29 of the Amended Complaint.

46.    In response to the allegations contained in paragraph 46 of the Amended Complaint, the Committee admits that "Wisconsin Statutes" speak for themselves. The Committee denies the remaining allegations contained in paragraph 46 of the Amended Complaint.

47.    The Committee denies the allegations contained in paragraph 47 of the Amended Complaint.

48.    In response to the allegations contained in paragraph 48 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 48 of the Amended Complaint, and therefore denies those allegations.

49.    The Committee denies the allegations contained in paragraph 49 of the Amended Complaint.

50.    The Committee denies the allegations contained in paragraph 50 of the Amended Complaint.

51.    The Committee denies the allegations contained in paragraph 51 of the Amended Complaint.

52.    The Committee denies the allegations contained in paragraph 52 of the Amended Complaint.

53.    In response to the allegations contained in paragraph 53 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-29 of the Amended Complaint.

54.    In response to the allegations contained in paragraph 54 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee denies the allegations contained in paragraph 54 of the Amended Complaint.

55.     The Committee denies the allegations contained in paragraph 55 of the Amended Complaint.

56.     The Committee denies the allegations contained in paragraph 56 of the Amended Complaint.

57.     The Committee denies the allegations contained in paragraph 57 of the Amended Complaint.

58.     The Committee denies the allegations contained in paragraph 58 of the Amended Complaint.

59.     In response to the allegations contained in paragraph 59 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-58 of the Amended Complaint.

60.     The Committee denies the allegations contained in paragraph 60 of the Amended Complaint.

61.     In response to the allegations contained in paragraph 61, the Committee admits that all funds in the Cemetery Trust were contributed by ADOM and that the funds are used for ADOM's sole benefit.  The Committee denies the remaining allegations contained in paragraph 61 of the Amended Complaint.

62.     The Committee denies the allegations contained in paragraph 62 of the Amended Complaint.

63.     The Committee denies the allegations contained in paragraph 63 of the Amended Complaint.

64.     The Committee denies the allegations contained in paragraph 64 of the Amended Complaint.

65.     In response to the allegations contained in paragraph 65 of the Amended Complaint, the Committee admits that all funds in the Cemetery Trust were contributed by ADOM and that the funds are used for ADOM's sole benefit.  The Committee denies the remaining allegations contained in paragraph 65 of the Amended Complaint.

66.     In response to the allegations contained in paragraph 66 of the Amended Complaint , the Committee admits that the language of the Cemetery Trust Agreement speaks for itself. The Committee denies the remaining allegations contained in paragraph 66 of the Amended Complaint.

67.     The Committee denies the allegations contained in paragraph 67 of the Amended Complaint.

68.     The Committee denies the allegations contained in paragraph 68 of the Amended Complaint.

69.     The Committee denies the allegations contained in paragraph 69 of the Amended Complaint.

70.     The Committee denies the allegations contained in paragraph 70 of the Amended Complaint.

71.     In response to the allegations contained in paragraph 71 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-70 of the Amended Complaint.

72.     The Committee denies the allegations contained in paragraph 72 of the Amended Complaint.

73.     In response to the allegations contained in paragraph 73 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee denies the allegations contained in paragraph 73 of the Amended Complaint.

74.     In response to the allegations contained in paragraph 74 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee admits that RFRA speaks for itself. The Committee denies the remaining allegations contained in paragraph 74 of the Amended Complaint.

75.     The Committee denies the allegations contained in paragraph 75 of the Amended Complaint.

76.     The Committee denies the allegations contained in paragraph 76 of the Amended Complaint.

77.     In response to the allegations contained in paragraph 77 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 77 of the Amended Complaint, and therefore denies those allegations.

78.     In response to the allegations contained in paragraph 78 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and

require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 78 of the Amended Complaint, and therefore denies those allegations.

79.    In response to the allegations contained in paragraph 79 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 of the Amended Complaint, and therefore denies those allegations.

80.    In response to the allegations contained in paragraph 80 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 80 of the Amended Complaint, and therefore denies those allegations.

81.    In response to the allegations contained in paragraph 81 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81 of the Amended Complaint, and therefore denies those allegations.

82.    In response to the allegations contained in paragraph 82 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge

or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82 of the Amended Complaint, and therefore denies those allegations.

83.     The Committee denies the allegations contained in paragraph 83 of the Amended Complaint.

84.     In response to the allegations contained in paragraph 84 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required,  the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84 of the Amended Complaint, and therefore denies those allegations.

85.     In response to the allegations contained in paragraph 85 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85 of the Amended Complaint, and therefore denies those allegations.

86.     The Committee denies the allegations contained in paragraph 86 of the Amended Complaint.

87.     The Committee denies the allegations contained in paragraph 87 of the Amended Complaint.

88.     In response to the allegations contained in paragraph 88 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-58 of the Amended Complaint.

89.     The Committee denies the allegations contained in paragraph 89 of the Amended Complaint.

90.     In response to the allegations contained in paragraph 90 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee denies that ADOM holds only legal title to the assets in the Cemetery Trust.

91.     The Committee denies the allegations contained in paragraph 91 of the Amended Complaint.

92.     In response to the allegations contained in paragraph 92 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-58 of the Amended Complaint.

93.     The Committee denies the allegations contained in paragraph 93 of the Amended Complaint.

94.     The Committee denies the allegations contained in paragraph 94 of the Amended Complaint.

95.     The Committee denies the allegations contained in paragraph 95 of the Amended Complaint.

96.     The Committee denies the allegations contained in paragraph 96 of the Amended Complaint.

97.     The Committee denies the allegations contained in paragraph 97 of the Amended Complaint.

98.    The Committee denies the allegations contained in paragraph 98 of the Amended Complaint.

99.    The Committee denies the allegations contained in paragraph 99 of the Amended Complaint.

100.    The Committee denies the allegations contained in paragraph 100 of the Amended Complaint.

101.    The Committee denies the allegations contained in paragraph 101 of the Amended Complaint.

102.    The Committee denies the allegations contained in paragraph 102 of the Amended Complaint.

103.    The Committee denies the allegations contained in paragraph 103 of the Amended Complaint.

104.    The Committee denies the allegations contained in paragraph 104 of the Amended Complaint.

105.    The Committee denies the allegations contained in paragraph 105 of the Amended Complaint.

106.    The Committee denies the allegations contained in paragraph 106 of the Amended Complaint.

107.    The Committee denies the allegations contained in paragraph 107 of the Amended Complaint.

108.    The Committee denies the allegations contained in paragraph 108 of the Amended Complaint.

109.    The Committee denies the allegations contained in paragraph 109 of the Amended Complaint.

110.    The Committee generally and specifically denies each of the requests for relief under the heading of the Amended Complaint reading, "Relief Requested."

## AFFIRMATIVE DEFENSES

The Committee asserts the following affirmative defenses without assuming the burden of proof when the burden of proof would otherwise be on Archbishop Listecki when applicable law places the burden of proof on the party asserting a trust and/or a right to alleged trust assets.

1.    Failure to join a party (Federal Rule of Bankruptcy Procedure 7019): The Cemetery Trust[2] has failed to name ADOM as a party to this adversary proceeding.

2.    Real party in interest:  ADOM not the Committee, is a real party in interest in this adversary proceeding.  The *Second Order Conferring Standing* provides that the Committee may defend against allegations in the Amended Complaint on behalf of the estate.

3.    The Original Trust is an invalid and unenforceable self-settled trust: If the Original Trust is found to exist, it was invalid and unenforceable against ADOM's creditors because ADOM was both the settlor and a beneficiary of the Original Trust.

---

[2]  See footnote 1 to the Committee's First Amended Answer to the Amended Complaint, above, which is incorporated here by reference.

4.     <u>The Original Trust is an invalid and unenforceable beneficiary-controlled trust</u>: If the Original Trust is found to exist, it was invalid and unenforceable against ADOM's creditors because it was controlled by ADOM, which was also a beneficiary of the alleged Original Trust.

5.     <u>The Cemetery Trust is an invalid and unenforceable self-settled spendthrift trust</u>: ADOM is both the trustor/settlor and beneficiary of the Cemetery Trust. The Cemetery Trust contains express "spendthrift" provisions purporting to restrict ADOM, as the beneficiary of the Cemetery Trust, from alienating any of its interests in the Cemetery Trust. The Cemetery Trust is therefore a self-settled spendthrift trust in which the settlor is the beneficiary. Under Wisconsin law, self-settled trusts, including, self-settled spendthrift trusts, in which the settlor is also the beneficiary, are invalid and unenforceable against the interests of creditors.

6.     <u>Cemetery Trust is an invalid and unenforceable beneficiary-controlled spendthrift trust</u>: ADOM is both the trustor/settlor and a beneficiary of the Cemetery Trust. The Cemetery Trust contains express "spendthrift" provisions purporting to restrict the right of ADOM, as the beneficiary of the Cemetery Trust, from alienating any of its interests in the Cemetery Trust.  Archbishop Listecki is the President of ADOM, its sole Corporate Member and a director. Archbishop Listecki is also the sole trustee of the Cemetery Trust. The provisions of the Cemetery Trust Agreement require that the Archbishop of Milwaukee be the trustee of the Cemetery Trust.  ADOM as a beneficiary of the Cemetery Trust, through Archbishop Listecki, controls the Cemetery Trust in his capacity as trustee of the Cemetery

Trust. The Cemetery Trust is therefore invalid and unenforceable against the interests of creditors.

7.    <u>Doctrine of merger (Original Trust)</u>:  Under the doctrine of merger, a valid trust cannot exist where the same entity holds the legal and beneficial interests in alleged trust assets.  Here, ADOM and the Original Trust (if it is found to exist) constituted a single entity which was controlled by the same individual(s).  The Original Trust, to the extent it existed at all, was an alter ego of ADOM.  The assets of the Original Trust were held and used for the benefit of ADOM to fulfill its corporate purpose, including, satisfying its preexisting obligations to maintain its cemeteries and mausoleums. The Committee is informed and believes that ADOM could and/or did use the funds in the alleged Original Trust for purposes that did not relate to the maintenance of its cemeteries and mausoleums.  At all times, ADOM held all of the legal and beneficial interests in the assets of the alleged Original Trust.

8.    <u>Doctrine of merger (Cemetery Trust)</u>:  Under the doctrine of merger, a valid trust cannot exist where the same entity holds the legal and beneficial interests in alleged trust assets.  Here, ADOM and the Cemetery Trust constitute a single entity which is controlled by the same individual(s).  The Cemetery Trust is an alter ego of ADOM.  The assets of the Cemetery Trust are controlled by ADOM and are held and used for the benefit of ADOM to fulfill its corporate purpose, including, satisfying its preexisting obligations to maintain its cemeteries and mausoleums.  The Committee is informed and believes that ADOM could and/or did use the assets in the Cemetery Trust for purposes that did not relate

to the maintenance of its cemeteries and mausoleums. ADOM holds all of the legal and beneficial interests in the assets of the Cemetery Trust.

9.     <u>Neither the Original Trust nor the Cemetery Trust are valid enforceable trusts</u>: Neither the alleged Original Trust nor the Cemetery Trust are valid or enforceable because the persons who purchased cemetery services and/or rights from ADOM, did not understand or intend that their funds would be held in trust by ADOM and/or ADOM did not intend to hold the funds in trust.

10.     <u>Cemetery Trust is invalid and unenforceable because it was created for an improper and/or fraudulent purpose</u>:  ADOM created and funded the Cemetery Trust in an effort to place its previously ***unrestricted*** assets out of the reach of its creditors, including the survivors of clergy sex abuse.

11.     <u>ADOM has acknowledged the alleged trust res cannot be traced by classifying the funds as "***unrestricted***"</u> prior to the time they were transferred to the Cemetery Trust:  Even if the Original Trust and/or the Cemetery Trust are valid enforceable trusts, the assets in the Cemetery Trust constitute property of ADOM's chapter 11 estate because the trust res cannot be traced under applicable bankruptcy law which requires application of the Lowest Intermediate Balance test to trace alleged trust funds after they have been commingled with non-trust funds.  Long prior to transferring its funds in excess of $55 million to the Cemetery Trust, ADOM acknowledged that these funds were not the same funds that are alleged to have been contributed by the purchasers of burial or other cemetery rights and services from ADOM for the future care of the cemeteries and mausoleums by classifying

these funds as *"unrestricted"* in the notes to its audited financial statements. An

*"unrestricted"* classification means that the funds at issue were not subject to any restrictions

on their use or purpose by those who contributed the funds to ADOM, including the

purchasers of burial or other cemetery rights and services from ADOM. ADOM's

classification of these funds as *"unrestricted"* precludes either Archbishop Listecki or ADOM

from now contending that these funds are the same funds received from the purchasers of

burial or other cemetery rights and services from ADOM which the parties intended to be held

in trust for cemetery care or any other specified restricted purpose.

      12.   <u>The alleged trust res cannot be traced</u>:  The mere fact that the trust

funds are alleged to be held in a designated fund or segregated account at the date the petition

is filed is not sufficient to establish that those funds are trust funds where, as here, the funds

were classified by ADOM as *"unrestricted"* and/or had been commingled with ADOM's non-

trust funds prior to being transferred to any fund or segregated account and neither ADOM

nor Archbishop Listecki can prove that the alleged trust funds were transferred from the

commingled accounts under the Lowest Intermediate Balance Test. All of the alleged trust

funds held by the Cemetery Trust were previously commingled with non-trust funds in one or

more of ADOM's bank accounts before those funds were eventually transferred to the

Cemetery Trust, and it cannot be established that the alleged trust funds, rather than ADOM's

non-trust funds, were transferred from the commingled accounts into the Cemetery Trust's

account. Thus, the initial transfer of approximately $55 million into the Cemetery Trust in

March 2008 contained property of the estate, not identifiable trust funds.

13.    Alter ego:  The Cemetery Trust is the alter ego of ADOM such that the Cemetery Trust and ADOM are a single entity due to ADOM's domination and control over the Cemetery Trust, including, but not limited to, the fact that the sole Corporate Member and President of ADOM is the sole Trustee of the Trust.  It would be unfair and inequitable to treat ADOM and the Cemetery Trust as separate entities because this would allow ADOM to transfer more than $55 million to a controlled entity for the purpose of placing the funds beyond the reach of sex abuse survivors and other creditors of ADOM.

14.    Substantive consolidation:  Assuming the Cemetery Trust is determined to be valid and enforceable, the Cemetery Trust is a mere instrumentality of ADOM with no separate existence apart from ADOM.  Substantive consolidation of the Cemetery Trust with ADOM will allow a truly equitable distribution of assets among ADOM's creditors by recognizing the reality that ADOM and the Cemetery Trust are a single economic unit.

15.    Unclean Hands:  Archbishop Listecki's claims are barred, in whole or in part, by the doctrine of unclean hands.

16.    Lack of Standing:  Archbishop Listecki, in his capacity as trustee of the Cemetery Trust, lacks standing to bring claims based on the free exercise clause of the First Amendment to the United States Constitution and/or the Religious Freedom and Restoration Act ("RFRA").

17.    Federal bankruptcy laws are neutral, generally applicable laws, which are valid under the Religion Clauses of the First Amendment:  The Bankruptcy Code, and particularly sections 541, 542, 544, 547, 548 and 550 were not enacted to target and do not

target religiously motivated transfers of funds. The provisions are neutral and must be applicable whether or not ADOM and/or Archbishop Listecki acted with a religious motivation and whether or not the transferee is a religious institution. These provisions are intended to ensure fair and equitable treatment in the bankruptcy process, and to protect creditors from the unfair depletion of the estate.

18.     <u>Due process requires that ADOM's estate not be deprived of substantial liquid interests that ADOM has fraudulently attempted to placed out of the reach of its creditors</u>: The Cemetery Trust was created for an improper or fraudulent purpose in an effort to place its previously unrestricted assets out of the reach of creditors. The Bankruptcy Code, including sections 541, 542, 544, 547, 548 and 550, is intended to ensure fair dealing and to protect all creditors who are owed interests from debtors who voluntarily file for Chapter 11 bankruptcy. To allow ADOM and/or Archbishop Listecki to deprive the estate of these interests in a sham trust would substantially deprive the estate and its creditors of their rightful property in violation of the Due Process Clause of the Fifth Amendment.

19.     <u>The Bankruptcy Code, including sections 541, 542, 544, 547, 548 and 550, do not impose a substantial burden on ADOM or Archbishop Listecki under the federal Free Exercise Clause, the Wisconsin Constitution, Article I Section 18: "Freedom of worship; liberty of conscience; state religion; public funds," or RFRA)</u>: To maintain an action under constitutional free exercise provisions or RFRA, the initial burden rests on the actor claiming protection, (ADOM and/or Archbishop Listecki) to establish that the law imposes a substantial burden on religious exercise. The Bankruptcy Code does not impose a substantial

burden on the free exercise of religion. The Bankruptcy Code, including sections 541, 542,

544, 547, 548 and 550 do not bear "direct, primary responsibility for rendering religious

exercise 'effectively impracticable.'"  Civil Liberties for Urban Believers v. City of Chicago,

342 F.3d 752, 761 (7th Cir. 2003).

        20.    The application of RFRA to state law is unconstitutional:  To the extent

that Committee asserts the Original Trust (if it is found to exist) and the Cemetery Trust is

void under Wisconsin law and/or that the transfer of ADOM's assets to the Cemetery Trust is

avoidable under Wisconsin law, RFRA is inapplicable and unconstitutional. The United States

Supreme Court, in City of Boerne v. Flores, 521 U.S. 507 (1997), found that RFRA's

application to state law was a violation of the Constitution's inherent limits of federalism and

beyond the power of Congress.

        21.    RFRA as applied to federal law is unconstitutional:  The United States

Supreme Court, in City of Boerne, 521 U.S. at 536, held that RFRA was unconstitutional

because RFRA legislatively "alters the meaning of the Free Exercise Clause" and "contradicts

vital principles necessary to maintain separation of powers." Here, the application of RFRA as

to federal law is unconstitutional.

        22.    RFRA is not applicable when the government is not a party to the suit:

By its plain language, RFRA is only applicable when the government is a party to the action

in which a RFRA claim is asserted.  No governmental entity is a party to this adversary

proceeding.

23.     If ADOM were able to show the Bankruptcy Code imposed a substantial burden on religious exercise, the federal government has a compelling interest in the enforcing the Bankruptcy Code:  Therefore, ADOM/Bishop Listecki cannot establish a free exercise of religion claim.  The Bankruptcy Code and in particular, sections 541, 542, 544, 547, 548 and 550 do not substantially burden the exercise of religion, and even if it did, the provisions further a compelling governmental interest and are sufficiently narrow to survive a free exercise challenge under Wisconsin constitutional law or RFRA.  The Bankruptcy Code is designed to advance a compelling government interest, specifically to give the debtor a financial reprieve, which is paired with a compelling interest in treating creditors fairly and equitably. There is a further compelling interest in the efficient administration of the bankruptcy system and the historical importance of recovering fraudulent and preferential transfers in bankruptcy law and voiding self-settled trusts where the settler is a beneficiary. The Bankruptcy Code, and in particular, sections 541, 542, 544, 547, 548 and 550, serve a compelling interest in preventing transfers motivated by fraud or other improper purpose or to prefer certain creditors.  It would be a manifest injustice to provide debtors the power to avoid their full obligations to creditors and to be able to hide assets fairly owed to creditors.

24.     Establishment Clause:  The Bankruptcy Code, including Sections 541, 542, 544, 547, 548 and 550 and are general, non-discriminatory provisions governing conduct by ADOM, regardless of its beliefs.  To give ADOM a right to avail itself of the benefits Bankruptcy Code but evade the burdens, which right is not available to comparable secular

organizations is a violation of the Establishment Clause. See Roemer v. Board of Public Works of Maryland, 426 U.S. 736, 747 (1976) (stating, "[n]eutrality is what is required. The State must confine itself to secular objectives, and neither advance nor impede religious activity"). Any decrease in the amount of money that ADOM is able to spend on religious activities because of the imposition of the lawful avoidance procedures is an incidental, constitutionally permissible burden arising from the fair administration of a voluntary bankruptcy for all involved.

      25.    RFRA/First Amendment Claims are Premature:  The RFRA and First Amendment Claims raised by Archbishop Listecki are not properly the subject of this adversary proceeding because even if the assets in the Cemetery Trust are determined to be property of the estate, such determination, subject to the Bankruptcy Code, will not prevent ADOM from using its assets to provide reasonable maintenance and care to its cemeteries and mausoleums. Limitations of any magnitude on the use of ADOM's assets to provide cemetery and mausoleum maintenance will be determined in the context of plan confirmation and not in this adversary proceeding.

      26.    Reservation:  The Committee reserves the right to assert any other defenses based on facts obtained through discovery in this adversary proceeding.

## COUNTERCLAIMS

      The Official Committee of Unsecured Creditors in the above-captioned bankruptcy case (the "Committee") counterclaims as follows:

<u>**Introduction**</u>

1.      On January 13, 2012, Archbishop Jerome E. Listecki, the Archbishop

of the Archdiocese of Milwaukee ("<u>Archbishop Listecki</u>"), in his capacity as Trustee of the

Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust ("<u>Cemetery Trust</u>") filed

his *Amended Complaint* (the "<u>Amended Complaint</u>"), seeking declaratory relief that neither

the Cemetery Trust nor the assets in the Cemetery Trust are property of the Archdiocese of

Milwaukee's (the "<u>Debtor</u>" or "<u>ADOM</u>") chapter 11 estate.  The Committee is the only

defendant named in this adversary proceeding.  Archbishop Listecki did not name ADOM as

a defendant even though ADOM is the real party in interest in this adversary proceeding.  The

Committee believes this is because ADOM controls the Cemetery Trust and ADOM and

Archbishop Listecki have a stark and irreconcilable conflict with respect to the Cemetery

Trust and the claims Archbishop Listecki has asserted in the Amended Complaint.

2.      On the one hand, ADOM and Archbishop Listecki, who is the sole

Corporate Member and President of ADOM and the Archbishop of the Archdiocese of

Milwaukee, have fiduciary obligations to ADOM's creditors, including the survivors of sex

abuse, to maximize the assets in the chapter 11 estate.  However, in an effort to shield its

assets from its creditors, including the survivors of sex abuse, while still maintaining complete

control over the assets, ADOM, through Archbishop Listecki's predecessor, Archbishop

Timothy M. Dolan ("<u>Archbishop Dolan</u>") created and funded the Cemetery Trust with

ADOM's ***unrestricted*** assets and made the Archbishop the sole trustee of the trust with the

authority to distribute both the corpus and the income of the Cemetery Trust to ADOM in his

discretion.  ADOM is both the entity that created and funded the Cemetery Trust (the trustor or settlor) and the beneficiary of the Cemetery Trust because the assets of the Cemetery Trust are used solely to fulfill ADOM's corporate purpose, programs and administration, including satisfying its preexisting obligations to maintain its cemeteries and mausoleums, and all distributions from the Cemetery Trust (save those used for administering the trust) are either paid directly to ADOM or for its benefit.

3.     Notwithstanding his fiduciary duty to creditors as the sole Corporate Member, President and a Director of ADOM, Archbishop Listecki, as trustee of the Cemetery Trust, has initiated this litigation against the Committee seeking to remove approximately $55 million of ADOM's financial assets from its chapter 11 estate.

4.     At the time the Cemetery Trust was created as part of an asset protection scheme to shield ADOM's assets from its creditors in 2007, Archbishop Dolan was sitting on both sides of the table.  While sitting on one side of the table, he executed the trust agreement establishing the Cemetery Trust as the President of ADOM which was the trustor/settlor of the Cemetery Trust.  Simultaneously, while sitting on the other side of the table, he executed the trust agreement in his capacity as the "Archbishop of Milwaukee" as the sole "Trustee" of the Cemetery Trust.  To fully enable ADOM's asset protection scheme, Archbishop Dolan also executed the 2007 Consent Resolution of ADOM's directors authorizing ADOM to transfer in excess of $55 million of ADOM's *unrestricted* assets to the Cemetery Trust.

5.    Archbishop Listecki has chosen to enforce ADOM's asset protection scheme rather than to fulfill his fiduciary obligations to the survivors of childhood sex abuse and ADOM's other creditors.

6.    Had ADOM been named as a defendant in this adversary proceeding, Archbishop Listecki would control both sides of the litigation. The Archbishop's control over both ADOM and the Cemetery Trust, and his primary objective of shielding ADOM's $55 million from the claims of the sex abuse survivors rather than maximizing assets of the ADOM's chapter 11 estate are readily apparent.

7.    The Committee is the only entity that can properly represent the interests of ADOM's bankruptcy estate and its creditors in this adversary proceeding. Pursuant to a stipulation between the Committee, ADOM, and the Cemetery Trust, the Court has granted the Committee standing to assert and litigate the Counterclaims, set forth herein (the "Counterclaims") on behalf of ADOM's estate.

8.    By its Counterclaims, the Committee, on behalf of ADOM's chapter 11 estate, seeks a determination that that the Cemetery Trust is not valid or enforceable and/or that the funds in the Cemetery Trust constitute property of ADOM's bankruptcy estate. In the event that the Cemetery Trust is found to be enforceable, the Committee seeks to avoid and recover as fraudulent and preferential transfers to the Cemetery Trust more than $55 million.

9.    Archbishop Listecki alleges in the Amended Complaint that ADOM created an entity referred to as the "Original Trust" and the alleged trust res of the Original Trust was created when ADOM transferred its own funds into a bank account in ADOM's

name which was not a designated trust account. According to the Amended Complaint, the

creation and funding of the Cemetery Trust was merely to "formalize" the existence of the

Original Trust.

10.     However, Archbishop Listecki admits, in the Amended Complaint, that

ADOM has operated and maintained its cemeteries since 1857 and has always been obligated

to care for and maintain its cemeteries irrespective of whether it has received payments from

purchasers of burial rights or other cemetery rights or services for that purpose and that the

purpose of the Original Trust was to satisfy ADOM's corporate purpose, programs and

administration, including its preexisting obligations to maintain its cemeteries.

11.     Therefore, the admissions in the Amended Complaint establish that the

Original Trust (if it existed at all) and the Cemetery Trust were both self-settled by ADOM

and that ADOM was a beneficiary (if not the sole beneficiary) of the trusts. As self-settled

trusts in which ADOM, as the settlor is also a beneficiary, both the Original Trust (to the

extent it ever existed) and the Cemetery Trust, are subject to all remedies, claims and

infirmities that such disfavored trusts are subject to and as set forth more specifically herein.

Critically, under Wisconsin law, such trusts are void against the interests of creditors.

12.     The Committee also contends that the transfers of funds to the

Cemetery Trust constitute fraudulent and preferential transfers of ADOM's assets. In March

2008, ADOM initially funded the Cemetery Trust with a transfer of over $55 million of

**_unrestricted_** funds from its own account into the Cemetery Trust. In addition, the Committee

is informed and believes that additional funds have been transferred from ADOM's accounts

into the Cemetery Trust after that initial $55 million transfer, and that those transfers should also be avoided and recovered for the benefit of the estate.

13.     The resolution of this litigation is critical to ADOM's chapter 11 estate because it will determine whether there can be distributions of any magnitude to its creditors, including the survivors of the childhood sex abuse enabled by ADOM or whether ADOM can continue to avoid being held accountable.

**Jurisdiction**

14.     This Court has jurisdiction over the instant adversary proceeding, including the Counterclaims, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334; 11 U.S.C. § 105; and Federal Rules of Bankruptcy Procedure 7001 and 7013.

15.     Venue in this judicial district is appropriate pursuant to 28 U.S.C. § 1409.

16.     This adversary proceeding constitutes both a core and non-core proceeding.  The Counterclaims constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2).  Counts I, II, IV, and IV of the Amended Complaint constitute core proceedings. Count III of the Amended Complaint alleging violation of RFRA and the First Amendment of the United States Constitution and the affirmative defenses to the RFRA and First Amendment claims are non-core proceedings.

### Parties

17.     On or about January 24, 2011, the United States Trustee appointed Defendant/Counterclaimant, the Committee, to represent ADOM's unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1).

18.     The Committee has standing to bring the Counterclaims pursuant to the *Second Order Approving Stipulation Regarding the Official Committee of Unsecured Creditors' Standing to Defend the Adversary Proceeding, Bring Avoidance Claims Related to the Adversary Complaint, and Litigate and Propose or Accept a Settlement of the Adversary Proceeding, or Part Thereof*, entered February 2, 2012 [Docket No. 39].

19.     Plaintiff/Counterdefendant, Archbishop Listecki, as trustee of the Cemetery Trust, allegedly created on or about April 2, 2007, pursuant to the Trust Agreement Creating the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust ("Cemetery Trust Agreement"), is sued in his capacity as the sole trustee of the Cemetery Trust.

### Background

**A.     ADOM has preexisting obligations to maintain and care for its cemeteries and doing so is a core part of its corporate purpose, programs and administration.**

20.     ADOM is, and at all relevant times has been, obligated, as the owner of the cemeteries and mausoleums, to care for and maintain them. This obligation exists whether or not it has received payments from purchasers of cemetery rights and services for this purpose and whether or not funds have been specifically identified for this purpose.

21.     ADOM operates and maintains its cemeteries in furtherance of its corporate purpose, programs and administration.

**B.** **Prior to the transfer of its funds to the Cemetery Trust, the funds ADOM had designated for cemetery care and maintenance were classified by ADOM as "unrestricted" which meant they were not subject to donor restrictions of any kind and that the funds were subject to the claims of ADOM's general creditors.**

22.     Effective after December 15, 1994, new accounting standards became effective for not-for profit entities such as ADOM. In particular, Statement of Financial Accounting Standards No. 117, titled "Financial Statements of Not-for-Profit Organizations" ("SFAS 117") establishing standards for financial statements provided by not-for-profit organizations became effective on this date. Among other things, SFAS 117 requires a not-for-profit organization like ADOM to classify its net assets as either "restricted" to reflect donor-imposed restrictions or "unrestricted" to reflect that the funds are not subject to any donor imposed restrictions.

23.     Paragraph 16 of SFAS 117 provides:

Unrestricted net assets generally result from revenues from providing services, producing and delivering goods, receiving unrestricted contributions and receiving dividends or interest from investing in income-producing assets. . . . The only limits on the use of unrestricted net assets are the broad limits resulting from the nature of the organization, the environment in which it operates, and the purposes specified in its articles of incorporation or bylaws and limits resulting from contractual agreements, suppliers, creditors, and others entered into by the organization in the course of its business. Information about those contractual limits that are significant, including the existence of loan covenants, generally is provided in the notes to the financial statements. Similarly, information about self-imposed limits, that may be useful, including information about voluntary resolutions by the governing board of an organization to designate a portion of its unrestricted net assets to function as an endowment (sometimes called a *board-designated endowment*), may be provided in notes to or on the face of the financial statements.

24.     Under applicable law and accounting standards and principles, only "restricted" net assets of ADOM may be subject to enforceable legal restrictions that may protect them from creditor claims. "Unrestricted" net assets, whether or not they are "board designated" are subject to the claims of general creditor claims.

25.     Statement of Financial Accounting Concepts No. 6 titled "Elements of Financial Statements provides at paragraph 97:

> Only donors' explicit, or clearly evident implicit, stipulations that limit a not-for-profit organization's use of its assets can result in permanently or temporarily restricted net assets (as this Statement uses those terms). Decisions, resolutions, appropriations, or the like by the directors, trustees, or managers of a not-for profit organization may impose seemingly similar limits on the use of net assets that were not stipulated by donors. However, unless the limits are imposed by donors' stipulations that place them beyond the organizations' discretion to change, they differ substantively from donor imposed limits that result in restricted net assets. For example a voluntary resolution by the trustees of an organization to earmark a portion of its unrestricted net assets to function as an endowment is a revocable internal designation that does not give rise to restricted net assets. Only in the relatively few instances in which self-imposed limits become legally irrevocable are they substantively equivalent to donor-imposed restrictions and the cause of restricted net assets.

26.     From and after the time that SFAS 117 became effective, until the time that ADOM transferred in excess of $55 million to the Cemetery Trust in March 2008, the notes to ADOM's audited financial statements characterized as *"**Unrestricted Net Assets**"* the funds designated for the future care of ADOM's cemeteries and mausoleums and referred to in the Amended Complaint as the Perpetual Care Funds and/or the Original Trust Funds.

27.    The notes to ADOM's audited financial statements indicate that these *unrestricted* funds were "Board Designated" for the future care of ADOM's cemeteries and mausoleums.

28.    There is no indication in ADOM's audited financial statements or the notes thereto, that these *unrestricted* funds were subject to any contractual limitation with third parties.

29.    These "*unrestricted*" funds were not subject to donor restrictions and were available to satisfy the claim of ADOM's general creditors. This is true even where, as here, the "*unrestricted*" funds have been designated by ADOM for a particular purpose because the funds were not subject to donor restrictions or any contractual limitation with third parties and ADOM was free to remove its "Board Designation."

30.    It is these "*unrestricted*" ADOM funds which were available to satisfy the claims of its creditors that Archbishop Listecki contends were used to make the initial transfer in excess of $55 million to the Cemetery Trust.  ADOM's own financial statements belie Archbishop Listecki's contention that the transferred funds were ever held in trust or limited in use by third parties.

C.    **The Creation, Funding and Material Provisions of the Cemetery Trust**

31.    Beginning in 2005, multiple sex abuse survivors sued ADOM in Wisconsin state court seeking damages for the sexual abuse of children enabled by ADOM.[3]

---

[3] Upon information and belief, other sex abuse survivors had filed state court lawsuits against ADOM as early as 2002 but those cases are no longer pending.

32.     ADOM vigorously defended itself and its assets in these cases (the "Sex Abuse Cases") by among other things, seeking to avoid accountability for its role in the sex abuse of children by contending that the claims were time barred. Among other things, ADOM contended that even the deaf survivors of childhood sex abuse were time barred because they did not "speak up" soon enough.

33.     The Sex Abuse Cases are still pending but are stayed due to the filing of ADOM's bankruptcy petition.

34.     ADOM was also sued for its role in child sex abuse in California. In late 2006 ADOM paid more than $8 million to settle the California litigation.

35.     Less than three months later, then-Archbishop Dolan executed the Consent Resolution of Directors dated March 27, 2007 directing ADOM to make the initial transfer of in excess of $55 million of ADOM's "*unrestricted*" funds to the Cemetery Trust.

36.     Shortly thereafter, on April 2, 2007, then-Archbishop Dolan executed the Cemetery Trust Agreement on behalf of all parties.

37.     Archbishop Dolan, in his capacity as the President of ADOM, executed the Cemetery Trust Agreement as the trustor/settlor.

38.     Archbishop Dolan, on behalf of the Archbishop of Milwaukee, also executed the Cemetery Trust Agreement as the sole trustee of the Cemetery Trust.

39.     The Cemetery Trust Agreement states that the purpose of the Cemetery Trust is "for the exclusive benefit, in perpetuity, of the Cemeteries and Mausoleums" owned

by ADOM and with within the geographic boundaries of the Archdiocese.  See Cemetery

Trust Agreement, Sections 1.1.5 and 2.1 and First Recital to Cemetery Trust Agreement.

40.     The Cemetery Trust Agreement empowers Archbishop Listecki, as

trustee of the Cemetery Trust to make distributions to ADOM of both principal and income

from the Cemetery Trust at any time and in his sole discretion.  Cemetery Trust Agreement,

Section 2.1.

41.     Section 4 of the Cemetery Trust Agreement contains provisions

purporting to restrict ADOM's right or ability to voluntarily or involuntarily alienate its rights

and interests in the Cemetery Trust. These provisions are commonly referred to as

"spendthrift" provisions.

42.     In July 2007, the Wisconsin Supreme Court ruled that the Sex Abuse

Cases were not time-barred (contrary to ADOM's contentions).  Therefore, the Sex Abuse

Cases continued against ADOM and ADOM's assets, including the *"unrestricted"* funds the

ADOM Board had designated for the future care of its cemeteries and mausoleums. These

*"unrestricted"* funds were at risk in the event any of the sex abuse survivors obtained

judgments against ADOM.

43.     In March 2008, while the Sex Abuse Cases against ADOM were

proceeding toward trial, ADOM transferred over $55 million of its *"unrestricted"* funds (the

"Initial $55 Million Transfer") to a Cemetery Trust account at U.S. Bank (the "Cemetery

Trust Account").

44.    The funds used to make the Initial $55 Million Transfer had been classified as "*unrestricted*" in both ADOM's audited financial statements and notes thereto and therefore were not subject to any donor imposed or third party restrictions. These funds were not previously held in trust and were subject to the claims of ADOM's general creditors at the time the Initial $55 Million Transfer was made.

45.    Subsequent to the Initial $55 Million Transfer, ADOM's financial statements and notes thereto reflect that ADOM had a "*beneficial interest*" in the Cemetery Trust valued at the value of all assets in the Cemetery Trust and that payments from the Cemetery Trust are made to ADOM as reimbursement for costs incurred by ADOM for providing services for the purpose of care and maintenance of its cemeteries.

46.    Subsequent to the Initial $55 Million Transfer, ADOM's financial statements and the notes thereto continued to classify the assets in the Cemetery Trust as *unrestricted* assets of ADOM.

**D.    The money ADOM collected from the purchasers of burial and/or other cemetery rights and services were commingled with ADOM's general operating funds and cannot be traced.**

47.    Based upon a review of ADOM's Great Plains general ledger accounting system ("Great Plains"), from at least fiscal year 2002 to fiscal year 2007, when a customer purchased burial or other rights from a cemetery owned by ADOM, these funds and/or a portion thereof ("Cemetery Sale Proceeds"), were deposited into a non-trust bank account owed by ADOM at Marshall & Ilsley Bank ("M&I Account") that also contained ADOM's operating and non-trust funds. Upon information and belief, the Cemetery Sale

Proceeds were commingled in the M&I Account with ADOM's operating and other non-trust funds.

      48.    The Committee is informed and believes that at all times prior to 2002, ADOM commingled Cemetery Sale Proceeds with its operating and other non-trust funds.

      49.    The Committee is informed and believes that prior to March 2008, ADOM would transfer its funds from the M&I Account to ADOM's account at U.S. Bank.

      50.    The Committee is informed and believes that neither ADOM, nor Archbishop Listecki can establish that the Cemetery Sale Proceeds were the funds transferred from ADOM's M&I Account to ADOM's account at U.S. Bank.

      51.    The Committee is informed and believes that as of March 2008, the balance of *unrestricted* funds in ADOM's account at U.S. Bank was approximately $55 million.

      52.    The Committee is informed and believes that in March 2008, ADOM directed U.S. Bank to liquidate the its account and transfer ADOM's *unrestricted* funds in excess of $55 million to the Cemetery Trust Account.

      53.    The Committee is informed and believes that ADOM's transfer of its *unrestricted* funds to the Cemetery Trust Account was the culmination of an asset protection scheme by which ADOM intended to place its previously *unrestricted* assets beyond the reach of the survivors of childhood sex abuse.

54.     The Committee is informed and believes that ADOM formulated its asset protection scheme in response to the Sex Abuse Cases in both California and Wisconsin to avoid financial accountability to sex abuse survivors.

55.     The Committee is informed and believes that after making the Initial $55 Million Transfer to the Cemetery Trust, ADOM continued, and still continues, making periodic transfers of funds which cannot be identified as Perpetual Care Funds or (or any other type of restricted or trust funds) from accounts ADOM owns to the Cemetery Trust Account (the "Subsequent Transfers").

56.     The Committee is informed and believes that the funds used to make these Subsequent Transfers came from accounts in which ADOM commingled alleged Perpetual Care Funds with its operating funds and other non-trust funds and that the funds used to make the Subsequent Transfers cannot be traced or identified to Perpetual Care Funds or trust funds of any type.

57.     Based upon a review of Great Plains, beginning in fiscal year 2008, when a customer purchased burial or other rights or services from a cemetery owned by ADOM, a portion of those Cemetery Sale Proceeds were deposited into an ADOM bank account at Park Bank (the "Park Bank Account"). This portion of the Cemetery Sale Proceeds were then transferred to the M&I Account. Upon information and belief, the Cemetery Sale Proceeds were commingled with ADOM's operating funds and other non-trust funds in both the Park Bank Account and the M&I Account.

58.     The Committee is informed and believes that at the present time, at least for fiscal year 2011, when a customer purchases burial or other rights or services from a cemetery owned by ADOM, those funds are deposited into one of several ADOM bank accounts owned by ADOM (which the Committee is informed and understands are referred to as the "burial account," the "mausoleum account," and the "split account").

59.     Also upon information and belief, the amounts of the Cemetery Sale Proceeds are then transferred into the Park Bank Account, where they are commingled with ADOM's operating funds and other non-trust funds.

60.     The Committee is informed and believes that prior to August 2010, ADOM contends it transferred the amount of the Cemetery Sale Proceeds from the Park Bank Account to its M&I Account.  In or about August 2010, ADOM transferred all of the funds in the M&I Account to its new operating account at Johnson Bank (the "Johnson Bank Account") and closed the M&I account.  Thereafter, upon information and belief, ADOM transferred and continues post petition to transfer the alleged amount of the Cemetery Sale Proceeds from the Park Bank Account to the Johnson Bank Account where these funds are again commingled with ADOM's operating funds and other non-trust funds.

61.     According to Great Plains, from June 2008 through December 2011 (the last date for which the Committee has information on Great Plains), ADOM transferred or disbursed more than $2.4 million in Subsequent Transfers from the M&I Account and the Johnson Bank Account to the following three entities: (1) Archdiocese of Milwaukee Income Care Fund ("ARCHDIOCESE OF MILW-INC CR FND"), (2) Archdiocese of Milwaukee

Catholic Cemetery Perpetual Care Trust ("ARCHDIOCESE OF MILWAUKEE CATHOLIC

CEMETERY PERPETUAL CARE TRUST") and (3) Archdiocese of Milwaukee Perpetual

Care Trust ("ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST"). According to

ADOM's monthly operating reports, from January to December 2011, ADOM transferred or

disbursed more than $298,000 in Subsequent Transfers from the Johnson Bank Account to the

Cemetery Trust. The following table identifies the dates and amounts of the Subsequent

Transfers that the Committee believes occurred at the present time:

| Date | Entity Name | Amount |
|---|---|---|
| 06/13/08 | ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST | $1,300,000.00 |
| 06/20/08 | ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST | 34,154.03 |
| 08/14/08 | ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST | 65,078.78 |
| 09/16/08 | ARCHDIOCESE OF MILW-INC CR FND | 352,330.00 |
| 02/24/09 | ARCHDIOCESE OF MILW-INC CR FND | 152,230.00 |
| 04/03/09 | ARCHDIOCESE OF MILW-INC CR FND | 42,205.00 |
| 05/01/09 | ARCHDIOCESE OF MILW-INC CR FND | 29,927.50 |
| 06/26/09 | ARCHDIOCESE OF MILW-INC CR FND | 48,745.00 |
| 08/14/09 | ARCHDIOCESE OF MILW-INC CR FND | 20,937.50 |
| 10/30/09 | ARCHDIOCESE OF MILW-INC CR FND | 77,187.50 |
| 11/24/09 | ARCHDIOCESE OF MILW-INC CR FND | 28,415.00 |
| 01/05/10 | ARCHDIOCESE OF MILW-INC CR FND | 24,430.00 |
| 01/22/10 | ARCHDIOCESE OF MILW-INC CR FND | 21,785.00 |
| 02/19/10 | ARCHDIOCESE OF MILW-INC CR FND | 16,225.00 |
| 03/19/10 | ARCHDIOCESE OF MILW-INC CR FND | 17,250.00 |
| 04/23/10 | ARCHDIOCESE OF MILW-INC CR FND | 27,372.50 |
| 05/28/10 | ARCHDIOCESE OF MILW-INC CR FND | 25,580.00 |
| 06/29/10 | ARCHDIOCESE OF MILW-INC CR FND | 23,275.00 |
| 07/30/10 | ARCHDIOCESE OF MILW-INC CR FND | 31,330.00 |
| 09/28/10 | ARCHDIOCESE OF MILW-INC CR FND | 34,062.50 |
| 10/15/10 | ARCHDIOCESE OF MILW-INC CR FND | 27,618.75 |

| Date | Entity Name | Amount |
|------|-------------|--------|
| 11/23/10 | ARCHDIOCESE OF MILW-INC CR FND | 26,686.25 |
| 12/17/10 | ARCHDIOCESE OF MILW-INC CR FND | 16,750.00 |
| 02/15/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 31,687.50 |
| 03/18/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 13,750.00 |
| 04/15/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 32,150.00 |
| 05/13/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 23,800.00 |
| 06/14/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 30,562.50 |
| 07/15/12 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 17,987.50 |
| 08/16/12 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 14,837.50 |
| 09/16/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 29,185.00 |
| 10/14/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 37,487.50 |
| 11/15/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 32,612.50 |
| 12/13/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 34,687.50 |

62.    The Committee is informed and believes that all of these Subsequent

Transfers were deposited into the Cemetery Trust Account and that the three different entities

listed on Great Plains are simply different names for the Cemetery Trust.

E.    **The ADOM Bankruptcy Case**

63.    On January 4, 2011 (the "Petition Date"), ADOM filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §101 et seq. (the

"Bankruptcy Code").  ADOM continues to operate its business as a debtor in possession.

64.    ADOM's commencement of the above-captioned bankruptcy case as of

the Petition Date created an "estate" as defined in 11 U.S.C. § 541(a).

F.    **The Cemetery Trust Litigation initiated by Archbishop Listecki**

65.    On June 28, 2011, the Archdiocese of Milwaukee Catholic Cemetery

Perpetual Care Trust filed the original Complaint commencing this adversary proceeding (the

"Original Complaint") against the Committee as the sole defendant.  The Original Complaint

asserted two claims for relief: (1) a declaration of the Court that the assets in the Cemetery

Trust are not property of ADOM's bankruptcy estate pursuant to section 541(a)(1) of the

Bankruptcy Code; and (2) a declaration of the Court that the assets in the Cemetery Trust are

specifically excluded as property of ADOM's estate under section 541(b)(1) of the

Bankruptcy Code.

        66.     The Original Complaint was based on the contention that 50% of each

payment to ADOM made by purchasers of cemetery plots and $100 of each payment made to

ADOM from purchasers of crypts "*were paid for perpetual caretaking services of the*

*Cemetery Property, including preservation and maintenance of the Cemetery Property*" and

that "*this portion is held in trust for the perpetual care of the Milwaukee Catholic*

*Cemeteries*".  Original Complaint at ¶ 18 (emphasis added).

        67.     In its counterclaims to the Original Complaint, the Committee named

Archbishop Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery

Perpetual Care Trust, as a counterdefendant.  Pursuant to a stipulation that the Court

approved, ADOM, although not a party to this adversary proceeding, agreed to be subject to

discovery in this adversary proceeding.

        68.     On December 20, 2011, the Committee delivered a letter to counsel for

ADOM and Archbishop Listecki describing and identifying the well-settled authority that

requires the parties seeking to recover alleged trust funds in a bankruptcy proceeding to trace

the actual trust res (the "Tracing Requirements Letter").  The Tracing Requirements Letter

further described that where, as here, the alleged trust res is cash which has been commingled in the debtor's accounts with non-trust funds, the alleged trust funds can only be traced under the Lowest Intermediate Balance Test.

69.     Shortly after receiving the Tracing Requirements Letter, ADOM began to articulate Archbishop Listecki's new theory which is that ADOM created the trust res when it deposited its *unrestricted* funds into some unspecified and allegedly segregated account.

70.     On January 13, 2012, Archbishop Listecki, as trustee of the Cemetery Trust, filed the Amended Complaint (the "Amended Complaint") substituting himself as plaintiff in place of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust and seeking relief substantially similar to the relief sought in the original Complaint but based on a completely different theory and factual allegations.

71.     In the Amended Complaint, Archbishop Listecki, for the first time, advanced ADOM's new theory that ADOM created the trust res with its own funds rather than with the funds paid by the purchasers of burial and other cemetery rights and services from ADOM.

72.     The Committee is informed and believes that the new theory on the formation of the alleged trust res was formulated as a consequence of ADOM and Archbishop Listecki learning of their burden to trace all of the funds they alleged were held in trust upon the receipt of the Tracing Requirement Letter and based on the inability to met those requirements.

73.    The Committee is informed and believes that ADOM has always

commingled the payments it received from the purchasers of burial and other rights with its

operating funds and other non-trust funds instead of segregating these payments as it was

required to do if these payments were to be held in trust.

## FIRST COUNTERCLAIM

### (Turnover of Assets in Cemetery Trust under 11 U.S.C. § 542)

74.    The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1-73 above as if fully set forth here.

75.    ADOM is the settlor of the Cemetery Trust.

76.    ADOM contributed all assets in the Cemetery Trust.

77.    The Cemetery Trust is a self-settled spendthrift trust.

78.    ADOM is a beneficiary of the Cemetery Trust because, among other

things, all payments from the Cemetery Trust, other than expenses of administration, are

made either to ADOM or for its benefit and the purpose of the Cemetery Trust is to fulfill

ADOM's corporate purpose, programs and administration, including satisfying its preexisting

obligations to maintain its cemeteries and mausoleums.

79.    The terms of the Cemetery Trust Agreement authorize Archbishop

Listecki, as trustee, to make payments of income and principal to or for the benefit of ADOM

at any time and in any manner in his discretion.

80.    Under Wisconsin law, self-settled spendthrift trusts in which the settler

is also a beneficiary of the trust are void against the interests of creditors.

81.     In particular, Wis. Stat. § 701.06(6) provides under these circumstances, upon application of a judgment creditor of the settlor, the court may order the trustee to satisfy the judgment out of the trust.

82.     Section 544 (a) of the Bankruptcy Code and the *Second Order Conferring Standing* give the Committee, on behalf of ADOM's estate, all of the rights and powers of a judgment creditor of ADOM, the settlor of the Cemetery Trust, including the judgment creditor referred to in Wis. Stat. § 701.06(6).

83.     The Cemetery Trust is self-settled, spendthrift trust in which ADOM as the settlor, is also a beneficiary.

84.     The Cemetery Trust is void and all of the assets in the Cemetery Trust constitute property of the estate under section 541(a) of the Bankruptcy Code.

85.     Archbishop Listecki, as trustee of the Cemetery Trust must turnover all of the assets in the Cemetery Trust to ADOM's estate under 11 U.S.C. § 542(a).

86.     Accordingly, the Committee prays for an order compelling Archbishop Listecki to turnover all of the assets in the Cemetery Trust to ADOM's estate.

**SECOND COUNTERCLAIM**

**(Declaratory Relief: The Cemetery Trust is Void as to Judgment Creditors and the Funds and Assets in the Cemetery Trust are Property of ADOM's Estate under 11 U.S.C. §§ 541(a)(1) and 544(a), and Wis. Stat. § 701.06(6) )**

87.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 and 75-84 above as if fully set forth here.

88.     In his Amended Complaint, the Archbishop Listecki alleges that ADOM's estate has no rights in the funds and assets held in the Cemetery Trust.

89.     An actual and justiciable controversy exists as to whether the Cemetery Trust is void and unenforceable under Wis. Stat. § 706.06(6).

90.     Accordingly, the Committee respectfully prays for a judgment declaring that the Cemetery Trust is void and/or otherwise unenforceable and the funds and assets in the Cemetery Trust constitute property of ADOM's estate.

## THIRD COUNTERCLAIM

### (Declaratory Relief: The Cemetery Trust is Void because ADOM, as Beneficiary, Controls the Cemetery Trust  and the Funds and Assets in the Cemetery Trust are Property of ADOM's Estate under 11 U.S.C. § 541(a)(1))

91.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

92.     Archbishop Listecki is the sole Corporate Member of ADOM, a member of the Board of Directors and its President.

93.     Archbishop Listecki is the sole trustee of the Cemetery Trust.

94.     ADOM is the beneficiary of the Cemetery Trust.

95.     ADOM, through Archbishop Listecki controls the Cemetery Trust and all distributions of principal and income from the Cemetery Trust.

96.     In his Amended Complaint, Archbishop Listecki alleges that ADOM's estate has no rights in the funds and assets held in the Cemetery Trust.

97.     An actual and justiciable controversy exists as to whether the Cemetery Trust is void and unenforceable as the result of ADOM's control of the Cemetery Trust.

98.     Accordingly, the Committee respectfully prays for a judgment declaring that the Cemetery Trust is void and/or otherwise unenforceable and the funds and assets in the Cemetery Trust constitute property of ADOM's estate under section 541(a) of the Bankruptcy Code.

## FOURTH COUNTERCLAIM

**(Declaratory Relief: The Cemetery Trust is Void Under the Doctrine of Merger and the Funds and Assets in the Trust are Property of ADOM's Estate under 11 U.S.C. § 541(a)(1))**

99.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

100.     Under the doctrine of merger, a valid trust cannot exist and is void where the same entity holds the legal and beneficial interests in alleged trust assets.  ADOM and the Cemetery Trust constitute a single entity because the Cemetery Trust is an alter ego of ADOM.

101.     The Cemetery Trust was created by and is for the benefit of ADOM.

102.     All assets in the Cemetery Trust, not used for administrative costs, are used to fund ADOM's corporate purpose, programs and administration, including its obligations to maintain its cemeteries and mausoleums.

103.     ADOM was the trustor/settler of the Cemetery Trust and through Archbishop Dolan, controlled every aspect of the creation and funding of the Cemetery Trust.

104.     Archbishop Dolan executed the Cemetery Trust Agreement on behalf of ADOM as the trustor/settlor and as the sole trustee of the Cemetery Trust.

105.     Archbishop Listecki, Archbishop Dolan's successor, continues to control the administration of the Cemetery Trust and the disposition of its assets: the Archbishop is the sole Corporate Member of ADOM, its President and a Director. Archbishop Listecki is also the sole trustee of the Cemetery Trust with sole discretion to distribute the income and principal of the Cemetery Trust to ADOM at any time.

106.     ADOM holds both the legal and beneficial interests in the assets of the Cemetery Trust and the Cemetery Trust.

107.     The Cemetery Trust has no separate existence of its own and is a mere instrumentality of ADOM.

108.     The Cemetery Trust was created as part of an asset protection scheme to divert and insulate ADOM's assets and make them unavailable to satisfy the claims of the Sex Abuse Plaintiffs, and other survivors of childhood sex abuse.

109.     The Cemetery Trust continues to be used to evade ADOM's obligations to fairly compensate the survivors of childhood sex abuse and other unsecured creditors, thereby resulting in an injustice.

110.     The Committee is informed and believes that the only funds in the Cemetery Trust or that have ever been deposited into the Cemetery Trust Account are "*unrestricted*" funds that ADOM transfers into the Cemetery Trust Account from accounts that ADOM owns (and that were or are commingled with ADOM's operating funds and non-trust funds).

111.     ADOM's creation of the Cemetery Trust and the transfers of ADOM's

*"unrestricted"* funds to the Cemetery Trust are proximate causes of harm to the survivors of

sex abuse and ADOM's other creditors because ADOM's actions have severely diminished

the value of the estate that would otherwise be available to pay the estate's creditors.

112.     The creation and funding of the Cemetery Trust caused ADOM to be

undercapitalized and insolvent.

113.     In his Amended Complaint, Archbishop Listecki alleges that ADOM's

estate has no rights in the funds and assets held in the Cemetery Trust.

114.     An actual and justiciable controversy exists as to whether the legal and

beneficial interest in the Cemetery Trust is held by the same legal entity such that the

Cemetery Trust is void.

115.     Accordingly, the Committee respectfully prays for a judgment

declaring that the Cemetery Trust is void and/or otherwise unenforceable and the funds and

assets in the Cemetery Trust constitute property of ADOM's estate under section 541(a) of the

Bankruptcy Code.

**FIFTH COUNTERCLAIM**

**(Declaratory Relief: Even if the Cemetery Trust is not Void, the Funds and Assets in the
Cemetery Trust are Property of ADOM's Estate under 11 U.S.C. § 541(a)(1) Because all
Funds Transferred to the Cemetery Trust had Previously been Commingled with Non-
trust Funds and Cannot be Traced)**

116.     The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1-73 above as if fully set forth here.

117.     All of the funds that have been transferred to the Cemetery Trust by ADOM were previously commingled by ADOM with its operating funds and other non-trust funds in at least three ADOM bank accounts before those funds were transferred to the Cemetery Trust.

118.     Archbishop Listecki, as trustee of the Cemetery Trust, bears the burden of tracing which of those commingled funds of ADOM are alleged trust funds under the Lowest Intermediate Balance Test with respect to each of the accounts in which the alleged trust funds had been commingled with non-trust funds before they were transferred to the Cemetery Trust.

119.     All of the previously commingled funds in the Cemetery Trust that are not traced to identifiable trust funds under the Lowest Intermediate Balance Test as trust funds at the time they were transferred to the Cemetery Trust are property of ADOM's estate.

120.     An actual and justiciable controversy exists as to whether Archbishop Listecki can meet his burden to prove that all of the funds deposited into the Cemetery Trust Account, which were previously commingled with non-trust funds in ADOM's accounts, can be traced and identified as trust assets under the Lowest Intermediate Balance Test.

121.     Accordingly, the Committee respectfully prays for a judgment declaring that all funds in the Cemetery Trust that Archbishop Listecki cannot identify and trace under the lowest intermediate balance test are property of ADOM's estate under section 541(a) of the Bankruptcy Code.

## SIXTH COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Initial $55 Million Transfer Pursuant to
11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.04(1)(a) and 242.07)**

122.    The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1-73 above as if fully set forth here.

123.    The $55 Million Initial Transfer was made with an actual intent to

hinder, delay, or defraud creditors of ADOM.

124.    ADOM's creditors' claims arose either before or after the Initial

$55 Million Transfer was made, including, but not limited to, the plaintiffs who filed the

Sex Abuse Cases (the "Sex Abuse Plaintiffs") that were pending against ADOM in 2008

when ADOM made the Initial $55 Million Transfer to the Trust.  The Sex Abuse

Plaintiffs hold unsecured claims that are allowable under 11 U.S.C. § 502.

125.    At all relevant times, the $55 Million Initial Transfer made within

four years prior to the Petition Date was and is avoidable pursuant to 11 U.S.C. § 544(b)

and Wis. Stat. § 242.04(1)(a).

126.    Archbishop Listecki, as trustee of the Cemetery Trust was the initial

transferee of the Initial $55 Million Transfer because, upon information and belief, that

transfer flowed directly from ADOM's U.S. Bank account into the Cemetery Trust Account.

127.    The $55 Million Initial Transfer should be avoided as fraudulent

pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(a).

ADOM's estate is entitled to recover the Initial $55 Million Transfer, or the value thereof,

pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

## SEVENTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Initial $55 Million Transfer
### Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.04(1)(b) and 242.07)

128.    The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1-73 above as if fully set forth here.

129.    ADOM did not receive reasonably equivalent value in exchange for

making the Initial $55 Million Transfer to the Cemetery Trust because the Cemetery Trust did

not provide ADOM with any consideration whatsoever in return for that Initial $55 Million

Transfer.

130.    At the time of the Initial $55 Million Transfer, ADOM (a) was engaged

or was about to engage in a business or a transaction for which the remaining assets of the

ADOM were unreasonably small in relation to the business or transaction; or (b) intended to

incur, or believed or reasonably should have believed, that ADOM would incur debts beyond

its ability to pay as they became due.  This is because ADOM's liabilities were greater than its

assets due to the claims of sex abuse survivors including, but not limited to, the Sex Abuse

Plaintiffs at the time the Initial $55 Million Transfer was made by ADOM.

131.    ADOM's creditors' claims arose either before or after the Initial

$55 Million Transfer was made, including, but not limited to, the Sex Abuse Plaintiffs.

The Sex Abuse Plaintiffs hold unsecured claims that are allowable under section 502 of

the Bankruptcy Code.

132.    At all relevant times, the $55 Million Initial Transfer made within four years prior to the Petition Date was and is avoidable pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(b).

133.    Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Initial $55 Million Transfer because, upon information and belief, that transfer flowed directly from ADOM's U.S. Bank account into the Cemetery Trust Account.

134.    The $55 Million Initial Transfer should be avoided as fraudulent pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(b). ADOM's estate is entitled to recover the Initial $55 Million Transfer, or the value thereof, pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

**EIGHTH COUNTERCLAIM**
**(Avoidance and Recovery of Fraudulent Initial $55 Million Transfer**
**Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.05(1) and 242.07)**

135.    The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

136.    ADOM did not receive reasonably equivalent value in exchange for making the Initial $55 Million Transfer to the Cemetery Trust because the Cemetery Trust did not provide ADOM with any consideration whatsoever in return for the Initial $55 Million Transfer.

137.    ADOM (a) was insolvent at the time it made the Initial $55 Million Transfer; or (b) became insolvent as a result of the Initial $55 Million Transfer. ADOM was insolvent because its liabilities were greater than its assets at the time of the Initial

$55 Million Transfer. This insolvency was due, at least in part, to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

138.    At least one claim of a creditor of ADOM arose before the Initial $55 Million Transfer was made, including, but not limited to, the Sex Abuse Plaintiffs. The Sex Abuse Plaintiffs hold unsecured claims that are allowable under section 502 of the Bankruptcy Code.

139.    At all relevant times, the $55 Million Initial Transfer made within four years prior to the Petition Date was and is avoidable pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.05(1).

140.    Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Initial $55 Million Transfer because, upon information and belief, that transfer flowed directly from ADOM's U.S. Bank account into the Cemetery Trust Account.

141.    The $55 Million Initial Transfer should be avoided as fraudulent pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.05(1). ADOM's estate is entitled to recover the Initial $55 Million Transfer, or the value thereof, pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

### NINTH COUNTERCLAIM
**(Avoidance and Recovery of Fraudulent Initial $55 Million Transfer
Pursuant to 11 U.S.C. §§ 548(e)(1) and 550)**

142.    The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

143.    ADOM is the settlor of the Cemetery Trust.

144.    The Cemetery Trust is a self-settled trust.

145.    ADOM is a beneficiary of the Cemetery Trust because, among other things, all payments from the Cemetery Trust, other than expenses of administration, are made either to ADOM or for its benefit and the purpose of the Cemetery Trust is to fulfill ADOM's corporate purpose, programs and administration, including satisfying its preexisting obligations to maintain its cemeteries and mausoleums.

146.    The terms of the Cemetery Trust Agreement authorize Archbishop Listecki, as trustee, to make payments of income and principal to or for the benefit of ADOM at any time and in any manner in his discretion.

147.    In March 2008, ADOM made the Initial $55 Million Transfer to the Cemetery Trust. Therefore the Initial $55 Million Transfer was made within ten (10) years of the Petition Date.

148.    ADOM made the Initial $55 Million Transfer to the Cemetery Trust with actual intent to hinder, delay, or defraud its creditors, including, but not limited to, sex abuse survivors who had (and still have) claims against ADOM for sexual abuse at the time of the Initial $55 Million Transfer. Among other things, complaints were pending in Wisconsin State Court at the time the Initial $55 Million Transfer was made and hundreds of other survivors of sex abuse had claims which had not yet been filed.

149.    Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Initial $55 Million Transfer because, upon information and belief, that transfer flowed directly from ADOM's U.S. Bank account into the Cemetery Trust Account.

150.    Accordingly, the Initial $55 Million Transfer is avoidable, and should

be avoided, as fraudulent pursuant to sections 548(e)(1) and 550 of the Bankruptcy Code.

ADOM's estate is entitled to recover the Initial $55 Million Transfer or the value of the Initial

$55 Million Transfer pursuant to section 550 of the Bankruptcy Code.

## TENTH COUNTERCLAIM
### (Avoidance and Recovery of Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 548(e)(1) and 550)

151.    The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1-73 above as if fully set forth here.

152.    ADOM is the settlor of the Cemetery Trust.

153.    The Cemetery Trust is a self-settled trust.

154.    ADOM is a beneficiary of the Cemetery Trust because, among other

things, all payments from the Cemetery Trust, other than expenses of administration are made

either to ADOM or for its benefit and the purpose of the Cemetery Trust is to fulfill ADOM's

corporate purpose, programs and administration, including, satisfying its preexisting

obligations to maintain its cemeteries and mausoleums.

155.    The Subsequent Transfers were made within ten (10) years of the

Petition Date.

156.    ADOM made the Subsequent Transfers to the Cemetery Trust with

actual intent to hinder, delay, or defraud its creditors, including, but not limited to, sex abuse

survivors who had (and still have) claims against ADOM for sexual abuse at the time of the

Subsequent Transfers. Among other things, complaints were pending in Wisconsin State

Court at the time the Subsequent Transfers were made and hundreds of other survivors of sex abuse had claims which had not yet been filed.

157.     Archbishop Listecki, as trustee of the Cemetery Trust, was the initial transferee of the Subsequent Transfers.

Accordingly, the Subsequent Transfers are avoidable, and should be avoided, as fraudulent pursuant to sections 548(e)(1) and 550 of the Bankruptcy Code. ADOM's estate is entitled to recover the Subsequent Transfers or the value of the Subsequent Transfers pursuant to section 550 of the Bankruptcy Code.

## ELEVENTH COUNTERCLAIM
### (Avoidance and Recovery of Fraudulent Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550)

158.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

159.     The Committee is informed and believes that for at least the two years prior to the Petition Date (and even prior to that), ADOM made Subsequent Transfers to the Cemetery Trust Account.

160.     ADOM made the Subsequent Transfers with the intent to hinder, delay, or defraud ADOM's creditors, including, but not limited to, the Sex Abuse Plaintiffs and other sex abuse survivors who had (and still have) claims against ADOM for sexual abuse.

161.     The Subsequent Transfers made within the two years prior to the Petition Date were and are avoidable pursuant to section 548(a)(1)(A) of the Bankruptcy Code.

162.     Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Subsequent Transfers.

163.     ADOM's estate is entitled to recover the Subsequent Transfers made within the two years prior to the Petition Date, or the value thereof, pursuant to section 550 of the Bankruptcy Code.

## TWELFTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.04(1)(a) and 242.07)

164.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

165.     The Subsequent Transfers made in the four years prior to the Petition Date were made with an actual intent to hinder, delay, or defraud any creditor of the Debtor.

166.     ADOM creditors' claims arose either before or after the Subsequent Transfers, and each of them, were made, including, but not limited to, the Sex Abuse Plaintiffs. The Sex Abuse Plaintiffs hold unsecured claims that are allowable under section 502 of the Bankruptcy Code.

167.     The Subsequent Transfers made within four years prior to the Petition Date were and are avoidable pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(a).

168.     Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Subsequent Transfers.

169.    The Subsequent Transfers made within four years prior to the

Petition Date should be avoided as fraudulent pursuant to section 544(b) of the

Bankruptcy Code and Wis. Stat. § 242.04(1)(a).  ADOM's estate is entitled to recover the

Subsequent Transfers made within four years prior to the Petition Date, or the value

thereof, pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

### THIRTEENTH COUNTERCLAIM
**(Avoidance and Recovery of Fraudulent Subsequent Transfers Prior to the
Petition Date Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550)**

170.    The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1-73 above as if fully set forth here.

171.    ADOM did not receive reasonably equivalent value in exchange

for the Subsequent Transfers to the Cemetery Trust made in the two years prior to the

Petition Date because the Cemetery Trust did not provide ADOM with any

consideration whatsoever in return for the Subsequent Transfers.

172.    ADOM:  (a) was insolvent, or became insolvent as a result of the

Subsequent Transfers made in the two years prior to the Petition Date; (b) was engaged

in or was about to engage in a business or a transaction for which its remaining assets

were unreasonably small in relation to the business or transaction; or (c) intended to

incur, or believed or reasonably should have believed that it would incur, debts beyond

its ability to pay as they became due.

173.    ADOM was insolvent because its liabilities were greater than its assets.  This insolvency was due, at least in part, to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

174.    At all relevant times, the Subsequent Transfers made within two years prior to the Petition Date were and are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

175.    Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Subsequent Transfers.

176.    The Subsequent Transfers made within two years prior to the Petition Date should be avoided as fraudulent pursuant to section 548(a)(1)(B) of the Bankruptcy Code.  The Debtor's estate is entitled to recover the Subsequent Transfers made within the two years prior to the Petition Date, or the value thereof, pursuant to section 550 of the Bankruptcy Code.

## FOURTEENTH COUNTERCLAIM
### (Avoidance and Recovery of Fraudulent Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.04(1)(b) and 242.07)

177.    The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

178.    ADOM  did not receive reasonably equivalent value in exchange for the Subsequent Transfers to the Cemetery Trust made within the four years prior to the Petition Date because the Cemetery Trust did not provide ADOM with any consideration whatsoever in return for those Subsequent Transfers.

179.    ADOM Debtor (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of ADOM were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed, that ADOM would incur debts beyond its ability to pay as they became due.  This is because the Debtor's liabilities were greater than its assets due to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

180.    Some of the claims of ADOM's creditors arose either before or after the Subsequent Transfers, and each of them, were made, including, but not limited to the Sex Abuse Plaintiffs.  The Sex Abuse Plaintiffs hold unsecured claims that are allowable under section 502 of the Bankruptcy Code.

181.    At all relevant times, the Subsequent Transfers made within four years prior to the Petition Date were and are avoidable pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(b).

182.    Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Subsequent Transfers.

183.    The Subsequent Transfers made in the four years prior to the Petition Date should be avoided as fraudulent pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(b).  ADOM's estate is entitled to recover the Subsequent Transfers, or the value thereof, pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

## FIFTEENTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Subsequent Transfers
### Prior to the Petition Date Pursuant to 11 U.S.C. §§ 544(b) and 550,
### and Wis. Stat. §§ 242.05(1) and 242.07)

184.    The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1-73 above as if fully set forth here.

185.    ADOM did not receive reasonably equivalent value in exchange

for making the Subsequent Transfers to the Cemetery Trust in the four years prior to the

Petition Date because the Cemetery Trust did not provide ADOM with any

consideration whatsoever in return for those Subsequent Transfers.

186.    ADOM (a) was insolvent at the time it made the Subsequent Transfers,

and each of them; or (b) became insolvent as a result of the Subsequent Transfers. ADOM

was insolvent because its liabilities were greater than its assets. This insolvency was due, at

least in part, to the claims of sex abuse survivors including, but not limited to, the Sex Abuse

Plaintiffs.

187.    At least one creditor's claim arose before the Subsequent Transfers,

and each of them, were made, including, but not limited to, the Sex Abuse Plaintiffs. The

Sex Abuse Plaintiffs hold unsecured claims that are allowable under section 502 of the

Bankruptcy Code.

188.    At all relevant times, Subsequent Transfers made within four years

prior to the Petition Date were and are avoidable pursuant to section 544(b) of the

Bankruptcy Code and Wis. Stat. § 242.05(1).